UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 1:20-cr-00278-TNM |
| v. : | |
| : | |
| KEITH BERMAN : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY HIS
CONDITIONS OF PRETRIAL RELEASE**

The United States of America, by and through its undersigned counsel, respectfully submits its opposition to the defendant's motion to modify his conditions of release. (ECF 14.) The defendant has asked this Court to loosen the reasonable restrictions placed on him, despite his seeming inability to comply with those conditions to date. Because these conditions are the minimum that would be needed to prevent further harm to shareholders, obstruction of justice and potential flight, the Court should deny the defendant's motion.

**I.   Background**

The indictment alleges that the defendant used the global pandemic as an opportunity to scam his company's shareholders. Having misappropriated hundreds of thousands of dollars of shareholder money, including to buy live one-on-one webcam sessions for his personal entertainment, the defendant needed a "new story" to "raise money." (ECF 1, ¶ 6-11.) In the early days of a global pandemic, when testing capacity was an issue of international importance, the defendant repeatedly lied to shareholders and prospective investors, claiming that his company, Decision Diagnostics Corp. ("DECN"), had developed a 15-second test to detect COVID-19 in a finger prick sample of blood, when it had not. (Id. ¶¶ 14-22.) As the defendant lied, DECN's stock

1

price rose, though it would later decline precipitously when the truth was revealed, leading to millions of dollars in shareholder losses.

According to the indictment, when the U.S. Securities and Exchange Commission ("SEC") opened an investigation, the defendant expressed concern that the SEC investigation would prevent him from continuing to raise money off of the COVID-19 crisis. (Id. ¶¶ 42-53.) To influence and impede the SEC's investigation, the defendant surreptitiously worked with a shareholder, whom the defendant enlisted under false pretenses, to ghost-write a series of letters attacking the SEC. (Id. ¶¶ 47-49.) The defendant encouraged the shareholder to recruit other shareholders to sign the false and misleading letters, which the shareholder did. (Id. ¶ 48.) Around the same time, the defendant used a fake identity on investorshub.com ("iHUB"), a popular Internet message board, to threaten and intimidate shareholders who expressed concern the defendant was lying about DECN's purported COVID-19 test. (Id. ¶¶ 36-43.) Among other threats, he repeatedly warned about "knock knock day," implying that the authorities would show up at the homes of shareholders who complained to the SEC and arrest them. (Id. ¶ 41.) The defendant subsequently lied to FBI agents when asked about his involvement in writing the purported shareholder letters. (Id. ¶ 53.) He also lied to FBI agents and the SEC staff about his involvement in iHUB. (Id. ¶¶ 42-43.)

The indictment was unsealed on December 17, 2020, after the defendant was taken into custody.[1] The defendant agreed to certain special conditions to address concerns that may have otherwise led the government to seek detention. (Ex. 1.) In addition to the standard condition

---

[1] The defendant's characterization of his arrest (ECF 14, ¶ 3) ignores the substantial efforts that the parties made to have him released that same day. The government worked with his attorneys to agree on a bond package before his initial appearance so that he would not need to remain in custody during the pandemic for any longer than necessary. Defense counsel expressed appreciation in an email to government counsel, writing: "Thank you for your expression of working with us and Mr. Berman to secure his release today." (Ex. 1.)

whereby the defendant agreed to avoid all contact – directly or indirectly – with any known victim or witness, the defendant specifically agreed to avoid all contact – directly or indirectly – with the company's shareholders on an individualized basis. (ECF 13; United States v. Keith Berman, Case No. 2:20-mj-06108 (C.D. Cal.) (ECF 4, filed Dec. 17, 2020).) He also agreed to restrict his travel to the Central District of California, where the defendant resides, and this District. (Id.)

Trial is set in this matter for July 12, 2021.

**II.     Argument**

A.   The Defendant's Pattern of Witness Contact Recommends Against Modification

Less than four months after these conditions were imposed, the defendant asks the Court to effectively eliminate the prohibition on communicating with victims and other shareholders, and affirmatively sanction his efforts to raise new money from prospective investors. (ECF 14, ¶¶ 15-18.) The defendant does not identify specific individuals with whom he needs to communicate, or specific issues that need to be resolved in the near term; rather, he effectively asks the Court for a 'blank check' to communicate with entire categories of victims, shareholders, and prospective investors. (Id.) The Court should deny his request for the following reasons:

First, the defendant has repeatedly violated his conditions, including by regularly communicating with known victims and shareholders about this case. Law enforcement separately interviewed Victim 1 and Victim 2, who are victims and continue to be DECN shareholders, and reviewed Victim 1 and Victim 2's respective communications with the defendant during the time he has been on pretrial release. The investigation revealed that from late December 2020 through at least mid-February 2021, while on pretrial release, the defendant continued his alleged pattern of using, misleading, intimidating, and influencing shareholders for his own personal benefit. For example:

3

- The defendant directed Victim 1 to stop cooperating with the government's investigation: "the general concensus [sic] is to tell your nail [sic] lady that you have given her two interviews and you are uncomfortable and need to consult with an attorney[.] thank you and good bye." (Ex. 2.)[2]

- The defendant discussed with Victim 1 and Victim 2 the questions the Postal Inspector had asked them and then attacked the Postal Inspector for asking those questions: "Isn't it ironic that the postal inspector could care less about that[.] it is also ironic that the questions they asked you [Victim 1] and [Victim 2] are not directly related to me, but to the company and the product which are not part of the indictment[.] what job is that[.] trying to make anyone who helps the company quit and become government witnesses[.]" (Ex. 2.)

- The defendant tried to influence Victim 1's view of the facts of the case by making false statements blaming the government for causing his COVID-19 tests to fail: "the SEC ruined our relationship with the fda just like the doj ruined our relationship with the clia lab[.] and they are trying to ruin our relationship with you[.]" (Ex. 2.)

- The defendant communicated with Victim 2 about recruiting other shareholders to participate in an email campaign to attack XPRIZE, the organizer of a COVID-19 Rapid Testing competition. (Ex. 3, 4.) The email campaign was based on the defendant's false claim that DECN's saliva test was unfairly removed from the XPRIZE competition based on the allegations made in the indictment against the defendant, and not on the merits of the test itself. (Ex. 5.)

Each of these communications with a shareholder was a *per se* violation of the existing conditions of release, which forbid contact with shareholders on an individualized basis. More troubling, these communications were not related to the day-to-day necessity of managing DECN's business operations. At best, they constitute inappropriate discussions about the case and ongoing investigation with victims of the fraud; at worst, they are potentially obstructive (*see, e.g.*, 18 U.S.C. § 1512(b)(3) (imposing maximum sentence of 20 years imprisonment on "whoever knowingly . . . engages in misleading conduct toward another person, with intent to hinder, delay, or prevent the communication to a law enforcement officer . . . information relating to the commission or possible commission of a Federal offense").

---

[2] In light of the fact that the law enforcement agent who interviewed Victim 1 was a female U.S. Postal Inspector, the government assumes the defendant meant to write "mail lady," not "nail lady."

There is thus a demonstrated risk the defendant will commit new crimes, and continue to obstruct the ongoing investigation and pending trial. The conditions initially imposed by the Court are still necessary to assure the safety of the community from the danger posed by the defendant's fraudulent activities and to mitigate the risk of witness tampering and obstruction. The defendant's failure to comply with his existing conditions, coupled with his repeated decisions to communicate directly with victims about the case itself, suggest that his conditions should be tightened, not loosened.

Second, counsel's assurances that the defendant would only communicate with victims and shareholders about matters unrelated to the allegations in the indictment provide cold comfort. (ECF 14, ¶ 17.) On December 21, 2020, in connection with a request to reconsider the prohibition on shareholder contact, counsel represented to the government that "it has been made clear to Mr. Berman that he cannot have any individual communications with any DECN investor involving any aspect of either the DOJ or SEC charges that were filed last week." (Ex. 6.) The evidence shows that the defendant ignored his own counsel's admonition, and repeatedly did precisely what his counsel assured the government he would not do.

Third, the conditions do not need to be modified because they already afford the defendant a reasonable opportunity to seek and maintain employment, which is all that should be required with respect to this matter. Based on government counsel's communications with Pretrial Services Officer Alexis Ochoa, the defendant told her that he does not receive compensation for his work at DECN and that he relies on another, unrelated job for income. It is therefore unnecessary to expose victims and shareholders to the risk of further harm by the defendant (or create opportunities for witness tampering) for an unpaid position.

Finally, the defendant's argument that he alone can communicate "effectively" with shareholders and prospective investors (ECF 14, ¶ 8), is amply refuted by his track record. The defendant's history of making materially false and misleading statements to company investors and shareholders has resulted in a criminal indictment, an SEC-imposed trading suspension, an SEC action alleging securities fraud, a federal securities fraud class action, and, most recently, a civil suit filed by three individual investors who purchased millions of dollars in preferred stock and convertible debt.[3] The defendant also misstates the facts. Contrary to his claim, DECN has other senior employees, including at least one individual, whom the defendant's counsel purports to also represent. The defendant does not explain why these other DECN employees are incapable of communicating about DECN business.[4]

In any event, to the extent the defendant's role as <u>sole</u> officer and director poses a problem for DECN (ECF 14, ¶ 18), that matter is for the company to resolve, not this Court. The solution possibly may be for the company to find a person who can actually perform the requisite duties and responsibilities; the solution is not for the Court to vacate its order when that order remains necessary to protect victims, shareholders, and prospective investors, and safeguard against the risks of witness tampering and obstruction.

---

[3] See In the Matter of Decision Diagnostics Corp., File No. 500-1, Order of Suspension of Trading; Securities and Exchange Commission v. Keith Berman, et al., Case No. 1:20-cv-10658 (S.D.N.Y.) (filed Dec. 15, 2020); Anthony Sanchez, et al., v. Decision Diagnostics Corp., et al., Case No. 2:21-cv-00418 (C.D. Cal..) (filed Jan. 15, 2021); Licgo Partners LLC, et al., v. Keith Berman, et al., Case No. 2:21-cv-2390 (C.D. Cal..) (filed Mar. 18, 2021). The latest action is significant because, in addition to the COVID-19-related fraud, plaintiffs also allege that, prior to the pandemic, the defendant repeatedly lied about DECN's blood glucose testing products and falsely claimed DECN was on the verge on being acquired. (Id. ¶¶ 23-24.)

[4] Trial in this matter is set for July, about three months from now. While the government understands that the conditions may inconvenience the defendant, they are unlikely to be long-lasting. After the trial, should the defendant be acquitted, these conditions will disappear.

B. <u>The Defendant's Travel Restrictions Should Not Be Loosened</u>

The defendant also asks the Court to modify his conditions to relax restrictions so as to allow him to travel to four new jurisdictions, including two jurisdictions bordering Mexico. (ECF 14, ¶¶ 13-14.) The purported reason for his request is to travel for in-person meetings with prospective investors to raise money. (<u>Id.</u>) The defendant does not identify any prospective investors in these jurisdictions who wish to meet with him in person. The Court should deny this request for the following reasons:

First, the Court need not modify the defendant's conditions to allow him to conduct business in these jurisdictions. Amidst the pandemic, business meetings, including public hearings of this Court, are regularly conducted via videoconference to protect against spread of COVID-19. There is no reason why the defendant is unable to conduct any such meetings via videoconference.

Second, the defendant poses a serious risk of flight. He is 67 years old and, if convicted, his Guidelines range hovers around the 20-year statutory maximum term of imprisonment. In the face of overwhelming evidence, the defendant has an incentive to flee. There is also a realistic possibility that if permitted to travel to the Southern District of California or the District of Arizona, the defendant could successfully flee. And were the defendant to leave the country, his voice ID location monitoring would not alert Pretrial Services until after he was already gone.

Third, should such travel in the next three months be absolutely necessary for DECN business, the defendant would remain free to request accommodations from the Court and Pretrial Services on a case-by-case basis. Denying the defendant's request will thus result in no prejudice to reintroducing it if the travel is not hypothetical.

The defendant also wishes to travel to visit his son in the Southern District of California. (ECF 14, ¶ 13.) The defendant does not articulate a specific need to visit before trial, and does not

explain why his son is unable to travel to the Central District of California—a two-hour drive from his son—to visit him before that time.

The government agreed to recommend, and the court in the Central District of California imposed, relatively lenient conditions of release in December 2020. The defendant's conditions include no meaningful restraints on his personal liberty, such as an ankle monitor or curfew. Asking the defendant to remain in the Central District of California for three months is not unreasonable, and is the likeliest method—short of detention, which the government reserves the right to seek in the future—of ensuring the defendant's appearance at trial.

### III. Conclusion

For all of the foregoing reasons, the Court should deny the defendant's motion to modify his conditions of pretrial release.

Respectfully submitted,

DANIEL S. KAHN
Acting Chief, Fraud Section
Criminal Division

By:   /s/ Christopher Fenton
Christopher Fenton
Trial Attorney
Justin Weitz
Principal Assistant Deputy Chief
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Ave. NW
Washington, DC 20005
(202) 320-0539
christopher.fenton@usdoj.gov

CERTIFICATE OF SERVICE

      I certify that on April 6, 2021, I filed a true and correct copy of the foregoing with the Clerk of Court via ECF, and that I separately provided a copy of the filing via email to counsel for the defendant in this action.

                                        /s/ Christopher Fenton
                          Trial Attorney, U.S. Department of Justice