## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 1:20-CR-00278-TNM** |
| | ) | |
| KEITH BERMAN, | ) | |
| a/k/a "Matthew Steinmann," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | **15 U.S.C. §§ 78j & 78ff; 17 C.F.R.** |
| | ) | **§ 240.10b5; 18 U.S.C. §§ 1001, 1343, 1505,** |
| | ) | **& 2; 18 U.S.C. § 981(a)(1)(C); 28** |
| | ) | **U.S.C. § 2461(c); 21 U.S.C. § 853(p).** |
| | ) | |

### SUPERSEDING INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times material to this Superseding Indictment, unless otherwise specified:

1.      Decision Diagnostics Corp. ("DECN") was a medical device company based in California. DECN was in the business of developing, manufacturing, and distributing glucose test strips and meters.  DECN retained Vendor 1, a company based in the Republic of Korea, and Person 1, as technical advisors to assist with developing and manufacturing glucose test strips that used a process known as "impedance technology."

2.      DECN common stock traded over the counter ("OTC"), and shares were available for purchase and sale by the public.  DECN securities were regulated by the U.S. Securities and Exchange Commission ("SEC"), which was an agency within the executive branch of the federal government based in Washington, D.C.  DECN's shareholders lived throughout the United States and around the world, including in the District of Columbia.

3.      Defendant KEITH BERMAN served as DECN's Chief Executive Officer, Chief Financial Officer, Secretary, and Treasurer.  BERMAN was also DECN's sole director.  In these roles, BERMAN oversaw all aspects of DECN's business operations, and owed a fiduciary duty to DECN's shareholders.

4.      BERMAN frequently used press releases as a means of communicating with the public, including actual and potential investors in DECN.  BERMAN participated in drafting and approved press releases issued on behalf of DECN.  BERMAN transmitted DECN press releases to the public via the Internet, including to actual and potential investors in the District of Columbia, using means and instrumentalities of interstate commerce, including wires in interstate commerce.

5.      In or around late 2019, COVID-19 was first detected in Wuhan, China, and since that time has spread systematically across the world.  As a result of the spread of COVID-19 to and within the United States, on or about January 31, 2020, the Secretary of Health and Human Services declared a national public health emergency, and, on or about March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on or about March 1, 2020.  *See* 85 Fed. Reg. 15,337.  During the first months of the pandemic, there was a shortage of adequate testing capability, spurring significant demand for quick and affordable testing solutions.  In response, governments, companies, and other entities began searching for workable COVID-19 tests that could be deployed to test individuals and prevent the spread of the virus, making the manufacture and sales of a workable testing product a highly lucrative business opportunity.  The U.S. Food and Drug Administration ("FDA"), which was the United States' primary regulator of medical devices, began considering applications for "emergency use authorization" ("EUA") to allow rapid expansion of testing.

## **DECN's Precarious Financial Condition**

6.     While serving as DECN's CEO and director, BERMAN repeatedly represented that he "has not received any form of cash compensation as a result of our limited cash flow." BERMAN made these representations to investors in periodic filings and disclosures made public on the OTC Markets Group Inc. ("OTC Markets") website and elsewhere.

7.     BERMAN's representations to the public about his own compensation were materially false and misleading. In recent years, BERMAN misappropriated hundreds of thousands of dollars in DECN funds for his own personal use and benefit.

8.     For example, in 2019 and 2020 alone, BERMAN used over $360,000 in DECN company funds to pay to chat live on webcams with individuals living in foreign countries. These funds were spent for personal entertainment and were not business-related expenses. BERMAN did not disclose these uses of company funds to investors.

9.     In or around early 2020, BERMAN and DECN were experiencing financial difficulties. On or about March 3, 2020, BERMAN stated in an email that "my personal situation is perilous." BERMAN further elaborated on DECN's poor financial condition, stating that "I am letting three more people go Friday."

10.     In or around March 2020, BERMAN discussed his plan to use the COVID-19 crisis as an opportunity to increase DECN's value and address DECN's financial issues. On or about March 3, 2020, BERMAN stated in an email that "This will work out. I did something yesterday that worked. I am doubling down today. If this continues to work money will not be a problem for a long time."

11.     On or about March 5, 2020, BERMAN wrote an email in which he stated, "We have a lot at stake here. I am not just trying to raise money to pay [Vendor 1], but we need a new story and this coronavirus through impedance is the story that will allow me to raise millions."

12.     On or about March 1, 2020, BERMAN described his plan to use press releases to "pump" DECN's stock price in communications on investorshangout.com ("Investors Hangout"), an online platform for discussing securities investing.   BERMAN adopted a fake persona, "Matthew Steinmann," which BERMAN used to pose as a close friend of BERMAN and to communicate with DECN shareholders.   Specifically, on or about March 1, 2020, using the "Matthew Steinmann" alias, BERMAN wrote a series of private messages to Person 2, a long-time DECN shareholder, on Investors Hangout:

| | |
|---|---|
| BERMAN: | KB is writing the press release for GenViro [DECN's purported COVID-19 testing mechanism] or whatever they plan to call it.<br>He said it will be the hardest news release he ever wrote … |
| Person 2: | Why the hardest PR ever? |
| BERMAN: | KB … would have problems connecting random dots that a sizzle PR would need to do. |
| Person 2: | Who will help him? |
| BERMAN: | he will probably write it and then get a pro to recast it into penny pump |
| Person 2: | And I thought KB doesn't like to pump? |
| BERMAN: | Desperate times sometimes call for desperate measures. |
| Person 2: | Yes they do. |
| Person 2: | Timeline? |
| BERMAN: | All in short order.  As short as possible. |

4

### The Scheme to Defraud DECN Investors

#### Purpose of the Scheme

13.     It was the purpose of the scheme for BERMAN to artificially increase and maintain the share price of DECN securities to enrich himself through access to additional corporate funds and compensation by: (a) making materially false, fraudulent, and misleading public statements related to DECN's purported COVID-19 test; (b) concealing the true facts about DECN's purported COVID-19 test; (c) diverting the proceeds of the scheme for his personal use and benefit; and (d) concealing the scheme from regulators, law enforcement, shareholders, and the investing public.

#### Manner and Means of the Scheme to Defraud

14.     In furtherance of the scheme, BERMAN used the following manner and means, among others:

      a.  BERMAN made, and caused to be made, materially false, fraudulent, and misleading public statements about, among other subjects: (i) DECN's development of a test capable of detecting COVID-19 in a sample of blood; (ii) DECN's application to the FDA for EUA of a test capable of detecting COVID-19 in a sample of blood; (iii) DECN's business and operations; and (iv) BERMAN's use of DECN's corporate funds.

      b.  BERMAN authored, reviewed, approved, issued, and distributed to the public, via the Internet, press releases and periodic filings and disclosures containing materially false, fraudulent, and misleading statements about DECN, in order to artificially increase and maintain the share price of DECN securities;

c.  BERMAN used aliases to post false, fraudulent, and misleading messages about DECN's business and operations on investor message boards, in order to artificially increase and maintain the share price of DECN securities;

d.  BERMAN used aliases, including "plutonium" and "plutoniumimplosion," to post messages on investor message boards refuting allegations that BERMAN had made false, fraudulent, and misleading public statements about DECN's business and operations and BERMAN's use of corporate funds, and otherwise making lulling statements to actual and potential investors in DECN securities;

e.  BERMAN made false statements to the SEC and federal law enforcement concealing his use of aliases to post messages on investor message boards;

f.  BERMAN concealed and disguised his involvement in drafting a series of purportedly independent shareholder letters calling for the SEC to terminate its trading suspension of DECN common stock and end its investigation of BERMAN and DECN; and

g.  BERMAN made false statements to federal law enforcement concealing his involvement in drafting the purportedly independent shareholder letters.

<u>Acts in Furtherance of the Scheme to Defraud</u>

*BERMAN's Materially False and Misleading Public Statements About the Viability of the COVID-19 Blood Test*

15.  As the effects of the COVID-19 pandemic began to be felt in the United States and many patients faced difficulty obtaining access to COVID-19 testing, BERMAN used the COVID-19 pandemic as an opportunity to capitalize on the public health crisis to personally benefit himself and DECN.

16.  On or about February 29, 2020, BERMAN emailed Vendor 1 to ask whether it was "theoretically possible" to use the impedance technology that DECN used in glucose tests in order

6

to test for COVID-19 in blood or saliva.  Vendor 1 responded that while it could be "theoretically possible" to use impedance technology to detect a virus, Vendor 1 did not know whether impedance technology could be used to detect COVID-19 in blood or saliva.

17.     On or about March 2, 2020, BERMAN emailed Person 1 and falsely stated that Vendor 1 believed it could use an impedance test to detect COVID-19 in blood.  Person 1 expressed skepticism and asked BERMAN how Vendor 1 planned to develop such a test.  BERMAN responded that it "[b]eats me how the Koreans plan to do this."

18.     On or about March 3 and 4, 2020, BERMAN issued two press releases introducing DECN's "new screening methodology" for COVID-19, which BERMAN characterized as a "break-through."  BERMAN, through the press releases, falsely stated that DECN had "developed a Coronavirus screening method," and that DECN had "the technology perfected which will take months off of the development schedule."  BERMAN further falsely represented that the test provided a positive or negative result in 15 seconds based on a small finger prick blood sample, and that, in addition, the test provided a probability statistic that allows the user to determine the likelihood that the result is a false positive or a false negative.  BERMAN also falsely claimed "government fast track and waivers [sic] begun" and that the test kits would be "commercial ready in summer 2020."

19.     The statements in these press releases were materially false, fraudulent, and misleading, as BERMAN well knew.  DECN did not at that time have a COVID-19 test, did not know whether BERMAN's purported impedance method would actually be able to detect COVID-19, had not validated the accuracy of the impedance method for detecting COVID-19, and did not have a product that could test for COVID-19 using a blood sample, much less one that would accurately test for COVID-19 in less than 15 seconds; indeed, BERMAN's technical advisors had expressed

doubt as to the viability of such a product.  Further, DECN had taken no steps towards obtaining any government approvals or waivers for a COVID-19 test that would be required for a COVID-19 test kit to be "commercial ready in summer 2020."

20.     Throughout March 2020, BERMAN and DECN continued to issue materially false, fraudulent, and misleading press releases regarding the purported DECN COVID-19 blood test, and made false and fraudulent representations including that DECN was making significant progress toward bringing the product to market and would be ready to manufacture and sell hundreds of millions of units in the first year.  BERMAN issued and caused to be issued nine press releases in or around March 2020, and filed the company's annual report and accompanying disclosures on or about March 30, 2020.  During this period, Vendor 1 repeatedly informed BERMAN that his proposed impedance method for detecting COVID-19 was unlikely to be scientifically workable.

21.     On or about March 18, 2020, BERMAN issued a press release in which he falsely represented that Vendor 1 had successfully validated a test that used impedance technology to detect coronavirus in a blood sample.  This press release was materially false, fraudulent, and misleading because Vendor 1 had not validated such a test.

22.     On or about March 22, 2020, Vendor 1 informed BERMAN that it had concluded it could not use impedance technology to test blood for COVID-19.  Vendor 1 informed BERMAN that his proposed methodology was flawed because it could not actually detect COVID-19 in a blood sample, let alone distinguish COVID-19 from other viruses.  BERMAN did not disclose these material facts to the market and DECN shareholders, or correct DECN's prior materially false, fraudulent, and misleading statements.

23.     On or about March 23, 2020, BERMAN issued a press release in which he falsely claimed that "DECN [] through its advanced development team in Korea, have finalized the configuration of the [] test strip that will go into production just as soon as the FDA grants emergency status to the DECN product."

24.     On or about April 2, 2020, Vendor 1 again emailed BERMAN to repeat its conclusion that it could not use impedance technology to test for COVID-19 from a blood sample because it could not actually detect COVID-19 in a blood sample, let alone distinguish COVID-19 from other viruses.   BERMAN responded that "We will respond to this next week AFTER FDA approval. That is all we are concerned about now. FDA approval so we can raise money."

*BERMAN's Materially False and Misleading Public Statements About DECN's EUA Application*

25.     Throughout 2020, BERMAN and DECN issued press releases and periodic disclosures that contained materially false, fraudulent, and misleading statements touting the progress of DECN's emergency use application to the FDA for use of DECN's purported COVID-19 test. BERMAN failed to disclose that DECN was unable and unwilling to conduct the type of clinical testing that the FDA required in order for companies to demonstrate that their COVID-19 test was sufficiently accurate in detecting COVID-19.

26.     The FDA informed DECN that it would not be able to complete the EUA application process without such clinical testing.   BERMAN concealed and disguised from the market and shareholders that DECN had not actually built a prototype for use in testing and lacked the necessary insurance to conduct scientifically reliable validation testing on human beings, as required by the FDA.   Without such insurance and such testing, DECN's purported COVID-19 blood test lacked the indicia of reliability that the FDA required before approving a medical device for emergency use by human beings.

27.     One example of BERMAN's materially false, fraudulent, and misleading statements about the EUA application occurred on or about March 16, 2020, when BERMAN issued a press release titled: "Emergency Waiver in Progress With U.S. FDA," in which BERMAN represented that DECN was "awaiting release of blood samples from previously infected people in Daegu, Korea, so that [DECN] can complete testing and make a final report to the U.S. FDA so that [DECN] may secure our Emergency Waiver.  In the meantime, all other requests made by the FDA will be met this week and next."  This statement was materially false, fraudulent, and misleading because DECN was not yet prepared to make a "final report" to the FDA, and had not yet submitted its initial EUA application.

28.     On or about April 3, 2020, DECN submitted its EUA application to the FDA.  On or about April 4, 2020, the FDA sent a "Pre-EUA Acknowledgment," which was a standard form letter acknowledging that it had received the application, but that did not express a view as to whether the EUA was likely to be approved.

29.     On or about April 7, 2020, BERMAN issued a press release characterizing DECN's receipt of the FDA acknowledgement letter as a "grant by the FDA" and a "major milestone."  BERMAN further stated that, in response to DECN's submission of its EUA application, "the FDA review staff [made clear it] was aware that [DECN's] methodology was different than those slower and older methods that had received FDA EUAs, or were in review," and provided DECN a copy of its guidance so that the company could complete its "final product testing."

30.     These statements were misleading.  BERMAN knew, but failed to disclose, that DECN had not yet conducted any testing showing that the company's purported test was actually capable of detecting COVID-19 in a sample of blood, let alone capable of distinguishing COVID-19 from other viruses.  Moreover, contrary to the representations BERMAN made in the April 7, 2020,

press release, BERMAN knew that DECN was not prepared to conduct "final" product testing and that the FDA was not on the verge of approving the company's application for emergency use of its purported COVID-19 blood test.

31.    In the following weeks, the FDA told BERMAN that it would not approve the EUA unless DECN conducted clinical testing, which BERMAN knew DECN was unable to do because of a lack of financial resources and insurance coverage necessary for clinical testing.

32.    Since BERMAN knew that DECN could not meet the FDA's testing requirements, BERMAN hired consultants to assist him with pressuring the FDA to approve DECN's EUA application.  BERMAN, through his consultants, also began pressuring Members of Congress to engage the FDA on DECN's behalf, in the hope of influencing the FDA's EUA process.

33.    On or about April 21, 2020, the consultants circulated "talking points" which had been "approved for use by" BERMAN.  The talking points for Members of Congress stated BERMAN's view that that DECN's EUA application was originally "moth-balled" and then "stuck in limbo" due to FDA inaction.  BERMAN was therefore aware that FDA approval was not imminent, although BERMAN concealed this material fact from the market and shareholders.

34.    On or about April 23, 2020, BERMAN authorized a press release stating that DECN had "completed discussions and have come to an understanding with the FDA on all of the testing required to receive the EUA.  We plan to engage a specialty reference laboratory to complete this testing in the next 10 days. Testing should take about a week."

35.    These statements were materially false, fraudulent, and misleading because, as BERMAN well knew, DECN had not come to an understanding with the FDA on all of the testing required to receive the EUA; in truth, DECN was neither willing nor able to comply with the FDA's testing

requirements; at that point, it had conducted no testing whatsoever to demonstrate that the impedance technology could accurately detect COVID-19 in blood.

*The SEC Investigation and BERMAN's Continued Misleading Conduct*

36.     Beginning in or around March 2020, the SEC initiated an investigation into DECN and BERMAN.  This investigation constituted a pending proceeding through the remainder of 2020.

37.     On or about April 23, 2020, the SEC suspended trading in DECN stock due to questions regarding the accuracy of information in DECN's press releases regarding COVID-19.  The SEC had an open investigation into DECN at this time.  Between in or around early March 2020 and the trading suspension, DECN's stock price had risen by over 1500%, as a result of purchases and sales of DECN securities.

38.     In the following months, DECN still did not take any steps to develop a COVID-19 test, validate the accuracy of the impedance method for detecting COVID-19, conduct the clinical studies required by the FDA, or receive FDA authorization related to the DECN COVID-19 blood test.  Nevertheless, BERMAN continued to issue materially false, fraudulent, and misleading statements to investors.  For example, on or about July 10, 2020, BERMAN issued a press release representing that DECN's COVID-19 blood test was functional, "producing results at :10.5 seconds," and that DECN continued working toward completing the EUA application process by completing the FDA's testing requirements.  BERMAN well knew that these statements were materially false, fraudulent, and misleading, since Person 1 had repeatedly expressed concerns to BERMAN that COVID-19 may not be present in blood at all or in detectable amounts,  DECN's purported COVID-19 blood test had never been developed nor reliably tested, and BERMAN was unwilling and unable to take the steps necessary to conduct the type of clinical testing required by the FDA.

*BERMAN's Use of a Fake Identity to "Pump" DECN Stock on Investor Message Boards*

39.     BERMAN frequently posted about DECN on publicly-available Internet websites and message board services used by investors and potential investors, and employed both public posting and private messaging to promote the stock.  He concealed his true identity as a DECN officer and director by using aliases and fake identities.

40.     For example, Investors Hub ("iHUB") and Investors Hangout were sites and message board services used by investors and potential investors in securities.  iHUB and Investors Hangout both offered a variety of online tools for investors to use when researching securities, including message boards, and often influenced investors' decisions to purchase or sell securities.  iHUB and Investors Hangout were widely used by OTC investors in DECN and other similar stocks.

41.     BERMAN created an alias, "plutoniumimplosion," for use on the iHUB message board for DECN.  BERMAN, posting under plutoniumimplosion, did not disclose his true identity or involvement with DECN; indeed, through the plutoniumimplosion alias, BERMAN denied that he was BERMAN in a public post on at least one occasion.  While using the alias plutoniumimplosion, BERMAN falsely claimed to be an independent shareholder who had owned DECN stock for nearly twenty years.  BERMAN also falsely claimed that he was an industry insider with years of experience working for medical device manufacturers.

42.     Similarly, BERMAN created an alias, "plutonium," for use on the Investors Hangout message board for DECN.  BERMAN, posting under plutonium, did not disclose his true identity or involvement with DECN; rather, BERMAN falsely represented that his name was "Matthew Steinmann" and that he was BERMAN's friend and an independent shareholder of DECN stock.

43.     Between on or about March 1, 2020, and on or about August 15, 2020, BERMAN posted over a thousand messages to the iHUB DECN message board, in order to promote DECN and pump the stock price higher.

44.     In a private message sent on or about March 10, 2020 via Investors Hangout using the alias "plutonium," BERMAN told Person 2 that BERMAN was working with a "legit IR pump icon."

45.     BERMAN's investor board messages also responded to investor concerns and doubts regarding the accuracy of DECN's public statements about its COVID-19 blood test.  For example, on or about March 12, 2020, an investor questioned whether anybody actually believed that DECN would be ready to bring to market and sell hundreds of millions of units in the first year.  BERMAN wrote (using his alias, plutoniumimplosion):

> I do. And my company has looked at this situation/opportunity and we believe that the first year worldwide demand for a screening product will be close to 3 billion kits. Eventually large pharma and copy cats will get into the market, or perhaps there are companies a little ahead of DECN. But by and large DECN is, by hook, crook or luck, is in the forefront no matter how loud the naysayers are.  But then again the 5-6 message board posters may be right and Mr. Berman will find himself in jail or prison.

46.     On or about March 25, 2020, after an investor questioned whether DECN could bring its product to market, BERMAN posted (using his alias, plutoniumimplosion):

> Not if my company manufactures them. We have excess factory capacity in Korea and Japan. And by the way, DECN CEO Berman knows us well and we do not at all think of him like posters … are trying to make us all believe. We know CEO Berman well and we have reviewed the product specifications and find them to be game changing.

47.     BERMAN continued to conceal and disguise his use of the iHUB message board to communicate with and influence investors.  On or about October 9, 2020, Berman provided sworn testimony to the SEC in Washington, D.C.  When asked under oath about his use of message boards, BERMAN falsely stated: "Yeah.  I've not been a part of …. Investors Hub Daily."  This false and

misleading statement was part of an effort to corruptly influence, obstruct, and impede the SEC's investigation.

48.     On or about October 27, 2020, BERMAN falsely told federal law enforcement agents that BERMAN was not involved with the message boards, in order to conceal the fact of his false and misleading communications with actual and prospective DECN investors.

*BERMAN's Role in Creation of a Purported Shareholder Letter to Corruptly Influence, Obstruct and Impede the SEC's Investigation*

49.     On or about April 23, 2020, when the SEC announced it was suspending trading in DECN securities, among other things, the SEC cited questions about the accuracy of DECN's public statements about its COVID-19 blood test.  Thereafter, BERMAN attempted to corruptly influence, obstruct, and impede the SEC's investigation into DECN, by engineering a false shareholder letter.

50.     BERMAN used his alias, plutoniumimplosion, to attempt to threaten and intimidate individuals who approached the SEC and other regulators regarding DECN.  Using his alias, plutoniumimplosion, BERMAN stated that he "hope[d] [the list of people that complained to the SEC] have indemnification agreements with the SEC, and they better have been accurate when they listed their allegations."  Using his alias, plutoniumimplosion, BERMAN also repeatedly warned about what he called "knock knock day," implying that the authorities would show up at the homes of the individuals who had complained about DECN and arrest them.

51.     On or about June 2, 2020, BERMAN emailed Vendor 1, stating: "my company cannot raise money based on GenViro news as long as the SEC is investigating us."

52.     In an attempt to impede and end the SEC's investigation and resume raising money, BERMAN enlisted Person 2 under false pretenses to write a "shareholder letter" to the SEC.  Using the alias "plutonium," BERMAN falsely represented himself to Person 2 as "Matthew Steinmann," one of BERMAN's friends and an independent shareholder of DECN.

53.     On or about May 25, 2020, "Matthew Steinmann" sent a private message via Investors Hangout to Person 2, directing Person 2 to "Draft a letter to the SEC, the chairman and the lawyer on the suspension notice." Person 2 responded: "The mechanics of that are simple. What goes into the letter is more complicated. … Point us in the right direction and we can do it no problem."

54.     Around this time, BERMAN, using his alias, plutonium, suggested to Person 2 to involve BERMAN in the drafting process and Person 2 agreed. From that point forward, Person 2 was misled to believe that Person 2 was working with both "Matthew Steinmann" and BERMAN to prepare the purported "shareholder letter" when, in reality, BERMAN was Matthew Steinmann.

55.     During this time, BERMAN played a significant role in developing, reviewing, and editing the purported shareholder letter – both as himself and using his false persona, "Matthew Steinmann." BERMAN provided information to Person 2 to include in the shareholder letter, outlined themes, reviewed drafts, and made extensive comments and line edits. BERMAN also instructed Person 2 about how, when, and to whom to send the shareholder letter. For example, "Matthew Steinmann" wrote to Person 2: "I will talk to KB about that … not whether it is posted, but when[.] the shareholder letter should post just after the company posts its eat shit and die letter directly to Fredo."

56.     "Fredo" was a name BERMAN repeatedly used to refer to an SEC attorney who was involved in the DECN trading suspension, and refers to a character in the motion picture *The Godfather*.

57.     BERMAN also encouraged Person 2 to gather signatures from a certain number of shareholders before sending the letter to the SEC. BERMAN then used his alias "plutoniumimplosion" on iHUB to recruit shareholders to join the group and sign the purported "shareholder letter," writing: "There is a group of DECN shareholders assembling to put a

shareholder spin on the goings on with the SEC.  If you are interested in joining the group, write to: [Person 2's email]."

58.    The 19-page shareholder letter accused the SEC of unethical and inappropriate conduct against DECN.  For example, the letter levied allegations of "bias and possibly collusion between the SEC investigators and rogue message board posters many of whom are also perhaps cyber criminals, who aim to destroy Decision Diagnostics Corp., and with that the chance to possibly curtail the spread of COVID-19 and return normalcy to all Americans."  The shareholder letter further asserted that the SEC's actions between April and June 2020 "are damaging to humanity with respect to the creation, development and, we hope (as should you and every American), emergency use authorization of the GenViro! products to assist in the detection of the deadly Coronavirus."  The shareholder letter also accused the SEC of using an "official [] purpose" as pretext to make submissions that were really intended "to pile on and to demean [] Mr. Berman." BERMAN signed the purported "shareholder letter" using the fake name "Matthew Steinmann."

59.    After the shareholder letter had been sent to the SEC, BERMAN proceeded to post on iHUB about this and other purported shareholder letters to the SEC.  For example, on or about June 8, 2020, BERMAN posted, using his alias, plutoniumimplosion, that:  "The rumor du jour is that DECN is going to post [on the OTC Markets website] the DECN Shareholder letter to the SEC. I understand names are named. The letter is long, complete and terrifying if you're certain people. It should make for good reading. I will comment on this letter after I have a chance to review it in detail."  BERMAN further posted that "Berman had nothing to do with the letter. But I did, and so did almost 60 other shareholders. Knock knock day gets closer."

60.    BERMAN's goal was to impede the SEC proceeding and investigation.  For example, on or about May 31, 2020, BERMAN, again using his alias, plutonium, wrote to Person 2, to outline

the strategy: "they are going to get [t]his 3 times. [Y]our letter, KB's letter when he turns over the FDA file later this coming week, and finally the DECN briefing in the Form 550  matter.  All three will discuss the same topics, but as each is filed the rhetoric will grow. … They may initiate another suspension.  That's why you have to reserve the right to file a whistle blower complaint because that will freeze everything."

61.     BERMAN discussed ways to intimidate the SEC and its staff.  For example, on or about May 31, 2020, BERMAN, using his alias plutonium, sent a message to Person 2 in which he wrote: "KB told me today that he is going to hire a private investigator … to investigate Fredo."

62.     On or about June 13, 2020, BERMAN further posted on iHUB, using his alias, plutoniumimplosion: "You would be surprised how much weight that Shareholder Letter has carried. And I believe there will be another one that takes the May 20, 2020 Fredo [Last Name of SEC Staff Attorney] fantasy/hit job piece and brings Shareholder concerns up to the moment. I will consider it an honor to work on this 2nd Shareholder letter."

63.     These letters were intended to bring about the end of the SEC investigation and allow BERMAN to continue raising money using his false, fraudulent, and misleading statements about DECN's purported COVID-19 testing capability.

64.     On or about October 27, 2020, BERMAN falsely told federal law enforcement agents that neither BERMAN nor DECN had been involved with the shareholder letters, stating that "we had nothing to do with the shareholder letter."

65.     As a result of the fraudulent scheme detailed above, DECN investors lost millions of dollars by, among other things, purchasing DECN common stock at artificially inflated prices and selling their shares at a loss.

## COUNT ONE

### (15 U.S.C. §§ 78j & 78ff, 17 C.F.R. § 240.10b5  – Securities Fraud)

66.     Paragraphs 1 through 65 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

67.     From at least in or around February 2020 through in or around December 2020, in the District of Columbia and elsewhere, the defendant,

### KEITH BERMAN

willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, and aided and abetted others known and unknown to the grand jury, in violation of Title 15, United States Code, Sections 78j and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b5, and Title 18, United States Code, Section 2, by: (a) employing devices, schemes and artifices to defraud; (b) making, and causing others to make, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers of DECN securities; to wit, BERMAN issued materially false and misleading public statements regarding DECN's COVID-19 testing capabilities.

All in violation of Title 15, United States Code, Sections 78j and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

## COUNT TWO

### (18 U.S.C. §§ 1343 & 2 – Wire Fraud)

68.     Paragraphs 1 through 65 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

69.     From at least in or around February 2020 through in or around December 2020, in the District of Columbia and elsewhere, the defendant,

### KEITH BERMAN

knowingly, and with the intent to defraud, having devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

### Purpose of the Scheme

70.     Paragraph 13 of this Superseding Indictment is realleged and incorporated by reference herein.

### Manner and Means of the Scheme to Defraud

71.     Paragraph 14 of this Superseding Indictment is realleged and incorporated by reference herein.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE

### (18 U.S.C. §§ 1505 & 2 – Obstruction of Proceedings)

72.     Paragraphs 1 through 65 of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

73.     From at least in or around March 2020 through in or around December 2020, in the District of Columbia and elsewhere, the defendant,

### KEITH BERMAN

did knowingly and corruptly influence, obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which any pending proceeding was being had before any department and agency of the United States, that is, a proceeding conducted by the Securities and Exchange Commission in relation to DECN.

All in violation of Title 18, United States Code, Sections 1505 and 2.

## COUNT FOUR
### (18 U.S.C. § 1001 – False Statements)

74.     Paragraphs 1 through 65 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein.

75.     On or about October 9, 2020, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, the defendant,

### KEITH BERMAN

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, to wit, in sworn testimony before the U.S. Securities and Exchange Commission, BERMAN falsely stated that he was not involved with posting on Investors Hub message boards.

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## FORFEITURE ALLEGATION

The Grand Jury further charges that:

76.     The allegations contained in paragraphs 1 through 75 of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

77.     Pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), upon conviction of an offense in violation of Counts One, Two, or Three, as alleged in this Superseding Indictment, defendant,

### KEITH BERMAN,

shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud.  The property to be forfeited includes, but is not limited to, a money judgment in the amount of the total loss caused by the defendants' criminal conduct, as determined by the Court at sentencing.

78.     If any of the property described above, as a result of any act or omission of the defendants:

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).


THIS IS A TRUE BILL.


_____

FOREPERSON


DANIEL S. KAHN
Acting Chief
Criminal Division, Fraud Section
United States Department of Justice

By:  _____

CHRISTOPHER FENTON
Trial Attorney

JUSTIN WEITZ
Principal Assistant Chief
Criminal Division, Fraud Section
United States Department of Justice

Dated:        May 11, 2021