## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 1:20-cr-00278-TNM** |
| **v.** | : | |
| | : | |
| **KEITH BERMAN,** | : | **Filed Under Seal** |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SEALED RESPONSE IN OPPOSITION TO
## DEFENDANT'S LETTER MOTION FOR DISCOVERY

The United States of America, through its undersigned counsel, respectfully submits its sealed response in opposition to defendant Keith Berman's letter motion for discovery (Dkt. No. 24).[1]  The motion speculates inappropriately as to the government's intentions and should be denied.

### I.      Background

The superseding indictment (Dkt. No. 19) alleges that the defendant used the COVID-19 pandemic as an opportunity to scam his company's shareholders. Having misappropriated hundreds of thousands of dollars of shareholder money, including to buy live one-on-one webcam sessions for his personal entertainment, the defendant needed a "new story" to "raise money."   In the early days of the pandemic, when testing capacity was an issue of global importance, the defendant repeatedly lied to shareholders and prospective investors, claiming that his company, Decision Diagnostics Corp. ("DECN"), had developed a 15-second test to detect COVID-19 in a finger prick

---

[1] The government has filed this response under seal, since it "is in connection with a grand jury subpoena."  *See* Local Criminal Rule 6.1 ("A motion or application filed in connection with a grand jury subpoena or other matter occurring before a grand jury, all other papers filed in support of or in opposition to such a motion or application, and all orders entered by the Court in connection therewith, shall be filed under seal.").

sample of blood, when it had not.   (Id. ¶¶ 13-14.)   As the defendant lied, DECN's stock price rose, though it would later decline precipitously when the truth was revealed.   (Id. ¶ 37.)

According to the superseding indictment, when the U.S. Securities and Exchange Commission ("SEC") opened an investigation, the defendant expressed concern that the SEC investigation would prevent him from continuing to raise money off the COVID-19 crisis. (Id. ¶¶ 49-64.)   To stop the SEC's investigation so that he could resume raising money, the defendant surreptitiously worked with a shareholder, whom the defendant enlisted under false pretenses, to ghost-write a series of letters attacking the SEC.   The defendant encouraged the shareholder to recruit other shareholders to sign the false and misleading letters, which the shareholder did. Around the same time, the defendant used a fake identity on investorshub.com ("iHUB"), a popular Internet message board, to threaten and intimidate shareholders who expressed concern the defendant was lying about DECN's purported COVID-19 test.   Among other threats, he repeatedly warned about "knock knock day," implying that the authorities would show up at the homes of shareholders who complained to the SEC and arrest them. The defendant subsequently lied to FBI agents when asked about his involvement in writing the purported shareholder letters.   He also lied to FBI agents and the SEC staff about his involvement in iHUB.

Trial is set in this matter for September 20, 2021.

**II.   Argument**

A.   The Government's Use of the Grand Jury Was Proper

The defendant's motion asks whether the government violated Department of Justice internal policies and guidelines by subpoenaing materials after the grand jury returned the original indictment in this matter in December 2020.   (Mot. at 2.)   The Justice Manual explicitly states that "is not intended to, does not, and may not be relied upon to create any rights, substantive or

procedural, enforceable at law by any party in any matter civil or criminal," JM § 1-1.200, *available at* https://www.justice.gov/jm/jm-1-1000-introduction#1-1.200 (last accessed June 20, 2021), and the D.C. Circuit has repeatedly noted that "we do not believe the general guidelines established by the Manual are judicially enforceable."   *United States v. Kember*, 648 F.2d 1354, 1370 (D.C. Cir. 1980); *see also United States v. Williams*, 827 F.3d 1134, 1152 n.7 (citing *Kember*); JM § 9-27.150 (providing for non-litigability in criminal cases).

While the Justice Manual is not enforceable, the law recognizes that the grand jury cannot be used to obtain additional evidence for purposes of strengthening the government's case at trial. Instead, the government may use the grand jury only to investigate additional criminal activity by a defendant or a defendant's criminal cohorts.   While the defendant has not formally moved for relief under this doctrine, the government will respond substantively because the defendant's implications of grand jury abuse are entirely unfounded.

A grand jury's investigation is legitimate and proper where the grand jury continues to investigate additional charges and additional defendants after an indictment. *See United States v. Jenkins,* 904 F.2d 549, 559 (10th Cir. 1990); *United States v. Gibbons*, 607 F.2d 1320, 1328 (10th Cir. 1979).   "[T]he grand jury process is abused when the prosecutor uses it 'for the primary purpose of strengthening the Government's case on a pending indictment or as a substitute for discovery, although this may be an incidental benefit.'" *United States v. Apperson*, 441 F.3d 1162, 1189 (10th Cir. 2006) (citations omitted).   "The defendant bears the burden of establishing that the government abused the grand jury system."   *United States v. Sitzmann*, 74 F. Supp. 3d 96, 123 (D.D.C. 2014), *aff'd*, 893 F.3d 811 (D.C. Cir. 2018) (citations omitted).

The overwhelming majority of case law surrounding this doctrine involves situations where the government continued to investigate conduct after the initial indictment, but ultimately opted

3

not to seek a superseding indictment.   In this matter, the government presented, and obtained, a superseding indictment against the defendant in May 2021, about five months after the original indictment in this matter.   This superseding indictment contained two additional counts, including one count of obstruction of an agency proceeding.   This alone should be sufficient to defeat the defendant's allegation of grand jury abuse.

While the defendant asks this Court to inquire, *in camera*, as to the government's compliance with the Justice Manual (and notes, without further explanation, that such inquiry might necessitate an adjournment of the trial), Mot. at 3, this request should be denied.   The defendant can make no showing of improper purpose, nor can he show that the subpoena returns he mentions, which he received seventeen days after the superseding indictment as part of discovery, in any way prejudices his ability to have a fair trial in September 2021.

B. The Defendant Makes No Showing of Any Improper Purpose, or Access to Privileged Materials

The defendant also asks the Court to inquire, *in camera*, about the government's rationale for issuing a grand jury subpoena to defense attorney Ronald Herzog's telephone provider, to obtain telephone records for Mr. Herzog.   The defendant has offered no basis, other than speculation, for why such an inquiry is appropriate or necessary.

"As a necessary consequence of its investigatory function, the grand jury paints with a broad brush." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991). "A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" *Id.*   Citing *R. Enterprises*, the D.C. Circuit has stated that "a grand jury subpoena is presumed to be reasonable and the burden is on

4

the subpoena's opponent to disprove this presumption." *In re Sealed Case*, 121 F.3d 729, 755 (D.C. Cir. 1997).

The defendant cannot disprove this presumption of reasonableness. The government has previously submitted evidence that defendant has been in contact with victims and potential witnesses in this matter. (Dkt. No. 15 at 3-4.) Following the December 2020 indictment, the grand jury continued its investigation into obstructive conduct, and ultimately voted to return an indictment charging the defendant with obstruction.

Courts that have dealt with similar questions have generally ruled that mere inquiry into a defendant's lawyer is not, in and of itself, improper. In *In re Grand Jury Proceedings*, the court enforced a grand jury subpoena to a law firm for fee records. 201 F. Supp. 2d 5 (D.D.C. 1999). The court noted that such a subpoena, which did not call for the production of privileged material, was within the scope of the grand jury's investigation. Citing a similar Fourth Circuit case, the court noted that such a request was consistent with the grand jury's obligation, since "grand jury investigations, no less than other investigations, will necessarily meet dead-ends. The point is simply that leads cannot be foreclosed before they are pursued." *In re Grand Jury Proceedings*, 42 F.3d 876, 879 (4th Cir. 1994); *see also United States v. Boender*, 719 F. Supp. 2d 951 (N.D. Ill. 2010) (discussing use of a defense lawyer to commit obstruction of justice).

The defendant also expresses concern about the government's exposure to potentially privileged communications between himself and his counsel. It is unclear how telephone toll records, which indicate the date and time of, and phone numbers involved in, a call or text message, would expose the government to anything that is potentially privileged. These records do not contain content of communications, whether privileged or unprivileged, and the defendant has not identified any concerning communications that the government has accessed. Unlike the cases

cited above, where the grand jury sought information directly from defense counsel, this subpoena involves telephone metadata which does not, by definition, contain any potentially privileged material.   And to the degree the government has obtained materials that might expose it to potentially privileged communications, it has, throughout this investigation, ensured that those materials are reviewed by filter attorneys.

The government is, of course, ready, willing, and able to provide the Court, *in camera*, with any additional context about the investigation.   But the defendant has made no showing—of either improper actions or purpose—that justifies the relief he seeks.[2]

## III.    Conclusion

For the foregoing reasons, the Court should deny the defendant's motion.

Respectfully submitted,

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division

By:    /s/ Justin Weitz
Christopher Fenton
Trial Attorney
Justin Weitz
Acting Principal Assistant Chief
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Ave. NW
Washington, DC 20005
(202) 598-8084
Justin.weitz@usdoj.gov

---

[2]  The defendant states that the subpoena "causes one to engage in such suppositions which I would be glad to be shown are untrue," and wonders "whether the subpoena might have had the aim of creating a personal interest of Mr. Herzog's that could be seen as adversely affecting his representation of Mr. Berman."  (Mot. at 2-3.)   The allegation that the government was attempting to manufacture a conflict is completely baseless.   While the government has raised concerns about potential conflicts in this matter, the government has not, to date, moved to disqualify Mr. Herzog from representing the defendant in this case.

CERTIFICATE OF SERVICE

I certify that on June 27, 2021, I filed a true and correct copy of the foregoing with the Clerk of Court via ECF.

_____ /s/ Justin Weitz_____

1