UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------------------------------------x

UNITED STATES OF AMERICA

                    Plaintiff,

     v.

KEITH BERMAN,

                    Defendant.

---------------------------------------------------------x

No. 1:20-CR-00278-TNM

FILED UNDER SEAL

DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO
THE DEFENSE MOTION FOR DISCOVERY RELATED TO THE GOVERNMENT
SUBPOENA OF THE LAW FIRM AND MOBILE TELEPHONE RECORDS OF
DEFENDANT KEITH BERMAN'S COUNSEL

Counsel for the defendant Keith Berman respectfully submits this reply to the Government's opposition to the defense motion concerning the Government's use of a grand jury subpoena to obtain the records of Mr. Ronald Herzog's law firm office and mobile telephone. Pursuant to Local Rule 6.1, the defense requests that this reply, like the Government's opposition, be filed under seal.

Relevant Background

After learning from Government discovery sent to defense counsel that the Government had obtained Mr. Herzog's telephone records from his telecommunications carrier, I wrote to the Government, by letter dated June 7, 2021, seeking an explanation why it had sought and obtained

this information from a lawyer representing the client the Government is prosecuting. (Ex. A to the motion)

On June 13, 2021, Government counsel responded. The response characterized our request as inquiring into the government's "ongoing investigation," and declined "to explain the motivations for steps taken in a grand jury investigation." The letter expressed the Government's obligation, when coming into possession of "potentially privileged communications in the course of a criminal investigation," and referred to a unit in the DOJ Fraud Section responsible for reviewing materials to filter out any attorney-client privileged documents. (Ex. B to the motion)

In sum, although this very short letter rejected our request for the reasons why the Government had subpoenaed the telephone records of defense counsel, the Government acknowledged that it had obtained "potentially privileged communications" in the form of telephone records and that these would be subject to the filter unit's process. However, the Government refused to state why these records had been subpoenaed on the ground that to do so would result in the disclosure of information about "an ongoing investigation."

The Government's Opposition to the Defense Motion

The Government's opposition is a curious and essentially unresponsive document that raises far more questions than it answers. Although the Government's response to our letter referred to an "ongoing investigation" and declined to describe "steps taken in a grand jury investigation," the Government now concedes, in its motion to file its opposition under seal, that the pending defense motion "does not directly deal with a pending grand jury matter." There is no attempt to reconcile the inconsistency between the Government's June 7 statements to the effect that our motion related to an "ongoing investigation" and the defense was improperly probing into

a "grand jury investigation" and its statement made less than three weeks later that the defense motion does not even relate to a pending grand jury matter.

Despite this concession, the Government opposition repeatedly invokes the secrecy and presumed regularity of the grand jury as the basis to refuse the relief requested by the defense—while also injecting irrelevant information and relying on inapposite caselaw.

For instance, the Government found irresistible beginning its opposition by needlessly summarizing some of the allegations in the Indictment. Surely that provides no relevant basis for denying the defense motion. Mr. Berman is presumed to be innocent of the charged offenses—no matter how often the Government delights in their repetition. Mr. Berman and defense counsel are entitled to maintain the confidentiality of the privileged nature of their communications free from prosecutorial scrutiny.

Constructing arguments that further obscure the issue at hand, the Government predictably contends the Department of Justice Manual confers no rights that can be enforced. This is a familiar argument made whenever the Government has ignored, skirted, or even violated one or more of the Manual's provisions. Perhaps Government counsel will permit me to remind them of Section 9-27.110 of the DOJ Manual which states that its principles "are intended to promote the reasoned exercise of prosecutorial discretion," and Section 9-27.120 which states that: "In carrying out criminal law responsibilities, each Department of Justice attorney should be guided by these principles." Regardless of the well-known safe haven for prosecutors that these principles cannot be enforced, we call upon the Government to demonstrate that subpoenaing the telephone records of defense counsel is in any way consistent with the lofty ideals set forth in what amounts to Government counsel's employment manual.

The bulk of the opposition is devoted to basic principles about the breadth of the power of the grand jury. In perhaps unintended irony, the Government argues that no matter how it uses (or abuses) the grand jury's subpoena power, the defense bears the burden of disproving the presumption of regularity. This is ironic because the pending motion is aimed discovering the facts concerning the Government's rationale for its use of the grand jury power to pry into defense counsel's telephone and texts contacts with Mr. Berman—while casting its net so widely it surely swept up the telephone and text records of other clients of Mr. Herzog's law firm. If there was parity of information here, the defense might well overcome the presumption. But both the Government's response to our letter—and the newly-minted position set forth in its opposition—amounts to stonewalling the defense about the information it chides us for not producing.

Indeed, the Government goes so far as to argue that because the superseding indictment returned in May 2021, five months after the initial indictment, added an obstruction count that: "[t]his alone should be sufficient to defeat defendant's allegation of grand jury abuse." This assertion implies that the Government properly continued investigating possible other offenses after the December 2020 original indictment—such as the obstruction charge added in the May 2021 superseding indictment. Within this implication is somewhat of an indirect hint that subpoenaing Mr. Herzog's telephone records was somehow warranted by this obstruction investigation.

This is misleading in the extreme. Every single allegation related to the charge of obstruction refers to events that occurred before the original indictment was returned. Even if this is what is being hinted, it still begs the question why the Government is so resistant—even under seal—to plainly explain the basis on which it decided to subpoena defense counsel's telephone records.

Consider the following thought experiment. What if the shoe was on the other foot? Consider, hypothetically, that this is a civil litigation instead of a criminal prosecution—with broad civil discovery available to both sides. Would Government counsel be so blasé if they discovered defense counsel had subpoenaed their own telephone and text records from their telephone providers?

Next, the Government argues that the defense motion "has offered no basis, other than speculation," for seeking the "government's rationale for issuing a subpoena to defense attorney Ronal Herzog's telephone provider to obtain telephone records for Mr. Herzog." To the Government, such an inquiry is not "appropriate or necessary." This shows the fundamental difference between the positions of the Government and defense on this matter. To the defense, the Government's intrusion into defense counsel's telephone records is *res ipsa loquitor*. It speaks loudly of the use of Government power that requires an explanation for its exercise. A prosecution team confident that its decision was justified would disclose rather than conceal the basis for its action.

Turning to the cases on which the Government relies for the proposition that courts have "generally ruled that mere inquiry into a defendant's lawyer is not, in and of itself, improper," the Government cites to three cases, none of which involve a government subpoena of defense counsel's telephone records. To its credit, the Government concedes that the cases involve issues that are only "similar," thus admitting without saying so that it has been unable to identify any court in the land that has ever approved what the Government did here. Moreover, upon examination, the issues in these three cases could not be more dissimilar from the circumstances presented by the defense motion.

The lone case in this district, as well as the Fourth Circuit case, involved defendants charged with serious narcotics offenses who claimed little or no assets but who were defended by privately retained counsel. In both cases, the Government served subpoenas on counsel for fee-related information. This was approved largely on the ground that access to unexplained large amounts of money or other assets was relevant to proving that the defendants were involved in large-scale drug dealing. See *In re Grand Jury Proceedings*, 201 F. Supp. 2d 5 (D.D.C. 1999); *In re Grand Jury Proceedings*, 42 F.3d 876, 879 (4th Cir. 1994). Fee information, which is generally not protected from disclosure, is not equivalent to the telephone records of defense counsel. The final case relied upon the Government involved a hearing focused on whether a defendant had submitted a false document through counsel. His lawyers testified pursuant to the crime-fraud exception to the attorney-client privilege. *United States v. Boender*, 719 F. Supp.2d 951 (N.D. Ill. 2010). None of these cases are applicable to the merits of the defense motion.

Finally, the Government relegates to its penultimate paragraph a vain effort to minimize the information it obtained. Specifically, the Government seeks to diminish the impact of subpoenaing Mr. Herzog's telephone records by asserting two utterly contradictory assertions. First, the Government contends there is no genuine issue of privileged communications because its subpoena obtained metadata which it describes as "indicat[ing] the date and time of, and phone numbers involved, in a call or text message." The Government yet again demonstrates its profound misunderstanding of the impact of it being able to track when Mr. Herzog and Mr. Berman spoke or texted one another, how long these calls may have lasted, and the like, including work product protected communications concerning Mr. Berman's defense. This is a dagger pointed at the attorney-client relationship and the Government seems clueless that it is wielding the dagger.

6

Peculiarly, after arguing that the nature of the records it obtained raise no issue of attorney-client privilege—in the same breath and same paragraph—the Government refers, as it did in its June 14 response to our June 7 letter, to the filtering out of privileged communications: "to the degree the government has obtained materials that might expose it to potentially privileged communications, it has…ensured that those materials are reviewed by filter attorneys."

Because the Government's June 14 letter and opposition to the defense motion appear to be rife with serious inconsistencies, a failure to appreciate the significance of its subpoena of defense countless telephone records, and failure to find a single decision of any court where such an aggressive Government stratagem has been approved, we again urge the Court to require the Government to provide a satisfactory explanation for issuing a subpoena for defense counsel's telephone records. Failing that, all such records should be returned to Mr. Herzog.

        Respectfully submitted,

        */s/ Walter P. Loughlin*
        Walter P. Loughlin
        340 West 57th Street
        Suite 5D
        New York, New York 10019
        (230) 2163445
        walter.loughlin@gmail.com

        Counsel for Defendant Keith Berman

Ronald S. Herzog, Esq.
Of Counsel