UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 1:20-cr-00278-TNM |
| v. | : | |
| | : | |
| KEITH BERMAN | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OMNIBUS MOTION IN LIMINE
TO EXCLUDE IRRELEVANT EVIDENCE UNDER
FEDERAL RULES OF EVIDENCE 401, 402, AND 403

The United States of America, by and through its undersigned counsel, respectfully submits this motion in limine for orders excluding two categories of evidence as irrelevant under Federal Rules of Evidence 401 and 402 and excludable under Federal Rule of Evidence 403.

I.  **Background**

The superseding indictment alleges that the defendant used the global pandemic as an opportunity to scam his company's shareholders. Having misappropriated hundreds of thousands of dollars of shareholder money, including to buy live one-on-one webcam sessions for his personal entertainment, the defendant needed a "new story" to "raise money" for his struggling company, Decision Diagnostics Corp. ("DECN"). (Superseding Indictment, ECF 19, ¶¶ 6-11.) The defendant devised a plan to pump DECN's stock price by claiming, and proclaiming, that DECN was successfully developing a 15-second test to detect COVID-19 in a finger prick sample of blood—the "GenViro! Swift COVID-19 Test." (*Id*. ¶¶ 12-14.) The defendant, however, knew that such a test had not actually been developed, and he had neither tested the product nor obtained—and was in no position to obtain—U.S. Food & Drug Administration ("FDA") approval

1

for the device.  (*Id*. ¶¶ 19, 20, 22, 24-26, 30, 31.)  Nonetheless, the defendant repeatedly lied to shareholders, claiming, among other things, that DECN had developed the test and "perfected" the technology; that the test had been validated; that the test was functional and had produced results in ten seconds; that FDA review was underway and approvals were forthcoming; and that an FDA form letter only acknowledging receipt of an application for approval constituted a "grant by the FDA" and a "major milestone."  (*Id*. ¶¶ 18-38.)

The defendant repeatedly attacked his own technical experts and product developers for failing to develop a test that could not only detect COVID-19 in a sample of blood but also distinguish COVID-19 from other viruses.  (*Id*. ¶¶ 19, 20, 22, 24, 30.)  In addition, he knew that the FDA would not approve the device without clinical testing on human beings (*id*. ¶¶ 25, 26), and that he had not built a prototype for testing and lacked the necessary insurance, and the money, to conduct clinical testing on human beings (*id*. at ¶¶ 25, 26, 31, 35, 38).  None of that, however, stopped the defendant from issuing numerous press releases and posting messages (using aliases) on websites and message boards to claim that his product, and FDA approval, were around the corner.  (*Id*. ¶¶ 18-48.)  DECN's stock price rose by more than 1500% until the U.S. Securities & Exchange Commission ("SEC") suspended trading in the stock due to questions regarding the accuracy of information in DECN's press releases.  (*Id*. ¶ 37.)

According to the superseding indictment, when the SEC opened an investigation, the defendant expressed concern that it would prevent him from continuing to raise money off of the COVID-19 crisis.  (*Id*. ¶¶ 49-51.)  To stop the SEC's investigation so that he could resume raising money, the defendant surreptitiously worked with a shareholder, whom the defendant enlisted under false pretenses, to ghost-write a series of "shareholder letters" attacking the SEC.

2

(*Id.* ¶¶ 52-58.)   The defendant encouraged the shareholder to recruit other shareholders to sign the false and misleading letters, which the shareholder did.  (*Id.* ¶ 57.)  Around the same time, the defendant used a fake identity on investorshub.com ("iHUB"), a popular Internet message board, to lull, threaten, and intimidate shareholders who expressed concern that the defendant may be lying about DECN's purported COVID-19 test.  (*Id.* ¶¶ 39-46.)   Among other threats, he repeatedly warned about "knock day," implying that the authorities would show up at the homes of shareholders who complained to the SEC and arrest them.  (*Id.* ¶ 50.)   The defendant lied to FBI agents when asked about his involvement in writing the purported shareholder letters.  (*Id.* ¶ 64.)   He also lied to FBI agents and SEC investigators about his involvement in iHUB.  (*Id.* ¶¶ 47-48.)

As a result of this scheme, DECN investors lost millions of dollars, having purchased DECN shares at artificially inflated prices and selling their shares at a steep loss.  (*Id.* ¶ 65.)

**II.      Argument**

At trial, the defendant should be precluded from offering evidence and argument relating to two topics: (1) a COVID-19 saliva test DECN was ostensibly also seeking to develop largely as a replacement for the COVID-19 blood test, and (2) the question whether a blood test for COVID-19 is theoretically feasible.  Both topics are irrelevant under Federal Rules of Evidence 401 and 402 and, to the extent they are relevant, their probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time under Federal Rule of Evidence 403.

A.   **Motion In Limine to Exclude Under Rules 401, 402, and 403 Evidence and Argument Related to GenViro! Saliva Test and Related Topics**

The defendant might seek to present evidence or argument related to DECN's purported efforts to develop a COVID-19 "GenViro!" saliva test. According to press releases and disclosures made by DECN after DECN functionally abandoned the COVID-19 blood test, DECN claimed to have developed COVID-19 saliva test and to have made certain progress toward obtaining foreign regulatory approvals and distributorships. DECN also claimed that its purported COVID-19 saliva test was supposed to win a scientific contest in December 2020 but for the defendant's indictment for fraud.

Evidence of DECN's desire or purported efforts to develop *another* COVID-19 test—different from the one that serves as the basis of the allegations in the superseding indictment—is irrelevant, and, even assuming it is marginally relevant, its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Accordingly, the Court should exclude the evidence under Rules 401, 402, and 403.[1]

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is admissible unless otherwise barred; "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. *See United States v. O'Neal*, 844 F.3d 271, 278 (D.C. Cir. 2016).

---

[1] The fact that the government did not allege that the defendant's statements about the saliva test were false and misleading is not an admission by the government that it believes those statements were truthful or that it believes the saliva test is legitimate.

Evidence that the defendant purportedly sought to develop a different COVID-19 saliva test has no tendency to make it less probable that he made material misrepresentations regarding the COVID-19 blood test that he had not actually developed and that had not proceeded past even initial approval steps with the FDA.  Even to the extent such evidence makes it more probable that the defendant held a genuine desire to develop a COVID-19 test to benefit society (which it does not), that fact has no bearing on whether he made material misrepresentations regarding the feasibility and approval status of the blood test he claimed to be developing.  It was those misrepresentations—about the *blood* test—that serve as the basis of the allegations in the superseding indictment that defendant misled investors, artificially inflated DECN's stock price, and caused investors to lose millions of dollars.

Any probative value of evidence about the purported saliva test is also substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  The jury is likely to be confused by information about a separate, unrelated test with a name similar to the one the defendant lied about, and evidence about saliva testing versus blood testing and related technical topics will further confuse the jury and waste time.

    **B.**    **Motion In Limine to Exclude Under Rules 401, 402, and 403 Evidence and Argument Related to the Question Whether a Blood Test for COVID-19 Is Theoretically Possible**

The defendant might seek to present evidence and argument suggesting that a rapid blood test for COVID-19 was theoretically possible.  Even assuming credible evidence supporting that claim exists (which the government has no reason to believe), it has no bearing on the issues in this case: whether the defendant repeatedly lied about the status of the development of any such test and the status of the approval process for the test he claimed to be developing.

5

Scientific evidence about impedance testing, the presence of viruses in the blood, and the ability to distinguish the COVID-19 virus from other viruses will be extremely technical and time consuming.  The danger of confusing and misleading the jury and wasting time substantially outweighs any probative value of theoretical evidence, given that the defendant represented that the test was functional and "perfected" when he knew that the COVID-19 blood test was nothing more than an idea, that he had not even produced a prototype, and that he could not perform the testing required for FDA approval.

The government intends to call two lay, fact witnesses—Dr. Matthew Musho and Daniel Kim—who have firsthand knowledge of the status of the defendant's purported COVID-19 blood test at the times the defendant made public statements misrepresenting that it had already been developed.  These witnesses are expected to testify that, at that time, the defendant's COVID-19 blood test was an idea, not a reality.  That testimony will be relevant to the falsity, and the defendant's knowledge of the falsity, of the defendant's representations to investors.  Although both Dr. Musho and Mr. Kim have scientific and technical knowledge, and that is why they were consulted by the defendant during his scheme, the government will not be calling them as expert witnesses under Federal Rule of Evidence 702 to testify about the theoretical possibility or impossibility of a COVID-19 blood test.  The defendant, accordingly, should be precluded on cross-examination from questioning Dr. Musho and Mr. Kim as expert witnesses and seeking their opinions on that topic based on their scientific, technical, or other specialized knowledge.  *See* Fed. R. Evid. 701 (lay witness may not testify in the form of an opinion based on scientific, technical, or other specialized knowledge within the scope of Rule 702).

## III. CONCLUSION

For all of the foregoing reasons, the Court should grant the government's motions.

                                      Respectfully submitted,

                                      JOSEPH S. BEEMSTERBOER
                                      Acting Chief, Fraud Section
                                      Criminal Division

By:    /s/ Vijay Shanker
        Vijay Shanker
        Senior Litigation Counsel
        Christopher Fenton
        Trial Attorney
        Justin Weitz
        Principal Assistant Deputy Chief
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005
        (202) 353-0268
        vijay.shanker@usdoj.gov

## CERTIFICATE OF SERVICE

      I certify that on July 27, 2021, I filed a true and correct copy of the foregoing with the Clerk of Court via ECF, and that I separately provided a copy of the filing via email to counsel for the defendant in this action.

                                            /s/ Vijay Shanker
                                  Senior Litigation Counsel, U.S. Department of Justice