UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————x

UNITED STATES OF AMERICA

                Plaintiff,

    -v-

                                          1-20-cr-00278  TNM

KEITH BERMAN,

                Defendant.

———————————————————————x

## DEFENDANT'S OPPOSITION TO GOVERNMENT'S
## MOTION IN LIMINE

### PRELIMINARY STATEMENT

Defendant Keith Berman, through undersigned counsel, respectfully submits this opposition to the Government's motion to preclude the defense from offering evidence and argument relating to (1) the development of a saliva-based COVID-19 test by Decision Diagnostics Corp. ("DECN"), and (2) the theoretical feasibility of a COVID-19 blood-based test. According to the Government, these subjects are irrelevant under Rules 401 and 402 of the Federal Rules of Evidence, and even if relevant, must nonetheless be excluded under Rule 403 because any evidence or testimony on these subjects would be prejudicial to the prosecution, confuse the jury, and be a waste of time. The motion also seeks to limit defense counsel's cross-examination of two significant witnesses the Government and the defense each intend to call, both whom have been DECN "technical advisors" on, among other things, impedance technology. (Ind. par. 1). This is

the foundational technology of DECN's glucose line of products and the blood and saliva COVID-19 tests.

The Government's motion should be denied, first, because the topics it seeks to exclude are plainly relevant. Indeed, the Government itself believed them to be of such relevance that it included in the Indictment factual allegations about both the saliva-based test and the feasibility of the blood-based test. Allegations about facts set forth in an Indictment are, by definition, relevant to a trial of the Indictment's accusations.

An independent ground for denying the motion is that the Government's effort to restrict the scope of defense counsel's examination of DECN's technical advisors—the persons who worked on DECN's long established glucose testing products and on both the blood and saliva tests for the detection of COVID-19—is fundamentally inconsistent with Rule 401 of the Federal Rules of Evidence which the Government repeatedly invokes in a vain attempt to confine the testimony of these witnesses solely to the prosecution case.

However, Rule 401 supports the defense position. Whether Mr. Berman's efforts to develop one or more COVID-19 tests, based either on blood or saliva, is "a fact of consequence in determining" the outcome of this case, and the evidence of what Mr. Berman did in this connection, with the aid of Dr. Musho and the Bio, fully understood, makes it "less probable" that his conduct was fraudulent "than it would be without the evidence." (Rule 401). Indeed, the Government's motion essentially amounts to asking the Court to enter an order to the effect that these two witnesses can testify to support the prosecution case but must be prevented from testifying in support of the defense case.

Third, the motion should be denied because the evidence the Government seeks to exclude, and the restrictions it seeks to impose on the defense examination of two key witnesses, would deprive Mr. Berman of his due process and Sixth Amendment right to present his defense.

## ARGUMENT

### The Subjects of a Saliva Test and the Theoretical Possibility of a Blood Test are Relevant

Both the saliva-based test and the theoretical feasibility of the blood-based test are among the allegations in the Indictment. Therefore, these subjects cannot be irrelevant to a trial based on the Indictment's allegations. This is clear from Rule 7(c)(1) of the Federal Rules of Criminal Procedure which provides that an Indictment is a "written statement of the essential facts" of the charged offenses. The Government drafted an Indictment setting forth the facts it regarded as essential. It cannot decide, after the fact, that some of these "essential facts" are relevant but others, which it now considers to be inconvenient, have somehow become "essential facts" that are no longer relevant.

Separate and apart from the specific allegations in the Indictment on these subjects, the trial of this case will inevitably include evidence of them. This is because the spinal column of the prosecution case is the claim that DECN's press releases contain false statements. Those releases touch on all the facts the Government asks the Court to deem irrelevant. However, once the Government introduces in evidence some of these releases—which describe the development of the blood and saliva test—it will have opened the door to the admission in evidence of other releases and evidence relating to the 11- month period in 2020 that the Indictment alleges to be when the alleged fraud occurred. On this basis, alone, the Government's motion should be denied.

Turning to the specific references to these subjects in the Indictment, paragraph 16 describes a February 29, 2020 email exchange between Mr. Berman and Vendor 1. Paragraph 1 of

the Indictment identifies Vendor 1 as "a company based in the Republic of Korea." We believe this refers to The Bio Co, Ltd., the Korean company which has been the long-time manufacturer of DECN's glucose testing products using impedance technology. ("the Bio"). The Government's motion identifies Daniel Kim as the witness it intends to call from the Bio; a second DECN "technical advisor" the Government intends to call is Dr. Matthew Musho, who is designated in the Indictment as Person 1.

The Indictment describes the email exchange between Mr. Berman and the Bio as follows: "On or about February 29, 2020, BERMAN emailed Vendor 1 to ask whether it was 'theoretically possible' to use the impedance technology that DECN used in glucose tests in order to test for COVID-19 in blood or saliva." It goes on to describe the response: "Vendor 1 responded that while it could be 'theoretically possible' to use impedance technology to detect a virus, Vendor 1 did not know whether impedance technology could be used to detect COVID-19 in blood or saliva."

This exchange, at the very inception of the fraud alleged in the Indictment, shows that both blood and saliva tests were under consideration from the beginning of the effort to explore the potential of adapting DECN's impedance technology for tests to detect the presence of COVID-19. This work, on both the blood and saliva tests, was carried about by Mr. Berman, Dr. Musho, and the Bio. This reference in the Indictment, alone, renders the saliva test and the theoretical possibility of a blood test for detecting COVID-19 as relevant to the trial of this case.

In addition, the Indictment even includes allegations about the DECN announcement of the saliva test—although it does so in an affirmatively misleading way. In paragraph 38, the Indictment alleges that a July 10, 2020 DECN press release contains a false statement about the blood test and a false statement about the FDA process. However, as the Government well knows, this release is overwhelmingly about the saliva-based test, as reflected in the title of the release:

"DECN to add GEVIRO! Saliva COVID-19 Swift Kit: 10.5 for Professional and Home Use Testing, Providing an Alternative Modality to its Finger-Stick Methodology." (Ex. A) The release includes data, developed in Korea by the Bio, using human donor saliva, which "indicated that the saliva exhibited a comparable, and in fact favorable, impedance curve profile when compared to whole blood." The release quotes Mr. Berman: "While the finger-stick method has been successfully used in diabetic testing, and represents our core competency, we felt that providing a non-invasive option for COVID-19 testing might be more desirable to both the patient and the professional," namely the saliva test. (*Id.*)

An additional reason the facts related to the development process of both the blood and saliva tests are relevant is the time-span of the fraud alleged in the Indictment. The Indictment alleges that the securities and wire fraud extended "[f]rom at least in or around February 2020 through in or around December 2020." (Ind. pp. 20-21). The fact allegations are to the same effect. The Indictment alleges that the fraud continued "[t]hroughout 2020." (Ind. par. 25), and paragraph 37 refers to Mr. Berman's allegedly fraudulent conduct in March and April 2020. The next paragraph alleges: "In the following months, DECN still did not take any steps to develop a COVID-19 test…" (Ind. par. 38)

The defense is entitled to present evidence to counter these allegations by proving what actually did occur "in the following months," including facts related to the near parallel approach of developing the blood and saliva tests. Having obtained an Indictment alleging fraudulent conduct occurring between February and December 2020, the Government cannot validly redefine the relevant period to exclude evidence about facts and events from that period simply because they contradict the Government's prosecution theory.

The Government cannot run away from the allegations in an Indictment it drafted and submitted to the Grand Jury; or cherry-pick which emails between Mr. Berman and the Bio or Dr. Musho are admitted into evidence in an effort to erase the Indictment's references to the saliva-based test and the effort to analyze and evaluate the theory that impedance technology could be used to develop a blood-based COVID-19 test.

Nor can it call to the stand one or more witnesses who worked concurrently on both the blood and saliva test and then limit their testimony solely to their work on the blood test. Rule 106 of the Federal Rules of Evidence, codifying the doctrine of completeness, allows the defense to offer evilence to fairly place the Government's evidence in context. *United States v. Sutton*, 801 F.2d 1346, 1368 (D.C. Cir. 1986) (Rule 106 permits even inadmissible evidence to be introduced to correct a misimpression).

In sum, the foregoing shows that factual allegations and other evidence within the four corners of the Indictment are definitionally relevant to the case. The Government's contrary contention is meritless.

**<u>The Scope of Testimony of Dr. Musho and Mr. Kim</u>**

Turning to the second issue, this part of the motion has two themes. First, it contends that any evidence "about impedance testing" or the "presence of viruses in the blood, and the ability to distinguish the COVID-19 virus from other viruses" should not be permitted because, in the Government's view, such evidence and testimony "will be extremely technical and time consuming," cause jury confusion, and be a waste of time. The second prong is the straw man that the defense must be precluded from converting Dr. Musho and Daniel Kim into expert witnesses during defense cross-examination of them.

This part of the motion is based on mistaken propositions of fact and law. First, the case the Government has brought involves the very issue it now seeks to exclude. Despite the parade of horribles the Government asserts will happen if there is any mention of the word impedance during the trial, the Indictment includes fact allegations about impedance technology throughout—in paragraphs 1, 11, 16, 17, 19, 20, 21, 22, 24, and 38. In adding this level of detail, the Government was presumably following the DOJ guidance that "a fraud indictment should contain a reasonably detailed description of the particular scheme the defendant is charged with" having committed. DOJ CRM Section 971.

Simply put, the subject of impedance technology is definitionally relevant to a trial based on the Indictment's allegations. The Government cannot have it both ways—including factual allegations in the Indictment as part of the description of the alleged fraud—and then seeking to block the defense from mentioning or introducing evidence about those facts.

Contrary to the Government's expressed concern, the defense does not intend to try to convert Dr. Musho or Mr. Kim into expert witnesses—despite their ample qualifications. However, their testimony should not be artificially constrained simply because some of the testimony may include technical aspects. As the Government acknowledges, both Dr. Musho and Daniel Kim "have scientific and technical knowledge." (Govt. Mot. p.6) The Rules of Evidence permit lay witnesses to give opinion testimony—including testimony that embraces the ultimate issue in a case. (Rules 701; 704); *United States v. Smith*, 811 F.3d 907, 909 (7th Cir. 2016) (opinion testimony by police officers that their fellow officer had used excessive and unreasonable force admitted as Rule 701 lay opinion testimony). The Government's position appears to be that it can unilaterally draw on the scientific and technical backgrounds of the witnesses to prove its case but the defense must not be allowed to do the same.

If the Government were more candid about the purpose of its motion, it would admit that its actual concern about Dr. Musho and Mr. Kim is that the defense may ask them questions that will lead to testimony contradicting essential elements of the prosecution case. That is why the Government is so determined to confine their testimony to the alleged falsity of certain statements in a sample of DECN's press releases and to prevent Dr. Musho and Mr. Kim from describing the work they did, over many months, with Mr. Berman on the blood and saliva tests.

Perhaps the lone frank admission by the Government is that it intends to have Dr. Musho and Mr. Kim testify on direct in the narrowest possible way, and then to object to any attempt by defense counsel to elicit testimony favorable to Mr. Berman from the witnesses on the ground that such cross-examination is "beyond the scope" of the Government's extremely circumscribed direct examination.

**Rule 611 and the Defendant's Due Process and Sixth Amendment**

**Right to Present a Full and Meaningful Defense**

Despite the Government's stated strategy, the Court is authorized by Rule 611 of the Federal Rules of Evidence to permit cross-examination to inquire "into additional matters as if on direct examination." (Rule 611(b)). Permitting cross-examination that exceeds the scope of direct examination has the support of the author of the leading evidence treatise and the ABA Committee on the Improvement of the Law of Evidence, both of which are quoted by the Advisory Committee on Proposed Rules in the Notes below the text of Rule 611.

According to McCormick, the practice of limiting cross-examination to the scope of the direct too frequently leads to "continual bickering over the choice of the numerous variations of the 'scope of direct' criterion, and of their application to particular cross-questions...Observance of these vague and ambiguous restrictions is a matter of constant and hampering concern to the cross-examiner." The ABA Committee agreed: "The rule limiting cross-examination to the precise

subject of the direct examination [causes] technical quibbles which obstruct the progress of the trial, confuse the jury, and give rise to appeal on technical grounds…The Committee concluded: "We recommend that the rule allowing questions upon any part of the issue known to the witness…be adopted." (*citing* McCormick, Section 27, p. 51; 5 Moore's Federal Practice 43.0 (2d ed. 1964).

The foregoing analysis demonstrates that the traditional limit on the scope of cross-examination should not restrict the defense examination of Dr. Musho and Mr. Kim to the ambit of the Government's strategically narrow direct examination. If the defense is not permitted to elicit testimony favorable to Mr. Berman during cross-examination of the witnesses, we will be compelled to recall them in the defense case, causing unnecessary burdens on the witnesses and the needless expenditure of additional trial time for the Court and the jury.

Further, if Mr. Berman is not able to place in the trial record the evidence from witnesses who are anticipated to support his defense, this will result in a violation of Mr. Berman's due process and Sixth Amendment right to present a defense The prosecution's proof of the fraud allegations will consist primarily of the effort to prove that the blood test was never intended to be a real product; but was instead simply a vehicle to commit securities and wire fraud by, among things, issuing press releases containing false statements.

The defense intends to counter this part of the prosecution case, in part, by establishing that the COVID-19 project was a genuine effort to adapt the impedance technology, from DECN's established diabetes meter and test strip product line, into a new product that could detect the presence of COVID-19. That was a joint effort by DECN, led by Mr. Berman, with the critical assistance of Dr. Musho and the Bio.

The defense has reason to believe that both witnesses can provide testimony about the research and development process, the issues they confronted and sought to overcome, and how—with the benefit of the extensive testing procedures regularly used in new product development of this type—the process evolved to include the saliva-based test. In other words, the testimony of these witnesses is at the very core of the defense case.

As the Supreme Court stated in *Chambers v. Mississippi*, 410 U.S. 284, 294-95 (1973), "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." In reversing the criminal conviction in that case due to limits the trial court placed on defense cross-examination, the Court stated that the "denial or significant diminution [of defense cross-examination] calls into question the ultimate 'integrity of the fact-finding process'….*Id*. at 296, *citing Berger v California*, 393 U.S. 314, 315 (1969) (inability to cross-examine key witness); *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986)(Constitution guarantees, on both due process and Sixth Amendment grounds, criminal defendants a meaningful opportunity to present a complete defense).

The application of these settled principles to the Government's motion shows why it should be denied. The motion characterizes relevant evidence set forth in the Indictment as irrelevant to the accusations alleged therein, and aims to restrict defense examination of the witnesses with first-hand knowledge of the development of the blood and saliva tests, resulting in the deprivation of Mr. Berman's due process and Sixth Amendment right to present a full and meaningful defense.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, the Government motion in limine should be denied in its entirety.

10

Dated: August 9, 2021
      New York, New York

                                    Respectfully, submitted,

                                    /s/ Walter P. Loughlin
                                    Walter P. Loughlin (DC Bar No. NY0433)
                                    340 West 57th Street
                                    Suite 5D
                                    New, York, NY 10019
                                    Tel. (203) 216-3445

                                    Ronald S. Herzog, Esq.
                                    Goldberg Segalla LLP
                                    50 Main Street
                                    Suite 425
                                    White Plains, NY 10606
                                    Tel. (914) 798-5419

                                    Attorneys for Defendant Keith Berman