# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 1:20-cr-00278-TNM |
| v. | : | |
| | : | |
| KEITH BERMAN, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S OMNIBUS PRETRIAL MOTIONS

The United States of America, through its undersigned counsel, respectfully submits its response in opposition to defendant Keith Berman's omnibus pretrial motions. (ECF 31 ("Def.'s Mots.").)

The defendant is charged with exploiting the public's fears and concerns about the COVID-19 pandemic to commit a massive fraud. The superseding indictment provides a detailed catalog of the defendant's scheme, as well as his remarkable efforts to conceal his illegal activities and obstruct federal regulatory and criminal investigations into his crimes. As alleged in the superseding indictment, the defendant engaged in an extensive and involved campaign to intimidate concerned investors, by threatening them with financial ruin or arrest, and to attack federal regulators, including by trying to get them fired.

The defendant's pre-trial motions reflect more of the same. The defendant lodges vague and conclusory allegations of wrongdoing against the government and attempts to rewrite the record to suggest he is the victim of a frame-up. He also asks the Court to ignore existing law and to exonerate him before he has to face a jury of peers. For example, the defendant asks the Court to decide that, in fact, his false statements to federal investigators were literally true; to find that

1

his obstruction of a federal investigation into his fraudulent conduct is protected by free speech; and to hold that his lies to federal agents who were investigating his criminal activity are unconnected to those crimes.   The defendant's motions should be denied.

## I.      Background

The government obtained the original indictment in this matter on December 15, 2020. (ECF 1.)   The government immediately began producing discovery to the defendant and started preparing for trial.   When, however, the government learned that the defendant had engaged in further deceptive and obstructive conduct, it took steps to gather additional evidence and later to supersede.   After timely informing the Court of its decision to seek new charges based, in part, on new information, the government obtained a superseding indictment on May 11, 2021.   (ECF 19 ("Superseding Indictment").)

The superseding indictment alleges that the defendant used the COVID-19 pandemic as an opportunity to scam his company's shareholders.   Having misappropriated hundreds of thousands of dollars of shareholder money, including to buy live one-on-one webcam sessions for his personal entertainment, the defendant needed a "new story" to "raise money."   (*Id.* ¶¶ 6-12.)   In the early days of the pandemic, when testing capacity was an issue of global importance, the defendant repeatedly lied to shareholders and prospective investors, claiming that his company, Decision Diagnostics Corp. ("DECN"), had developed a 15-second test to detect COVID-19 in a finger prick sample of blood, when it had not.   (*Id.* ¶¶ 13-14.)   As the defendant lied, DECN's stock price rose, though it would later decline precipitously when the truth was revealed.   (*Id.* ¶ 37.)

According to the superseding indictment, when the U.S. Securities and Exchange Commission ("SEC") opened an investigation, the defendant expressed concern that the SEC investigation would prevent him from continuing to raise money off the COVID-19 crisis.   (*Id.*

2

¶¶ 49-64.)   To stop the SEC's investigation so that he could resume raising money, the defendant surreptitiously worked with a shareholder, whom the defendant enlisted under false pretenses, to ghost-write a series of letters attacking the SEC.   (*Id.* ¶¶ 49-62.)   The defendant encouraged the shareholder to recruit other shareholders to sign the false and misleading letters, which the shareholder did.   (*Id.*)   Around the same time, the defendant used a fake identity on investorshub.com ("iHUB"), a popular Internet message board, to threaten and intimidate shareholders who expressed concern that the defendant was lying about DECN's purported COVID-19 test.   (*Id.*)   Among other threats, he repeatedly warned about "knock knock day," implying that the authorities would show up at the homes of shareholders who reported his scheme to the SEC and arrest them.   (*Id.*)   The defendant also threatened that, if individuals went to the authorities, they potentially faced financial ruin.   (*Id.*)   When federal law enforcement agents were investigating the conduct underlying the crimes charged in the superseding indictment, the defendant lied to the federal agents.   When asked about his involvement in writing the purported shareholder letters, the defendant claimed that neither he nor the company was involved, which was false.   (*Id.* ¶ 64.)   He also lied to FBI agents and the SEC staff about his involvement with iHUB.   (*Id.* ¶ 48.)

Trial is set in this matter for January 4, 2022.

## II.   Legal Standard

Federal Rule of Criminal Procedure 12 permits a criminal defendant to file pretrial motions to dismiss an indictment.   Such motions, however, should address potential legal defects in the case or charging document, and are not a substitute for the jury's assessment of evidence presented at trial.   There is no concept of summary judgment in criminal cases, and a motion to dismiss is not an appropriate vehicle for the litigation of factual issues.   "Dismissal is granted only in unusual

circumstances since it directly encroaches upon the fundamental role of the grand jury." *United States v. Stone*, 394 F. Supp. 3d 1, 13 (D.D.C. 2019) (citations omitted).

Accordingly, at this stage of the proceedings, the Court must accept the allegations in the indictment as true. "When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015); *United States v. Lewis*, No. 19-CR-307 (RCL), 2021 WL 2809819, at *9 (D.D.C. July 6, 2021) ("Whether this is in fact true is an issue for a jury, not one that can be resolved in a motion to dismiss."). "A motion to dismiss is not the proper way to raise a defense." *United States v. Snyder*, 428 F.2d 520, 522 (9th Cir. 1970); *see also United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) ("a defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence.").

### III.     Responses to the Defendant's Motions

#### A.     Defendant's Motion to Dismiss Count Four of the Superseding Indictment

The defendant moves for dismissal of Count Four, which charges him with making a false statement in sworn testimony before the U.S. Securities and Exchange Commission ("SEC") in violation of 18 U.S.C. §§ 1001(a)(2) and 2. The false statement by the defendant alleged in Count Four was that he was not involved with posting on Investors Hub's message boards. (Superseding Indictment ¶ ¶ 47, 75.) The defendant offers four bases to dismiss the count, but they all revolve around his claim that he cannot be charged with making a false statement because he did not precisely say that he was not involved with posting on Investors Hub's message boards, and because what he did say to the SEC was, in his view, literally true. (Def.'s Mots. at 5-9.)

The defendant misstates the record. During his SEC testimony, the defendant was confronted with the fact that he had failed to answer a question in a pre-deposition questionnaire

asking him to list all Internet messages boards or discussion forums, including but not limited to Money Makers Group, PNQ1 message board, and Investors Hub Daily, of which he had been a member or on which he had posted any messages at any time during the last three years.   (Excerpts from the Transcript of Keith Berman's SEC Deposition Testimony, Oct. 9, 2020, at 21-24 and excerpts from SEC Deposition Exhibit 64, attached hereto as Exs. 1A and 1B.)   The defendant acknowledged that he had not answered the question and then immediately volunteered that he had "not been part of Money Makers, PNQ1, or Investors Hub Daily."   (Ex. 1A at 21:23-22:6.)   An SEC attorney followed up to ask whether the defendant had posted to "any other internet message boards or discussion," and the defendant refused to answer, which the SEC attorney memorialized on the record.   (*Id.* at 23:6-23:7.)   At that point, the defendant's counsel (who also represents the defendant in this action) and the defendant responded that the defendant had, in fact, answered the question.   (*Id.* at 23:8-23:10.)   The truth is that the defendant was a member of at least two Internet message boards, including Investor's Hub and Investors Hangout.   However, the defendant did not answer truthfully and, instead, lied to the SEC, in line with the defendant's broader concealment of his extensive message board activity from the public.[1]

    While it is true that a Section 1001(a)(2) conviction cannot be premised on a literally true

---

[1] The defendant insinuates, without any evidence, that the SEC and DOJ coordinated to create a perjury trap by working together to co-author a special background questionnaire uniquely tailored to the defendant and to jointly prepare a script for his deposition.   (Def.'s Mots. at 4-5.)   Based on his unsupported suggestion of wrongdoing, the defendant requests an evidentiary hearing.   (*Id.*)   The defendant's allegations are baseless, and his request for a hearing is an effort to distract from the lies the defendant told to the SEC.   The defendant makes similar allegations of wrongdoing against federal law enforcement agents who later interviewed him.   (*Id.* at 18.)   The federal agents asked the defendant whether he posted messages about DECN on Internet message boards and the defendant lied again.   Like the allegations against the SEC and DOJ, the defendant's allegations against the federal agents are without any basis in fact and should be rejected.

statement, *see United States v. Good*, 326 F.3d 589, 592 (4th Cir. 2003), this defense "applies only where a defendant's allegedly false statements were *undisputedly* literally true."   *United States v. Sarwari*, 669 F.3d 401, 406 (4th Cir. 2012) (emphasis in original) (internal quotation marks omitted).   The defense does not apply to "an answer [that] would be true on one construction of an arguably ambiguous question but false on another."   *Id*. at 407 (alteration in original).

As an initial matter, the defendant's claim that his allegedly false statement was literally true is without merit.   The defendant's argument depends on a manufactured distinction between Investors Hub Daily and the Investors Hub Stock Market Message Boards.   (Def.'s Mots. at 1, 7.) In reality, Investors Hub Daily and the Investors Hub Stock Market Message Boards are different parts of the same website—Investors Hub.   (*See* https://ih.advfn.com/daily/ (Investors Hub Daily website with menu including link to "Boards").)   The SEC's question inquired about "all internet message boards or discussion groups including but not limited to . . . Investors Hub Daily."   (*See* Def.'s Mots. at 5 (quoting the defendant's SEC deposition testimony).)   This is an express reference to the message board part of the Investor Hub website, not the daily news bulletin.[2] Moreover, when SEC counsel sought to follow up to ask further questions about the defendant's use of Internet message boards, the defendant and his counsel insisted that the defendant had already answered the question and refused to provide an additional response.

In any event, whether a statement is false or "literally true" for purposes of 18 U.S.C. § 1001(a)(2) is a question of fact for the jury.   *See United States v. Mahaffy*, 285 F. App'x 797,

---

[2] The defendant attempts to rewrite the focus of the SEC's questions and the defendant's answers to suggest that "Investors Hub Daily [ ] was the subject of his deposition testimony," not the defendant's "activity on message boards."   (Def.'s Mots. at 2.)   The defendant's account is factually incorrect.   A review of the deposition transcript and the deposition exhibit (Exs. 1A and 1B attached hereto) shows that the focus of the SEC's questions and the defendant's answers was the defendant's activity on message boards, not the defendant's activity on a news bulletin.

798 (2d Cir. 2008) (whether responses to a government inspector's questions were "literally true" is a question of fact for the determination of a jury, and the argument that the questions posed were "fundamentally ambiguous" amounts to a challenge to the sufficiency of the evidence relied upon by the jury in reaching its guilty verdict) (citing *United States v. Lighte*, 782 F.2d 367, 373 (2d Cir. 1986)); *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) ("Whether those statements were literally true, though, was a question of fact, and thus a question for the jury."); *see also United States v. Sampson*, 898 F.3d 287, 306-07 (2d Cir. 2018) (rejecting arguments that statement was literally true and that question posed to defendant was fundamentally ambiguous on the ground that a reasonable jury could have found that the defendant "interpreted the question as [the questioning agent] intended and that [the defendant] knowingly made a false statement in reply"); *United States v. Richardson*, 732 F. App'x 822, 829 (11th Cir. 2018) (rejecting argument that answer was susceptible to an interpretation that was literally true because "a jury could find that [the defendant's] statement was false on its face").

A defendant has the right to argue to the jury that his statement was not false, but the jury need not accept that argument.  *See United States v. Haldeman*, 559 F.2d 31, 104 (D.C. Cir. 1976) (in applying the perjury statute, under which a literally true statement is not unlawful, stating that "appellant's statement . . . was untrue (though responsive) *unless the jury accepted his explanation*"; and finding no error where the jury was instructed that a statement was not false if it was literally true) (emphasis added).   Here, the defendant immediately stated that he had not been part of Investors Hub Daily after acknowledging that he had not answered whether he had posted on message boards or discussion forums, including Investors Hub Daily.   Then, when asked whether he was a member of any other Internet message board or discussion group, the defendant— and his counsel—both insisted that the defendant had already answered the question.   The jury

must have the opportunity to determine whether the defendant interpreted the questioning as the questioner intended and knowingly provided a false response.   *See Sampson*, 898 F.3d at 306-07. This is especially so where the questioner's attempts to clarify the issue were met with combativeness by the defendant, the defendant's insistence that he had already provided an answer, and where the defendant subsequently lied about the same subject matter to federal law enforcement weeks later.

   B.   Defendant's Motion to Dismiss Count Three of the Superseding Indictment

   The defendant has moved to dismiss Count Three because, he claims, "the offense charged in that Count [ ] is based entirely on speech protected by the First Amendment."   (Def.'s Mots. at 15.)   The defendant argues that the "shareholder letters," which were part of his effort to corruptly undermine an agency proceeding to prevent that agency from discovering the extent of the defendant's fraudulent scheme, constitutes citizen speech or petition that cannot be the basis for an obstruction charge.   His motion, which rests on incorrect assumptions about the nature of Count Three and the legal nature of the conduct with which he is charged, should be denied.

   First, Count Three alleges a scheme to obstruct, influence, and impede an SEC investigation and is not limited to the "shareholder letters" alone; instead, it encompasses conduct broader than the "shareholder letters" the defendant describes.   (*See* Superseding Indictment ¶¶ 14e-f, 49-64.) The defendant engaged in a lengthy and involved campaign to undermine the SEC and impede its official actions.   This included not only the shareholder letters, which the defendant designed to impede an SEC proceeding and intimidate SEC staff attorneys, but also the defendant's false statements to the SEC.   *See United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008) (false statements to government agency are actionable under Section 1505).   The defendant took other actions as well, such as using a fake persona to deceive a long-time shareholder to participate in

8

drafting the "shareholder letters" to the SEC, using fake personas on Internet message boards to threaten investors with civil liability or jail time if they approached the SEC with concerns about the defendant's fraudulent conduct, and lying to the FBI about the actions he took as part of the obstructive conduct.   (*See* Superseding Indictment ¶¶ 50, 52-54, 64.)[3]

Second, the defendant's argument that his conduct was protected by the First Amendment presumes that his conduct was not obstructive under Section 1505.   But this presupposes that the defendant acted without the requisite mental state.   In order to violate Section 1505, the defendant must have acted "corruptly."   In the way he crafted the letters—directing individuals from behind the scenes, using fake names and aliases, and ultimately lying repeatedly about his involvement— the defendant demonstrated corrupt intent inconsistent with a good-faith free speech argument.[4] In any event, the defendant's *mens rea* is a matter for the jury to decide, and the government intends to introduce ample evidence that the defendant was engaged not in good-faith civic protest but in a scheme to obstruct, impede, and influence the SEC investigation.

Ultimately, the defendant's argument that the shareholder letter is constitutionally protected

---

[3] The defendant argues that the government does not allege that anything in the purported "shareholder letters" was false or defamatory.  (Def.'s Mots. at 12.)   The defendant is wrong. The government alleges that everything about the purported "shareholder letters" was a lie, beginning with the false claim that the letters were actually written by shareholders.   That is because, as the government alleges, the very purpose behind the purported "shareholder letters" was to corruptly obstruct the SEC's investigation to prevent the SEC from discovering the extent of the defendant's efforts to defraud his company's shareholders.

[4] In his brief, the defendant downplays his deceptive and obstructive conduct.   He incorrectly states that the superseding indictment does not allege that he signed the "shareholder letters" or "ghost-wrote [them] for someone else's signature."   (Def.'s Mots. at 10.)   To the contrary, the superseding indictment alleges that the defendant signed all three purported "shareholder letters" using a fake identity—Matthew Steinmann—and that the defendant directed every aspect of the preparation of the purported "shareholder letters" from behind the scenes under false pretenses. (Superseding Indictment ¶¶ 52-59.)   The superseding indictment clearly alleges that the defendant was the driving force behind the purported "shareholder letters" from conception to execution.

speech fails because this speech, if delivered with the requisite corrupt intent, is, by definition, unprotected by the First Amendment. *See Lund v. City of Rockford, Illinois*, 956 F.3d 938, 947 (7th Cir. 2020) ("Although First Amendment activity is generally protected, it loses its protection when it violates the law."); *cf. United States v. Sutherland*, 921 F.3d 421, 426-27 (4th Cir. 2019) (while in theory "an obstruction statute encroaching too aggressively on innocent citizen/agency interactions would infringe the basic right to petition guaranteed by the First Amendment of our Constitution," 18 U.S.C. § 1512(c)(2) (the general obstruction of official proceedings statute) includes "important safeguards" to avoid that possibility, and "[t]he government has every right to prosecute those who would corrupt" official proceedings), *cert. denied*, 140 S. Ct. 1106 (2020); *United States v. Parker*, 871 F.3d 590, 605 (8th Cir. 2017) ("Here, the record facts do not support Bender's claim that he was simply exercising his First Amendment rights. The facts established at trial show that Bender conspired to threaten government witnesses. The First Amendment does not shield such speech."); *United States v. Clum*, 607 F. App'x 922, 928 (11th Cir. 2015) ("Speech that could have First Amendment protection is not protected speech[ ] if it is part of 'a single and integrated course of conduct,' which violates the law.").

In a similar context, the Supreme Court has held that "[i]t is not simply because perjured statements are false that they lack First Amendment protection" but because "[p]erjury undermines the function and province of the law and threatens the integrity of judgments that are the basis of the legal system." *United States v. Alvarez*, 567 U.S. 709, 720-21 (2012). The same logic applies to statutes that "implicate fraud or speech integral to criminal conduct." *Id*. at 721. The defendant's attempts to undermine the functioning of an SEC investigation fall squarely within the realm of speech that is not protected by the First Amendment.

Accordingly, the defendant's motion to dismiss Count Three should be denied.

C. <u>The Defendant's Motion to Dismiss Counts Two and Three of the Superseding Indictment</u>

The defendant moves to dismiss Counts Two and Three, which were returned by the grand jury as part of the superseding indictment, on the ground that the government allegedly misled the Court and defense counsel when the government initially announced its intention to supersede. (Def.'s Mots. at 13-14.)   The defendant's argument has no merit and his motion should be denied.

The defendant's claim that the government misled the Court is based on his mistaken "recollection" of the April 27, 2021 status conference.   (*Id.*)   According to the defendant, the Court asked government counsel for an assurance that the superseding indictment was based on new evidence that had come to light in the months since the return of the original indictment, and "[t]he defense recollection of the government's response was that it did not directly address the Court's inquiry."   (*Id.* at 13.)   The defendant is wrong.   A review of the transcript of the status conference indicates that government counsel was not evasive, as the defendant suggests, but directly addressed the Court's question in full and frank terms:

> THE GOVERNMENT: The government anticipates presenting a superseding indictment in this matter in the next few weeks subject to the deliberating grand jury.   In light of that, while we don't think it will dramatically reshape the case, it's likely to contain some different charges.   In the interest of fairness, we think given the motions deadline under the current indictment of next week, it's fair to postpone the trial by about two months. The parties conferred and agreed on proposing September 27th as the trial date.   We do have—we've also prepared a list of proposed dates that mirror that to adjust the rest of the pretrial schedule if it works for the Court.
>
> THE COURT: Okay, I'm not a fan of moving trial dates around.   I take it this superseding indictment is going to relate to information that you were not aware of before and you feel like this is the only option?
>
> THE GOVERNMENT: It will include information and it will include charges that were not in the prior indictment.   There will be some additional discovery that we had not obtained until—or actually still have not obtained.   And so just in order to make sure that defendant has the ability to receive that discovery, review it, we would ask for the brief continuance. We understand we are a hundred percent in accord with Your Honor that we want to try this case as soon as possible, but we think it's just necessary given the interest of the

11

discovery and the superseder.

(Excerpts from Apr. 27, 2021 Transcript at 6:25-8:1, attached hereto as Ex. 2.)

The government's representation to the Court was in fact true: the superseding indictment contained new information and new charges, and was also based, in part, on new discovery—some of which had not yet been obtained as of the date of the status conference.   (*See, e.g.*, Superseding Indictment ¶¶ 12, 14d, 39, 40, 42, 44, 52, 53, 54, 55, 56 , 60, 61.)

On April 16, 2021, the government interviewed Person 2, a longtime DECN shareholder who helped to write the purported "shareholder letters" described in the original indictment.   The government learned for the first time that an individual representing himself to be "Matthew Steinmann" gave Person 2 the idea to write the purported "shareholder letters" and then directed Person 2 with respect to all aspects of preparing and sending them.   (*Id.* ¶¶ 12, 52-54.)

Further investigation revealed that Matthew Steinmann was a false persona and identity adopted and used by the defendant on investorshangout.com.   On April 22, 2021, the government obtained a search warrant for Investors Hangout.   *See In the Matter of the Search of Information Associated with One Account Stored at Premises Controlled by Investors Hangout, LLC Pursuant to 18 U.S.C. 2703 for Investigation of Violation 18 U.S.C. 1505*, 21-sc-1317 (D.D.C. Apr. 22, 2021).   On or about April 28, 2021, Investors Hangout produced subscriber information, user log-in information and private messages associated with the profile name purportedly belonging to Matthew Steinmann.   IP addresses and associated verified telephone numbers show that these accounts were all linked to the defendant.

The defendant's claim that the obstruction count was based on evidence discovered before the return of the original indictment (Def.'s Mots. at 14) is therefore incorrect.   The defendant knew as much before he filed this motion.   Defense counsel received the search warrant returns

12

from Investors Hangout in discovery on or around May 28, 2021, and received a copy of the FBI

302 report for Person 2 on or around July 22, 2021.[5]

The defendant also argues that the Court should dismiss Counts Two and Three because the

addition of these charges violated the Justice Department Guideline advising government counsel

that: "In order to promote the fair administration of justice, as well as the appearance of justice, all

U.S. Attorneys should charge in indictments and informations in as few separate counts as are

reasonably necessary to prosecute fully and successfully and to provide for a fair sentence on

conviction."   (Def.'s Mots. at 14 (quoting Criminal Resource Manual ("CRM"), U.S. Department

of Justice Section 215, *available at*   https://www.justice.gov/archives/jm/criminal-resource-

manual-215-number-counts-indictments).)   However, it is well established under D.C. Circuit law

that "violations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant

no enforceable rights.*"   United States v. Blackley*, 167 F.3d 543, 548–49 (D.C. Cir. 1999).   That

alone compels denial of the defendant's motion on this ground.

In any event, the government did not violate DOJ policy.   In a relevant part of the policy

that the defendant omitted, the policy states that, "[t]o the extent reasonable, indictments and

informations should be limited to fifteen counts or less, so long as such a limitation does not

jeopardize successful prosecution or preclude a sentence appropriate to the nature and extent of the

offenses involved."   (CRM § 215.)   Here, the original indictment contained only two counts and

---

[5] The defendant's claim that the wire fraud count should be dismissed because it is not based on
new information is also without merit.   The government did not represent that every count it
intended to add as part of the superseding indictment was based on new information, nor did the
government have a duty to make such a representation.   In any event, the government disclosed to
the Court that it planned to add new charges and also disclosed that the government did not believe
the new allegations or charges in the superseding indictment would dramatically reshape the case,
and that, for that reason, any continuance of the trial date need only be brief.   (Excerpts from Apr.
27, 2021 Transcript at 6:1-7:12, attached here as Ex. 2.)

the superseding indictment added only two more.   A total of four counts is well below the 15-count limit suggested by Section 215.

In addition, as explained above, the obstruction count was based on new information learned as a result of the government's continued investigation and is separate from the false statement count alleged in the original indictment.   Count Three relates to the defendant's obstruction of the SEC's investigation by, among other things, using a fake persona on an Internet message board to convince Person 2 to write a series of letters designed to stop the SEC's investigation into the defendants' fraudulent scheme.   (Superseding Indictment ¶¶ 72-73.)   Count Four, on the other hand, relates to defendant's false statement to the SEC, which, among other things, had the practical effect of concealing his efforts to obstruct the SEC's investigation.   (*Id.* ¶¶ 74-75.)

While the securities fraud and wire fraud counts are based on similar facts, the government believes it reasonably necessary to charge one count of each in light of the circumstances of this case.   The defendant does not argue how or why this would violate DOJ policy, or how charging the defendant with both securities fraud and wire fraud—which is common in similar cases around the country—violates the defendant's rights or otherwise entitles the defendant to the relief he seeks.

Accordingly, the defendant's motion to dismiss Counts Two and Three should be denied.

D. Defendant's Motion in Limine to Preclude Admission of "Other Act" Evidence

The defendant moves *in limine* for exclusion, under Federal Rule of Evidence 404(b), of evidence regarding his misappropriation of DECN funds, of his use of those misappropriated funds, and of false statements he made to law enforcement that were related to his scheme but not specifically charged as individual violations of 18 U.S.C. § 1001.   (Def.'s Mots. at 15-18.)

14

The defendant's motion is premised on the belief that the government intends to introduce such evidence as proof of other crimes, wrongs, or acts for a non-character or non-propensity purpose. Fed. R. Evid. 404(b). That premise is wrong and the defendant's motion should be denied on that basis.

"[A] threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is intertwined with the commission of charged crimes. Acts 'extrinsic' to the crime charged are subject to Rule 404(b)'s limitations; acts 'intrinsic' to the crime are not." *United States v. Machado-Erazo*, 901 F.3d 326, 333-34 (D.C. Cir. 2018). "Rule 404(b) only applies to truly 'other' crimes and bad acts; it does not apply to evidence of an act that is part of the charged offense or of uncharged acts performed contemporaneously with the charged crime if they facilitate the commission of the charged crime." *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016). *See United States v. Moore*, 651 F.3d 30, 63 (D.C. Cir. 2011) ("[N]ot all evidence of uncharged crimes, wrongs, or acts is barred by this rule. When evidence of such acts is 'intrinsic' to the charged crime, it is not evidence of 'other' acts and is thus wholly unregulated by Rule 404(b). 'Intrinsic' evidence encompasses evidence that is either of an act that is part of the charged offense or is of acts performed contemporaneously with the charged crime if they facilitate the commission of the charged crime.") (cleaned up); *United States v. Johnson*, 248 F.3d 655, 665 (7th Cir. 2001) ("evidence of uncharged criminal activity is admissible without regard to Rule 404(b) if it is intricately related to the facts of the case").

Evidence of DECN's precarious financial condition, the reason for that precarious financial condition, and the defendant's statements to investors about his compensation from the company is directly relevant to the securities fraud scheme charged in the superseding indictment. It is

charged conduct—expressly alleged in the superseding indictment—and it is relevant to, among other things, the defendant's motive for and means of carrying out his fraudulent scheme.   (*See, e.g.*, Superseding Indictment ¶¶ 9-12.)   As the defendant himself stated during the scheme, "[d]esperate times sometimes calls for desperate measures."   (*Id.* ¶ 12.)   And the "desperate measures" involved selling the lie that he had invented a new blood test for COVID-19.   (*Id.* ¶ 11 ("We have a lot at stake here.   I am not just trying to raise money to pay [Vendor 1], but we need a new story and this coronavirus through impedance is the story that will allow me to raise millions.").)   The defendant's alleged misappropriation therefore "is not a separate, or tangential, aspect of the government's case; rather, it is the catalyst for all of the events underlying the charged crime."   *Cf. United States v. Peete*, 781 F. App'x 427, 438-39 (6th Cir. 2019); *see also United States v. Lang*, 717 F. App'x 523, 531 (6th Cir. 2017) ("uncharged financial misconduct that is inextricably intertwined with the charged conduct may be admitted as evidence of a single criminal episode") (internal quotation marks omitted).

In addition, the fact that the defendant allegedly spent the misappropriated money on his personal entertainment—including live webcam chats with individuals in foreign countries—is a relevant part of the story of his conduct.   *See United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury.   It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.").   The nature of the expenses underscores the fact that the defendant was stealing shareholder money to use for a purpose that was strictly personal and completely unrelated to his company's business.   It also explains the expressed urgency behind the defendant's money-raising efforts, as well as the large amounts of money the defendant sought to raise.

16

Likewise, the allegations relating to the defendant's lies to federal law enforcement are intrinsic to the crimes charged.   As an initial matter, the defendant lied to the FBI in October 2020, which was during the relevant time period as defined by the superseding indictment.   (Superseding Indictment ¶¶ 48, 64.)   Moreover, the effect of the defendant's lies was to conceal the fraud, which was ongoing at the time of the FBI's interview, as well as the defendant's efforts to obstruct the SEC's investigation, which were also then ongoing.   (*Id.* ¶¶ 14f, 14g, 49-64.)   For example, the defendant's lie to the FBI about his involvement in the purported "shareholder letters" concealed the truth that he had engaged in extensive efforts to obstruct the SEC's investigation into the alleged fraud.   Similarly, his lie to the FBI about his use of Internet message boards concealed the truth that he was using fake personas to threaten and intimidate investors who expressed concerns that the company's COVID-19 blood test was fake and who wished to approach the authorities, and to pump the price of DECN stock by making false and misleading statements.   (*Id.* ¶¶ 12, 14c, 14d, 14e, 39-48.)   Indeed, in the superseding indictment, the government specifically alleges that "[i]t was the purpose of the scheme for BERMAN to artificially increase and maintain the share price of DECN securities to enrich himself through access to additional corporate funds and compensation by . . . *concealing the scheme from regulators, law enforcement, shareholders, and the investing public*."   (*Id.* ¶ 13(d) (emphasis added).)   The defendant's lies to the FBI in the midst of his then-ongoing fraud and obstruction are thus connected and intertwined with the criminal activities alleged in the superseding indictment.   *See United States v. Staton*, 605 F. App'x 110, 116 (3d Cir. 2015) (acts that enhanced the defendant's "ability to conceal his scheme and its proceeds from law enforcement []constitute contemporaneous acts that facilitated the commission of the fraudulent scheme," and thus were "intrinsic, and hence relevant, to the charges against him").

17

The defendant's motion to preclude should therefore be denied.

E.  Defendant's Motion to Preclude Evidence of Later Securities and Wire Fraud

The defendant moves to "preclude evidence of securities and wire fraud after the trading public received explicit warnings" from regulators about DECN.  (Def.'s Mots. at 24.)   The defendant's motion should be denied, because the defendant fails to identify specific evidence that he seeks to preclude and misstates the law of fraud.   To the extent the defendant identifies a plausible defense, he is free to explore his points through reasonable cross-examination.

The superseding indictment alleges that, from February 2020 through December 2020, the defendant engaged in a scheme to defraud investors by making false, misleading, and fraudulent statements regarding DECN's creation of a blood-based test for COVID-19.   (*See, e.g.*, Superseding Indictment ¶¶ 15-24.)   In April 2020, the SEC suspended trading in DECN, in order to protect investors from the defendant's scheme.   (*Id.* ¶ 37.)   OTC Markets, which manages microcap stocks such as DECN, further described DECN as a "Caveat Emptor" stock, indicating that investing in DECN carried substantial risk.

The defendant claims that "warnings from the SEC and OTC Markets Group put any prospective buyer of DECN shares on notice of the risks involved in the purchase of such shares. As consequence, no such purchaser can be considered to be the victim of a fraud."   (Def.'s Mots. at 24.)   But the defendant's argument belies a basic legal principle of the law surrounding fraud: a fraudster takes his victims as he finds them.   "Fraudsters may not escape criminal liability for lies told to induce gullible victims to make worthless investments . . . ."   *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017).   Courts have consistently held that "the recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation."   *United States v. Rosby*, 454 F.3d

18

670, 677 (7th Cir. 2006) (citation omitted).   This is because "[r]equiring all lenders, investors and so on to investigate every representation made to them would be extravagantly wasteful," as opposed to simply requiring speakers to tell the truth.   *Id*.

Indeed, as the Supreme Court has "recognized time and again, a fundamental purpose of the various Securities Acts was to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry." *Basic Inc. v. Levinson*, 485 U.S. 224, 234 (1988).   The defendant may be correct that the SEC's trading suspension and OTC Markets' warnings provided notice to investors that DECN was a "dangerously risky" investment.   But a "dangerously risky" stock is different from a stock whose price has been pumped up by fraud; shareholders, even if they have a high tolerance for risk, are entitled to not be lied to by corporate officers.   *See United States v. Corsey*, 723 F.3d 366, 373 n.3 (2d Cir. 2013) ("[T]he question is not whether victims might smell a rotten deal before they hand over money.   Instead, a misrepresentation is material if it is capable of influencing the decisionmaker, no matter what the victim decides to do.") (citation omitted); *United States v. Maxwell*, 920 F.2d 1028, 1036 (D.C. Cir. 1980) (collecting cases).

Further, the defendant's argument is as brazen as it is legally unsound.   The defendant did not advertise DECN as a "dangerously risky" stock subject to SEC suspension and warning. Rather, the defendant spent the better part of 2020 working to hamper and impede the SEC's investigation.   For months, the defendant told investors that the SEC's investigation was biased, and he described the SEC's actions—which he now claims provided warnings to his investors—as "damaging to humanity."   (Superseding Indictment ¶ 59.)   The defendant lamented that the SEC investigation was making it harder for DECN to raise money, (*id*. ¶ 51), and discussed ways to intimidate the SEC staff, including by hiring a private investigator to surveil an SEC attorney (*id*.

19

¶ 61).   The defendant also used fake personas on Internet message boards to refute allegations that DECN or its CEO (namely, the defendant) had lied about the COVID-19 blood test (*id.* ¶¶ 14d, 45), and relentlessly attacked investors who expressed concern about their investment in the company's stock, threatening that these concerned investors could be subject to lawsuits or even arrest if they went to the authorities (*id.* ¶ 50).   After months of attacking the SEC, and telling the public that the SEC's investigation was unreliable, biased, and faulty, the defendant now claims that the public he deceived should have known better, because the SEC warned the public.   It would be absurd to permit the defendant to benefit from an SEC process he worked tirelessly to undermine.

At trial, the government intends to present testimony from several victims of the defendant's scheme.   The defendant may be entitled, if relevant, to ask these victims if they learned about the SEC and OTC Markets warnings, and whether these warnings should have revealed to them the truth about the defendant's fraud.   Of course, any such questioning must be reasonable and based in a good faith foundation, and must not venture into improper harassment of witnesses.   *See*, *e.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("trial judges retain wide latitude [ ] to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").   Because the proper place for raising such arguments is at trial, and not in the form of a motion to dismiss, the Court should deny the defendant's motion.

F.   Defendant's Motion *in Limine* to Preclude Expert Testimony

The government provided the defendant with expert disclosure on February 17, 2021, and a supplemental expert disclosure on April 14, 2021.   (*See* Letters to Ronald S. Herzog, Esq., dated Feb. 17, 2021 and Apr. 14, 2021, respectively attached hereto as Exs. 3 and 4.)   The government

disclosed that, as part of its case-in-chief, it plans to call Thomas I. Carocci, Esq., who serves as

Assistant General Counsel with the Financial Industry Regulatory Authority's ("FINRA") Criminal

Prosecution Assistance Group.   The government further disclosed that:

> [W]e anticipate that Mr. Carocci will testify about the securities markets, including their
> structure and operations; stocks, options, convertible notes/securities, and other financial
> instruments at issue in this matter and trading and market practices related thereto;
> mandatory securities filings; and the effect of market-moving events on stock price and
> volume.   Mr. Carocci may further testify about the trading involved in the securities fraud
> scheme charged in the Indictment in this matter.
>
> Specifically, Mr. Carocci may testify about trading by specific shareholders (including
> victims), the effect of market-moving events such as press releases and periodic disclosures
> and reports issued by Decision Diagnostics Corp. on stock prices, and the use by Mr.
> Berman, Alpha Capital Anstalt, and others of stock sales, convertible notes/securities, and
> offerings to benefit Mr. Berman.

(Ex. 4 at 1.)

The defendant moves to preclude Mr. Carocci from providing expert testimony about

"trading by specific shareholders, (including victims)."   (Def.'s Mots. at 24.)   Citing *Crawford v.

Washington*, 541 U.S. 36 (2004), the defendant claims that permitting Mr. Carocci to testify about

"trading by specific shareholders" would violate his Sixth Amendment right to confront the

witnesses against him because the defendant would not be given the opportunity to cross-examine

the specific shareholders.   (*Id.*)   The defendant's motion should be denied.

In *Crawford*, the Supreme Court held that the Confrontation Clause of the Sixth

Amendment bars the introduction of "testimonial" out-of-court statements by witnesses who are

not subject to cross-examination.   541 U.S. at 68-69.   The "core class" of "testimonial statements"

includes "statements that were made under circumstances which would lead an objective witness

reasonably to believe that the statement would be available for use at a later trial," such as affidavits,

depositions, prior testimony, or confessions.   *Id.* at 51-52.

The defendant misunderstands the basis of Mr. Carocci's anticipated testimony. His testimony will be based on his review and analysis of brokerage account records and/or raw data reflecting trading in DECN securities, not out-of-court statements made by the specific shareholders themselves. The Confrontation Clause does not apply to either type of evidence. It is well established that "[b]usiness and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). *See also United States v. Hemphill*, 514 F.3d 1350, 1358 n.2 (D.C. Cir. 2008) ("Needless to say, bank records and credit card statements are not testimonial evidence, and that is what the Confrontation Clause regulates."). Similarly, raw data is not testimonial. *See, e.g.*, *United States v. Waguespack*, 935 F.3d 322, 334 (5th Cir. 2019), *cert. denied,* 140 S. Ct. 827 (2020) (holding that machine-generated materials, such as images downloaded to a computer and download logs, are not statements of a witness and do not trigger the Confrontation Clause); *United States v. Drayton*, 589 F. App'x 153, 154 (4th Cir. 2015) ("Because the raw data generated by laboratory instruments are not testimonial hearsay statements, [the expert's] expert testimony using those data did not violate the Confrontation Clause."); *United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) (raw data generated by lab machines from testing of substance seized from defendants were not out-of-court statements subject to the confrontation clause).

In any event, even if some of the evidence on which Mr. Carocci expects to rely would be testimonial (which it is not), the defendant's motion still should be denied. *Crawford* "did not involve expert witness testimony and thus did not alter an expert witness's ability to rely on (without repeating to the jury) otherwise inadmissible evidence in formulating his opinion under

Federal Rule of Evidence 703." *United States v. Henry,* 472 F.3d 910, 914 (D.C. Cir. 2007).
Accordingly, so long as Mr. Carocci testifies based on his expertise in securities, and does not relate
statements by out-of-court declarants to the jury, his expert testimony is admissible. *See, e.g.*,
*United States v. Law*, 528 F.3d 888, 912 (D.C. Cir. 2008).

G.  Defendant's Motion for a Bill of Particulars

The defendant moves for a bill of particulars with respect to paragraphs 13 and 65 of the
superseding indictment.  (Def.'s Mots. at 25-26.)  Paragraph 13 alleges: "It was the purpose of
the scheme for BERMAN to artificially increase and maintain the share price of DECN securities
to enrich himself through access to additional corporate funds and compensation by: (a) making
materially false, fraudulent, and misleading public statements related to DECN's purported
COVID-19 test; (b) concealing the true facts about DECN's purported COVID-19 test;
(c) diverting the proceeds of the scheme for his personal use and benefit; and (d) concealing the
scheme from regulators, law enforcement, shareholders, and the investing public."  Paragraph 65
alleges: "As a result of the fraudulent scheme detailed above, DECN investors lost millions of
dollars by, among other things, purchasing DECN common stock at artificially inflated prices and
selling their shares at a loss."

Under Federal Rule of Criminal Procedure 7, an indictment need only be a "plain, concise,
and definite written statement of the essential facts constituting the offense charged and must be
signed by an attorney for the government."  Fed. R. Crim. P. 7(c)(1).  Rule 7(f), however,
provides that "[t]he court may direct the government to file a bill of particulars."  Fed. R. Crim. P.
7(f).  "'A bill of particulars can be used to ensure that the charges brought against a defendant are
stated with enough precision to allow the defendant to understand the charges, to prepare a defense,
and perhaps also to be protected against retrial on the same charges.'"  *United States v. Mejia*, 448

F.3d 436, 445 (D.C. Cir. 2006) (quoting *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987)).   "The defendant bears the burden of showing that the information sought is necessary and that he will be prejudiced without it."   *United States v. Raniere*, 384 F. Supp. 3d 282, 322 (E.D.N.Y. 2019) (internal quotation marks omitted).

"[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required."   *Butler*, 822 F.2d at 1193.   "The determination of whether a bill of particulars is necessary 'rests within the sound discretion of the trial court' and will not be disturbed absent an abuse of that discretion."   *Id*. (quoting *Butler*, 822 F.2d at 1194; citing Fed. R. Crim. P. 7(f) ("The court *may* direct the government to file a bill of particulars.") (emphasis added)).

Courts are required to grant a bill of particulars only "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (citation and quotation marks omitted). "Defendants are not entitled to a bill of particulars as a matter of right, and the Court need only grant a defendant's request upon determining that a bill of particulars is necessary."   *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 146 (D.D.C. 2015).   "Typically, a defendant seeks a bill of particulars where the government has provided minimal discovery or other information as to the charged offense and the evidence to be offered against the defendant at trial."   *Id*.   Where, as here, the government has produced "abundant information" through discovery and filings, a bill of particulars is not warranted.   *Id*.

The defendant does not explain why paragraphs 13 and 65, in the context of the entire, detailed superseding indictment, and in combination with the substantial discovery and other information the government has provided the defense, fail to allow him to understand the charges,

prepare a defense, and be protected against retrial on the same charges.   Indeed, while purportedly moving for a bill of particulars, the defendant proceeds to expressly ask for the "evidence the Government will rely upon" to prove its case at trial.   (Def.'s Mots. at 25-26.)   But "[a] bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial."   *United States v. Lundstrom*, 880 F.3d 423, 439 (8th Cir. 2018).   *See United States v. Davis*, 854 F.3d 1276, 1293 (11th Cir. 2017) ("A bill of particulars may not be used to obtain a detailed disclosure of the government's evidence prior to trial.") (internal quotation marks omitted); *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993) (bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial").

The defendant fails to meet his burden of establishing the need for a bill of particulars as to the two identified paragraphs in the Superseding Indictment.   His motion should be denied.

## IV.   Conclusion

For the foregoing reasons, the Court should deny the defendant's motions.

Respectfully submitted,

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division

By:      /s/_____
Christopher Fenton
Trial Attorney
Justin Weitz
Acting Principal Assistant Chief
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Vijay Shanker

Deputy Chief
Appellate Section, Criminal Division
950 Pennsylvania Ave. NW
Washington, DC 20530

<u>CERTIFICATE OF SERVICE</u>

I certify that on August 10, 2021, I filed a true and correct copy of the foregoing with the Clerk of Court via ECF.

_____/s/ Christopher Fenton_____