UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 1:20-cr-00278-TNM |
| v. : | |
| : | |
| KEITH BERMAN : | |
| : | |
| Defendant. : | |

GOVERNMENT'S REPLY IN SUPPORT OF ITS OMNIBUS
MOTION IN LIMINE TO EXCLUDE IRRELEVANT EVIDENCE
UNDER FEDERAL RULES OF EVIDENCE 401, 402, AND 403

The United States of America, by and through its undersigned counsel, respectfully submits this reply in support of its motion in limine (ECF 30 ("Gov't Mot.")) for orders excluding two categories of evidence as irrelevant under Federal Rules of Evidence 401 and 402 and excludable under Federal Rule of Evidence 403.

The scope of the crimes charged in the superseding indictment is discrete and specifically relates to the defendant's lies about his purported development of a COVID-19 blood test.  (ECF 19 ("Superseding Indictment") ¶¶ 13-38, 66-67, 68-71.)  Beginning in February 2020, the defendant initiated a fraud scheme in which he made a series of public statements falsely claiming he and Decision Diagnostics, Inc. ("DECN") had developed a blood test when, in truth, he had not.  His scheme to defraud continued until he was indicted in December 2020, with the defendant concealing the true facts relating to the blood test and concealing the scheme from regulators, law enforcement, shareholders, and the investing public.  These lies about a blood test are the basis of the securities fraud and wire fraud counts charged in the superseding indictment.  Accordingly, the allegations in the superseding indictment, which were pled at the height of the pandemic, focus

1

on facts directly relating to the blood test and not facts relating to the defendant's or the company's other activities during this time period.

In its motion, the government explained that evidence regarding (1) the question whether the defendant's purported COVID-19 blood test is theoretically possible, and (2) the defendant's July 2020 announcement that he planned to develop a COVID-19 saliva test, is irrelevant under Federal Rules of Evidence 401 and 402. Whether the defendant's blood test *could* be developed is not relevant to the question whether the defendant lied when he said that he already had developed it. Similarly, the defendant's July 2020 announcement that he planned to develop a saliva test is not relevant to his earlier false statements, made to the investing public and everyone else, that he already had developed a blood test.[1]

In response, the defendant argues these issues are relevant because (1) allegations referring to the issues are purportedly included in the superseding indictment in paragraphs 16 and 38, and (2) the issues occurred during the time period of the fraud scheme alleged in the superseding indictment. (ECF 32 ("Def. Opp.") at 3-5.) The defendant's arguments do not withstand scrutiny and should be rejected.

***The Lone Allegation Mentioning the Theoretical Possibility of Developing a Saliva Test Does Not Make Either Issue Relevant***

The superseding indictment makes a single reference to the fact that, on February 29, 2020, the defendant emailed Mr. Kim to inquire whether it would be theoretically possible to use impedance technology to test for COVID-19 in blood or saliva, and it also alleges that Mr. Kim

---

[1] The fact that the superseding indictment does not contain allegations relating to the defendant's purported plans to develop a saliva test should not be understood to mean the government believes the defendant's public statements about the saliva test are true.

responded that he did not know the answer.  (Superseding Indictment ¶ 16.)  This allegation, contained in paragraph 16, is the only allegation in the superseding indictment that mentions feasibility or saliva.  The sole purpose of the allegation in paragraph 16 is to demonstrate the falsity of certain statements that the defendant later made about the blood test.  For example, on March 2, 2020, the defendant falsely represented to Dr. Musho that Mr. Kim said he believed his team could develop the blood test.  (*Id.* ¶ 17.)  Similarly, on March 3, 2020, the defendant falsely represented to investors that he already had developed the blood test.  The allegations in paragraph 16 show the defendant knew both of these statements were false at the time he made them.  (*Id.* ¶ 18.)

The government recognizes that the defendant's initial inquiry to Mr. Kim is a fact that is likely to be admitted at trial.  Indeed, it is crucial evidence of the defendant's knowledge and intent.  What is *not* relevant, and likely to confuse and mislead the jury and waste time, is whether the defendant's blood test was or is *in fact* theoretically possible.  As the government explained in its motion, this scientific, technical question is not probative of the issues in this case, which relate to the defendant's false representations to investors despite his knowledge that a COVID-19 blood test was merely an idea, that Mr. Kim had not made the idea come to fruition, that he had not even produced a prototype, and that he could not perform the testing required for FDA approval.  (Gov't Mot. at 5-6.)

What is also not relevant, and likely to confuse and mislead the jury and waste time, is the fact that, as part of this initial inquiry on February 29, 2020, the defendant asked Mr. Kim about saliva in addition to blood.  The defendant's inclusion of saliva as part of the inquiry does not

make it more or less probable that the defendant had knowledge of the falsity of the statements he later made about the blood test or any other element of the crimes charged based on these lies.

The defendant also tries to use the allegation in paragraph 16 as a hook to introduce other evidence relating to his July 2020 announcement of his plans to develop a saliva test. The defendant fails to explain how that unrealized desire makes it any more or less probable that he committed the conduct alleged in the superseding indictment related to the *separate* blood test that he claimed had already been developed months earlier despite his knowledge to the contrary. What the defendant said beginning in July 2020 about his plans to develop a saliva test is not relevant to the elements of the crimes charged based on the false and misleading statements the defendant made in March, April, May, and June 2020 relating to the purported COVID-19 blood test.

***The Allegations Relating to False Statements Made in the July 10, 2020 Press Release About the Blood Test Do Not "Open the Door" to Irrelevant Evidence Relating to the Saliva Test***

The defendant argues that paragraph 38 of the superseding indictment also includes allegations about the defendant's July 10, 2020 announcement of the saliva test. (Def.'s Opp. at 4-5.) This is not true. The superseding indictment does not contain any allegations about the saliva test in paragraph 38. Although the superseding indictment references the July 10, 2020 press release, it references only the false statements the defendant made in that press release relating to the blood test, not the saliva test. (Superseding Indictment ¶ 38.)

Specifically, the superseding indictment alleges in paragraph 38: "on or about July 10, 2020, BERMAN issued a press release representing that DECN's COVID-19 blood test was functional, 'producing results at: 10.5 seconds,' and that DECN continued working toward completing the EUA application process by completing the FDA's testing requirements." (*Id.*)

4

The allegation in paragraph 38 refers to the defendant's false claim that "[t]est reporting for the GenViro! finger stick kits are currently producing results at: 10.5 seconds." (ECF 32-1.) This statement is false because the defendant had not actually developed the finger stick kit (which is the blood test, not the saliva test), and the finger stick kit was thus not producing results at 10.5 seconds. (Superseding Indictment ¶¶ 15-24.) The allegation in paragraph 38 also references the defendant's false claim that "[t]he company's two EUA applications are currently under FDA review while final interviews to select a clinical trial partner, [which are] needed to meet FDA new data foundations[,] are in motion." (ECF 32-1.) This statement is false because the defendant knew the company was unable and unwilling to conduct the type of clinical testing that the FDA required to complete the review process.[2] (Superseding Indictment ¶¶ 25-35.)

The defendant argues that the fact that this press release also contains statements relating to the saliva test "open[s] the door" to the admission at trial of evidence relating to the saliva test. This argument is without merit. The government did not affirmatively choose to introduce otherwise inadmissible evidence relating to the saliva test. To the contrary, the government made an allegation based on the false statements in a press release that related specifically and exclusively to the blood test. The fact that the false statements at issue were made in a press release that also contained other statements does not automatically make those other statements

---

[2] The defendant accuses the government of phrasing its allegations in a misleading way. (Def.'s Opp. at 4.) Like the defendant's other accusations of wrongdoing by the government, his latest claim has no basis in fact. The fact that the superseding indictment references a press release that contains false statements about the blood test and statements about other topics does not constitute prosecutorial misconduct. The superseding indictment specifically references only those statements alleged to be false and relevant, and not the statements that are irrelevant to the crimes charged.

relevant. Significantly, the defendant fails to provide any other reason why this otherwise inadmissible information should be admitted at trial.

***Every Fact and Event that Took Place Within the Relevant Time Period Is Not Automatically Relevant to the Crimes Charged***

The defendant argues that evidence relating to the saliva test is relevant because the defendant purportedly developed the saliva test around the same time that he purportedly developed the blood test. (Def.'s Opp. at 5.) The defendant's argument is based on his unsupported claim that any evidence about the facts and events from the relevant time period – February 2020 through December 2020 – is relevant. (*Id.*) The defendant's argument is nonsensical and has no basis in law or fact. The question whether the saliva test is relevant depends on its relevance to the crimes charged, not the time period during which those crimes were committed. As explained, the crimes charged are based on statements the defendant made about the blood test, not the saliva test. Moreover, with the exception of the July 10, 2020 press release discussed above, the false statements about the blood test expressly referenced in the superseding indictment were made before the saliva test was announced. (*See, e.g.*, Superseding Indictment ¶¶ 15-35.) To the extent the superseding indictment alleges a continuation of the scheme through December 2020, that is based primarily on allegations that the defendant concealed the true facts relating to the blood test and concealed the scheme to defraud based on the blood test from regulators, law enforcement, shareholders, and the investing public. As alleged, the defendant's concealment has nothing to do with the saliva test.

***The Defendant Should Be Precluded from Eliciting Expert Opinion Testimony from Mr. Kim and Dr. Musho***

With respect to witnesses Dr. Musho and Mr. Kim, the government has not argued (as the defendant suggests, Def.'s Opp. at 7) that the witnesses should be precluded from testifying about any "technical aspects" of the relevant fact issues. Rather, because they are not being called as expert witnesses, Dr. Musho and Mr. Kim should not be asked, based on their scientific, technical, or other specialized knowledge, to opine on the theoretical feasibility of an impedance-based blood test for COVID-19. And the defendant's own citation to the Federal Rules of Evidence shows why: while it is true that a lay witness may testify in the form of an opinion, the rules make clear that such an opinion must be limited to one that is rationally based on the witness's perception, and *not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702. Fed. R. Evid. 701. The government does not intend to ask Dr. Musho or Mr. Kim whether a blood or impedance test for COVID-19 is theoretically possible, but rather only about the status of the defendant's purported COVID-19 blood test at the times the defendant made public statements misrepresenting that it had already been developed. The defendant should therefore be limited to the same extent.

***Precluding Irrelevant Evidence and Testimony Does Not Violate the Defendant's Sixth Amendment Rights***

The defendant also invokes his constitutional right to present a defense. (Def.'s Opp. at 9-10.) While the defendant certainly has such a right, it is not unlimited, and it is curtailed by the evidentiary rules relating to irrelevant evidence or evidence that is subject to exclusion. *See United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," including the "rules

7

excluding evidence from criminal trials."); *United States v. Centeno-Gonzalez*, 989 F.3d 36, 53 (1st Cir. 2021) ("While fundamental and robust, a defendant's right to present relevant evidence in his own defense is not unlimited, but rather is subject to reasonable restrictions, including the Federal Rules of Evidence.") (cleaned up); *United States v. Benson*, 957 F.3d 218, 237 (4th Cir.) (the right to present a defense is "not absolute: criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial") (internal quotation marks omitted), *cert. denied*, 141 S. Ct. 934 (2020); *Adzhemyan v. United States*, 803 F. App'x 77, 80 (9th Cir.) ("A criminal defendant has no right to present irrelevant evidence.") (internal quotation marks omitted), *cert. denied*, 141 S. Ct. 392 (2020); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) (despite the Sixth Amendment guarantee of the right to present a defense, the district court has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted").

Accordingly, before asserting his right to present a defense, the defendant must demonstrate why evidence about an unrelated COVID-19 test and highly technical and theoretical evidence about impedance testing, when the defendant knew that such testing would not work as he was claiming, is relevant and not likely to confuse the jury or waste time. He has failed to do so. As early as March 3, 2020, the defendant falsely claimed in public statements that he had already developed a COVID-19 blood test. The only question of fact before the jury is whether

8

that statement was in fact true or false, not whether it was theoretically possible for the defendant to develop such a test months or years down the road, or whether it was theoretically possible for the defendant to eventually develop a saliva test as an alternative to the test about which he lied.

For all of the foregoing reasons as well as those in the government's initial filing, the Court should grant the government's motions.

                                                 Respectfully submitted,

                                                 JOSEPH S. BEEMSTERBOER
                                                 Acting Chief, Fraud Section
                                                 Criminal Division

By:    /s/_____
        Christopher Fenton
        Trial Attorney
        Justin Weitz
        Acting Principal Assistant Chief
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005

        Vijay Shanker
        Deputy Chief
        Appellate Section, Criminal Division
        950 Pennsylvania Ave. NW
        Washington, DC 20530

CERTIFICATE OF SERVICE

    I certify that on August 17, 2021, I filed a true and correct copy of the foregoing with the Clerk of Court via ECF.

                                                                /s/ Christopher Fenton