UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------------X

UNITED STATES OF AMERICA,

            Plaintiff,

                                          1:20-cr-00278 TNM

    -v-

KEITH BERMAN,

            Defendant.

-----------------------------------------------------------X

## **DEFENDANT'S MOTION TO DISMISS COUNT TWO**

Defendant Keith Berman, by and through undersigned counsel, respectfully submits this motion to dismiss Count Two which alleges that Mr. Berman "devised…a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises [and] by means of wire communications in interstate commerce" in violation of 18 U.S.C. Section 1343. This wire fraud count must be dismissed, as a matter of law, because the prosecution theory is inconsistent with the governing law with respect to what must be proved to sustain a valid wire fraud conviction.

<u>The Prosecution Theory of Wire Fraud Liability</u>

The wire fraud alleged in the Indictment is that Mr. Berman made "materially false statements…in order to artificially increase and maintain the share price of DECN securities" (Ind. par. 14b) "to enrich himself…[by] diverting the proceeds of the scheme for his personal use and benefit" (Ind. par. 13) and causing "DECN investors [to lose] millions of dollars, by among other things, purchasing DECN common stock at artificially inflated prices and selling their shares at a loss." (Ind. par. 65). There are both factual and legal defects in this theory of wire fraud liability.

Factual Flaws with the Wire Fraud Allegation

The accusation that Mr. Berman "divert[ed] the proceeds" of the alleged fraud is, to say the least, perplexing. According to the Government, the victims of the purported fraud are persons who purchased shares of DECN—at one or more unspecified times—and did so at artificially inflated prices, and later sold their shares—at one or more unspecified times—at a loss. (Id.) If investors sold DECN shares at a loss on a publicly traded platform, how did Mr. Berman divert their money or property? That is the threshold question the Government must answer which is at the heart of the wire fraud alleged in Count Two.

Even assuming the Government can prove that some DECN investors sold shares below their purchase price, it is difficult to understand how any such alleged losses could have been diverted by Mr. Berman. As the OTC Market Group has described, purchases and sales of stock on this market—where DECN was listed as an over-the-counter stock—are generally executed at the "market price," which is based on the price a seller is willing to sell his shares to a buyer who is willing to buy them. This sets the "market price" for the transaction. Alternatively, an investor who owns stock, such as DECN, can specify the price at which they are prepared to sell their shares. https://www.otcmarkets.com/learn/market-101/trading.

Indeed, it is fundamental that any securities trade is a reciprocal transaction between a willing buyer and a willing seller at a price acceptable to both. Accordingly, when a purchaser bought DECN shares at an allegedly artificially inflated price, as the Indictment alleges, and later sold the shares for a loss, it was the seller of those shares who received the proceeds from that transaction—not Mr. Berman or DECN.

The Government's theory is that anyone who purchased DECN shares at an allegedly artificially inflated price and later sold those shares at a loss is a fraud victim—apparently

regardless of the circumstances that motivated the person initially to buy DECN and the later circumstances that led to the person to sell. Even assuming there is any merit to this theory—a point we do not concede for a moment—it remains mystifying how the aggregate of such purported trading losses could be diverted by Mr. Berman, who did not participate in the market for DECN shares and did not sell a single share of DECN stock during the relevant period.

That is why the defense moved for particulars about how the Government will establish that Mr. Berman enriched himself by virtue of the alleged fraud and how it will prove that he diverted the proceeds of the alleged scheme to defraud "for his own personal used benefit." Because the Government refused voluntarily to describe how a purported victim's trading losses could be diverted by and for Mr. Berman, the defense has been compelled to file this motion calling attention to both the factual and legal deficiencies of the wire fraud count in the Indictment.

As the following legal analysis shows, unless the Government can prove that the object of the alleged fraud was to obtain money or property from the purported victims of the fraud, the wire fraud count cannot be sustained as a matter of law.

The Legal Standard

Last term, a unanimous Supreme Court made it clear that a defendant violates Section 1343 *only* if an "object of [his] dishonesty was to obtain the [victim's] money or property." *United States v. Kelly*, 140 S. Ct. 1565, 1568 (2020). The Court explained that because a wire fraud offense is a property crime, the "Government in this case needed to prove property fraud." *Id*. at 1571. Further, the Court held that because wire fraud is a crime aimed at obtaining money or property from an alleged fraud victim, the statutory language about a "scheme or artifice to defraud" and "for obtaining money or property" must be construed "as a unitary whole" whereby 'the money-or-property requirement of the latter phrase' also limits the former." (*citing McNally v. United States*,

483 U.S. 350, 358 (1987)). Consequently, the "Government ha[s] to show not only that [the defendants] engaged in deception, but that 'an object of the[ir] fraud was money or property.'" *Id*. at 356; *Cleveland v. United States*, 531 U.S. 12, 26 (2000); *see also Skilling v. United States*, 561 U.S. 358, 400 (2010) ("victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other").[1]

In *Kelly*, the Supreme Court cited with approval, at 140 S. Ct. 1565, n. 2, Judge Easterbrook's opinion for the Seventh Circuit in *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993), where the court canvassed relevant Supreme Court precedent, and concluded: "None of the Supreme Court's mail fraud cases deals with a scheme in which the defendant neither obtained nor tried to obtain the victim's property." *Id*. at 1226. (the "mail fraud and wire fraud statutes share the same language…accordingly we apply the same analysis to both…"); *Carpenter v. United States*, 484 U.S. 19, 25 n.6 (1987) (obtaining money or property is "a necessary element of the crime"). In sum, *Walters* held that Section 1341 "only" reaches "a scheme to obtain money or property from the victim," and that even if the alleged scheme to defraud had the effect of "depriving a victim of money or property," that is not enough to trigger mail fraud liability, because a "deprivation is a necessary but not a sufficient condition for mail fraud." 997 F.2d at 1227.

Judge Easterbrook's description in *Walters* of the Seventh Circuit decision in *United States v. Ashman*, 979 F.2d 469 (7th Cir. 1992), is also instructive. *Ashman* involved the prosecution of a "matched order scheme" at the Chicago Board of Trade. When customers sent in orders to be executed "at the market," the defendant traders only paired some open-market orders off the market and diverted profits to themselves, thereby depriving customers of the benefits of an open-outcry auction on the trading floor. Judge Easterbrook observed that it was "important," in

---

[1] The Supreme Court in *Kelly* reversed the defendants' convictions despite evidence that "no doubt show[ed] wrongdoing–deception, corruption, abuse of power". *Id*. at 1568.

affirming the mail and wire fraud convictions, that the scheme allowed the traders fraudulently to obtain the proceeds of the fraud by diverting their customers' money "directly from the customers' accounts to the traders' accounts." *United States v. Walters*, *supra*, 997 F.2d at 1226. This contrasts with the present case where the Indictment's allegation that the so-called proceeds of the fraud were "diverted" by Mr. Berman is elusive to the point of defying understanding.

Other circuits have reached the same conclusion as *Kelly* and *Walters*. *See, e.g.*, *United States v. Baldinger*, 838 F.2d 176, 180 (6th Cir. 1988) (dismissing mail fraud indictment because statute only reaches schemes that have as their goal the transfer of something of economic value to the defendant); *Monterrey Plaza Hotel, Ltd. P'ship v. Local 483 of Hotel and Rest. Employees Union*, 215 F.3d 923, 926-27 (9th Cir. 2000) (wire fraud statute "explicitly require[s] an intent to obtain 'money or property [from the one who is deceived] by means of false or fraudulent pretenses, representations, or promises;" purpose of wire and mail fraud is to punish wrongful transfers of property from the victim to the wrongdoer); cf. *Ctr. for Immigration Studies v. Cohen*, 410 F. Supp. 3d 192, 183 n.2 (D.C.D.C. 2019) (defendants moved to dismiss RICO Complaint for plaintiff's failure to plead, in connection with alleged wire fraud predicates, that defendants intended to obtain money or property through the alleged scheme to defraud). In this case, the trial judge, focusing on the complaint's other legal deficiencies, observed that the D.C. Circuit had not ruled on the issue described above, and dismissed the complaint without reaching defendant's claim.

Conclusion

Count Two is both factually and legally invalid and must be dismissed. The prosecution's theory of wire fraud liability is based on stock transactions in which DECN shareholders purportedly sold their stock at a loss in the open market. But the foundational element of a stock

transaction is that the purported victim, on the Government's theory, experienced a loss that benefitted the contra-party, the buyer, and no one else—including Mr. Berman. Without further explication by the Government, Mr. Berman's alleged diversion of the "proceeds of the scheme," as the Indictment alleges, is implausible both factually and legally.

The Supreme Court's recent *Kelly* decision, and the other decisions cited above, demonstrate that the Government must prove that the object of the alleged wire fraud was for Mr. Berman to obtain money or property from the purported victims. If the Government cannot meet these legal and factual tests, Count Two should be dismissed.

Dated   August 25, 2021

                                      Respectfully submitted

                                      /s/ Walter P. Loughlin
                                      Walter P. Loughlin, Esq. (DC Bar No. NY0433)
                                      340 West 57th Street
                                      Suite 5D
                                      New York, New York 10019
                                      Tel. (203) 216-3445

                                      Ronald S. Herzog, Esq.
                                      Goldberg Segalla LLP
                                      50 Main Street
                                      Suite 425
                                      White Plains, New York 10606
                                      Tel. (914) 798-5419

                                      Counsel for Defendant Keith Berman