UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff,

                                          1:20-cr-00278  TNM

     -v-

KEITH BERMAN,

                Defendant.

-------------------------------------------------------x

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION
TO THE MOTION TO DISMISS THE INDICTMENT DUE TO THE
GOVERNMENT'S INTRUSION ON DEFENSE COUNSEL'S WORK PRODUCT
AND THE DEFENDANT'S SIXTH AMENDMENT RIGHTS**

     The Defendant Keith Berman, by and through his undersigned counsel, hereby responds to the Government's opposition to the defense Motion to Dismiss the Indictment on the ground that the Government subpoenaed nearly three months of defense counsel's telephone and text message records from his law firm direct dial land line and mobile phones. In doing so, the Government violated the zone of privacy protected by the work doctrine within which defense counsel was and is entitled to develop Mr. Berman's defense free from the prying eyes of the prosecution. In the context of this criminal case, the Government's inspection of defense counsel's incoming and outgoing telephone calls and text messages, including the frequency and length of communications between defense counsel and Mr. Berman, and also with whom defense counsel communicated by telephone or text message—before and after communicating with his client—infringed on Mr. Berman's Sixth Amendment right to effective representation by counsel.

The Prior Proceedings

Defense counsel first learned that the Government had subpoenaed 364 pages of his telephone records on May 28, 2021. During argument on the subsequent defense motion for discovery on this issue, the Government acknowledged that the subpoena served on defense counsel's telephone service provider, on February 23, 2021, covered the period "from December 1st, 2020 to the date of the subpoena, which is dated February 23rd, 2021." (Doc. 39-1; Tr. Aug. 27, 2021 at 9). The Government has further acknowledged that these records enabled it to scrutinize "the date and time of and phone numbers involved in a call or text message" placed to or from defense counsel's law firm office and mobile phones. (Doc. 23-1 at 5).

The Court acknowledged both the scope and rarity of what the Government had done: "It would show what numbers were in communication with the attorney's phone and for when and how long." (*Id*. at 13). Indeed, the Court stated: "Frankly, I have not seen many, if any, instances of the government seeking to subpoena information from or about a criminal defense attorney, and that does raise concerns about the attorney-client privilege." (*Id*.).

Ultimately, the Court denied the defense motion on the following grounds: (1) although the February 23, 2021 subpoena post-dated the original December 17, 2020 Indictment, it pre-dated the return, on May 11, 2021, of the superseding Indictment, and (2) the defense had not overcome the presumption of regularity—even for an admittedly highly irregular practice—conferred on the grand jury process.[1]

---

[1] In what appears to be a less comic version of the classic Alphonse and Gaston routine, the Government insists it "was—and remains—ready willing and able," and even "happy" to make an *in camera* submission to the Court elaborating on its decision to subpoena defense counsel's telephone records, But the Government will only do so "upon the Court's request." Of course, the Court did invite the Government to make just such an *in camera* submission, asking Government counsel: ""Do you want to approach *ex parte*?" If, to the Government, that does not appear to be a request from the Court, then Government is exhibiting its expertise at hair-splitting. (Govt. Opp. at note 1; Doc. 39-1, Tr. August 27, 2021 at 9).

2

The Applicable Legal Standards

The Government's opposition studiously ignores the defense claim of an unwarranted invasion by an adversary of defense counsel's protected work product in connection with the preparation of the defense and its infringement upon Mr. Berman's Sixth Amendment rights. Instead of responding to the legal issues upon which the defense motion is based, the Government opposition instead erects a straw man for the ease with which it can then knock it down.

This can perhaps best be explained by the Government's strenuous effort to avoid shouldering the burden to justify a subpoena of nearly three months of defense counsel's telephone records. As set forth in our initial moving papers, the "[T]he burden rests on the one who would invade [work product] privacy…to establish adequate reasons to justify production through subpoena or court order." *Hickman v. Taylor*, 329 U.S. 495, 512 (1947). The D. C. Circuit re-affirmed the burden imposed on the Government in this context: "Attorney work product is protected from discovery unless 'the one who would invade that privacy' carries the burden of 'establish[ing] adequate reasons to justify'" the intrusion on protected work product. *United States v. Deloitte* LLP, 610 F. 3d 129, 135 (D.C. Cir. 2010) (quoting from *Hickman v. Taylor*, 329 U.S. at 512).

In the *Deloitte* case, the D. C. Circuit also stated: "The work product doctrine announced in *Hickman* was subsequently partially codified in Federal Rule of Civil 26(b)(3), which imposes a burden on the party invading the work product doctrine—here the Government—to show a "substantial need" for the telephone records and an inability to obtain equivalent information "without undue hardship." *Id*. at 135. Because the Government appears to be allergic to the burden *Hickman* and *Deloitte* impose upon it, there is no mention of either case, or the work product doctrine, in the Government's opposition.

3

Instead, the Government re-defines the defense motion in order to shift it into its preferred doctrinal pigeonhole by asserting that the defense motion: "is presumably seeking dismissal [of the Indictment] based on what [Mr. Berman] considers to be outrageous government conduct." (Doc. 39 at 1). The Government's use of the adverb "presumably," like a poker player's tell, reveals its hand. Deploying this legerdemain, the Government then slyly argues that it has freed itself from the burden that *Hickman* and *Deloitte* (and other authorities) impose upon it to justify the telephone records subpoena. According to this Government's jiu-jitsu, the burden has shifted to the defendant to prove that the telephone records subpoena constituted such outrageous government misconduct that it shocks the universal sense of justice and caused substantial prejudice—only then will the defense have shown it is entitled to dismissal of the Indictment.

The Government's opposition once again displays its curious use of legal authorities—quoting fragmentary excerpts from opinions unmoored from the facts and circumstances of those decisions when they are inconvenient to its position. For instance, the Government relies on *United States v. Castaneda*, 997 F.3d 1318 (11th Cir. 2021), as support for the "shocking to the universal sense of justice" test. However, it ignores the following passage from *Castaneda*: "We have never applied the outrageous government conduct defense and have discussed it only in dicta." *Id*. at 1324 (quoting *United States v. Jayousie*, 657 F.3d 1085, 1111(11th Cir. 2011)).

The Government also cites to cases where the claimed violation of the attorney-client relationship arose from the lawyer in question coming forward and volunteering information to the authorities. *United States v. Prelogar*, 996 F.3d 526, 534 (8th Cir. 2021) ("Prelogar's former counsel agreed to be interviewed by the prosecution team."); *United States v. Voigt*, 89 F.3d 1050 (3d Cir. 1996) (the attorney "approached the FBI…and voluntarily provided…documents."); *United States v. Stringer*, 521 F.3d 1189 (9th Cir. 2006) (attorney "called the SEC"). These cases

have nothing to do with the Government's subpoena for defense counsel's telephone records. Mr. Herzog, unlike the lawyers in the cases cited by the Government, did not voluntarily furnish his records to the Government; nor could he. Defense counsel did not know his telephone records were being pored over by the Government until May 2021—three months after the subpoena had been served on his service provider. Finally, the Government relies on *United States v. Goldstein*, 989 F.3d 1178 (11th Cir. 2021), where the Court observed that the "defendant seeks to dismiss his Indictment for the first time on appeal," a decision irrelevant to this pretrial motion, and *United States v. DeLuca*, 663 F. App'x, 875 (11th Cir. 2016), an unpublished decision that the Eleventh Circuit itself treats as non-binding precedent. (11th Cir. R. 36-2). In sum, the legal analysis and factual circumstances in these decisions render them inapplicable to the defense motion and the issues presently before the Court.

     Even assuming, arguendo, that the defense was open to applying the legal standard favored by the Government, the motion to dismiss meets it. According to the Government, the defense must show (1) the government's objective awareness of an ongoing, personal attorney-client relationship, (2) deliberate intrusion into that relationship, and (3) prejudice or a threat of prejudice. (Doc. 39 at 1.) The first two issues are indisputable. The Government knew that Mr. Herzog represented Mr. Berman for months before the telephone subpoena issued—as evidenced by multiple email and telephone conference calls with Government counsel—and Mr. Herzog's participation in Mr. Berman's initial appearance, arraignment, and status conferences with the Court. The Government's subpoena of those records was, of course, a deliberate intrusion on that known attorney-client relationship. While the defense is not aware of the specific use the Government has, or will, make of the telephone records that have been in its possession for the last six months, the prosecution's ability to track to whom defense counsel spoke on his office and

5

mobile phones both in the weeks immediately preceding—and the two months immediately following—Mr. Berman's indictment and arrest on December 17, 2020 surely constitutes, at a minimum, a threat of prejudice.

A much more appropriate source of authority for the relief sought by the motion to dismiss is the Court's "supervisory authority over the administration of criminal justice," first announced and applied by the Supreme Court over 75 years ago in *McNabb v. United States*, 318 U.S. 332, 341 (1943). Since *McNabb*, supervisory power decisions have become "commonplace in every circuit." S. Beale, "Reconsidering Supervisory Power in Criminal Cases: Constitutional and Statutory Limits on the Authority of Federal Courts, 84 Colum. L. R. 1433, 1456 (1984) ("The range of situations in which the lower courts have applied supervisory power illustrates the strength and flexibility of the doctrine."); A. Coney Barrett, "The Supervisory Power of the Supreme Court," 106 Colum. L. Rev. 324, 326 (2006) (federal courts possess inherent authority, implicit in Article III, even in the absence of explicit statutory authority).

The supervisory power has been employed in connection with federal grand jury proceedings. In cases known as *Schofield I* and *Schofield II*, the Third Circuit exercised its supervisory authority to require the Government to make a preliminary showing to obtain enforcement of grand jury subpoenas. *In re Grand Jury Proceedings*, 486 F.2d 85, 93 (3d Cir. 1973) (Schofield I); *In re Grand Jury Proceedings*, 507 F2d 963 (3d Cir.), *cert. denied*, 421 U.S. 1055 (1975) (Schofield II). The Second and Ninth Circuits have approved the use of supervisory power to dismiss indictments as a sanction for government misconduct in connection with grand jury proceedings. *United States v. Hogan*, 712 F.2d 757, 761-62 (2d Cir. 1983); *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979). Courts have approved the use of supervisory authority to dismiss an indictment even without a showing of actual prejudice. *United States v.*

*Serubo*, 604 F.2d 807, 817-18 (3d Cir. 1979) (dismissal of indictment may be proper even where no actual prejudice has been shown); *United States v. Jacobs*, 547 F.2d 772 (2d Cir.), *cert. denied*, 436 U.S. 431(1978) (same); *United States v. Estepa*, 471 F.2d 1132 (2d Cir. 1972) (same).  We submit justice requires nothing less in this matter.

Conclusion

    For all of the foregoing reasons, and the points and authorities set forth in the defense's initial moving papers, the motion to dismiss should be granted.

Dated:  September 3, 2021

                                              Respectfully submitted,

                                              /s/ Walter P. Loughlin
                                              Walter P. Loughlin, Esq. (D.C. Bar No. NY 0433)
                                              340 West 57th Street
                                              Suite 5D
                                              New York, New York 10019
                                              Tel. (203) 216-3445

                                              Ronald S. Goldberg, Esq.
                                              Goldberg Segalla LLP
                                              50 Main Street
                                              Suite 425
                                              White Plains, New York 10606
                                              Tel. (914) 798-5419

                                              Attorneys for Defendant Keith Berman