UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff,

                                           1:20-cr-00278  TNM

      -v-

KEITH BERMAN,

                Defendant.

-------------------------------------------------x

DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION
TO THE MOTION TO DISMISS COUNT TWO

The defendant Keith Berman, by and through his undersigned counsel, respectfully submits this reply to the Government's opposition to Mr. Berman's motion to dismiss Count Two of the Indictment which alleges wire fraud in violation of 18 U.S.C. Section 1343.

Count Two alleges a "scheme or artifice to defraud, and to obtain money or property" through the deceptive use of interstate wires. However, neither the Indictment nor the Government's opposition identifies what "money or property" was defrauded, who the victims of the alleged scheme to defraud are, and how Mr. Berman allegedly diverted fraudulently obtained proceeds to himself.

Without clarity on this critical point, the defense has not been provided with adequate notice. As the Supreme Court has long held, allegations based on statutory language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of

the specific offense…with which he is charged." *Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (quoting from *United States v. Hess*, 124 U.S. 483, 487 (1888)); *United States v. Yefsky*, 994 F.2d 885, 993 (1st Cir. 1993) (such clarity is required "where guilt depends so crucially upon …a specific identification of facts."). As even the Justice Department's own Criminal Resource Manual provides: "a mail or wire indictment should contain a reasonably detailed description of the particular scheme the defendant is charged with devising to ensure that the defendant has sufficient notice of the offense." DOJ CRM 971.

From the outset, the Government has taken the position that the victims of the alleged fraud were DECN shareholders—presumably stemming from the fact that this was at first solely a securities fraud case before the parallel wire fraud count, based on the securities fraud allegations, was added to the superseding Indictment. Page 5 of the Indictment is titled: "The Scheme to Defraud Investors." In its April 4, 2021 expert witness disclosure, the Government advised that its witness "may testify about trading by specific shareholders (including victims)." The Government has subsequently advised it intends to call shareholders as trial witnesses. Paragraph 65 of the Indictment alleges that DECN investors "lost millions of dollars by, among other things, purchasing DECN common stock at artificially inflated prices and selling their shares at a loss," and Par. 13 alleges in conclusory terms that Mr. Berman "divert[ed] the proceeds of the scheme for his personal use and benefit."

Despite the allegations about investor losses and the diversion of the proceeds of the alleged fraud, the Government disclaims that these losses are the object of the wire fraud. According to the Government, Mr. Berman "is not alleged to have directly diverted to himself these victim losses—that is, the delta between the artificially inflated DECN stock price at which

they purchased and the low price at which they sold." But that disclaimer is followed by a sentence notable for both its vagueness and apparent contradiction of the preceding sentence: "Rather, he is alleged to have diverted to himself the proceeds of DECN securities purchases at prices artificially inflated by his misrepresentations." (Govt. Opp. 3)

The meaning of these juxtaposed sentences is so unclear that it calls to mind Justice Stevens' remark in a different context: "This nuance eludes me." *Phillip Morris v. Williams*, 549 U.S. 346, 360 (2007) (Stevens, J., dissenting). But that may be giving the Government undue credit for subtlety. How can the two sentences be parsed—or reconciled? What is the distinction between Mr. Berman having not "directly diverted to himself victim losses," but having "diverted to himself the proceeds of DECN securities purchases"? The Government returns to this subject toward the end of its opposition but offers no greater coherence: "As noted above, the superseding indictment explicitly alleges that the purpose of defendant's scheme was to obtain money or property in the form of value gained through investors' purchases of artificially inflated DECN securities." (Govt. Opp. 4)  This offers only further confusion.

Adding to the uncertainty, the Government refers to an accusation in the Indictment involving another purpose of the alleged fraud—and even contends that it need not prove any victim was defrauded out of money or property—that for purposes of this wire fraud prosecution, it "need not allege and prove that the defendant obtained a victim's loss [or] prove any loss at all." (Govt. Opp. 3)

Taking these two issues in turn, the Government points to paragraph 13 of the Indictment which alleges that the purpose of Mr. Berman's alleged scheme was "to enrich himself through access to the additional corporate funds and compensation that resulted. That is wire fraud." This

emphatic declaration might be more convincing if it were not supported by an "e.g." citation to *United States v. Clark*, 717 F.3d 790 (10th Cir. 2013), a prosecution involving a classic pump and dump scheme. Despite the Government's repeated refrain of DECN's stock being "artificially inflated," the Indictment alleges no dump; nor could it since there is no allegation that Mr. Berman sold a single share of DECN stock during the period of the alleged fraud.

Nor does the Indictment allege that any corporate funder or other source of financial support for DECN's business operations was victimized by the alleged fraud. With respect to the issue of compensation, the Government will recall that it argued, in opposition to the defense bail motion that Mr. Berman could manage DECN more effectively if his travel restrictions were modified, that this was unnecessary because Mr. Berman occupied an "unpaid position" at DECN—having advised Pretrial Services that he was not taking a salary from the company. This occurred after the period when, the Indictment alleges, Mr. Berman was enriching himself through the alleged scheme to defraud.

The Government also points to Mr. Berman's mention, in an email that refers to the Bio, the long-time manufacturer of DECN's line of products, to the effect that "the new story" of the coronavirus and impedance will allow him to "raise millions." (Par. 11). As even a cursory review of DECN's Annual Report for year-end 2019, filed March 2020—the month the alleged fraud purportedly commenced—shows the company's acknowledged need for substantial financing for business operations, including loans and lines of credit. The same filing also refers to Mr. Berman arranging through friends, family, and other sources to lend $450,000 to DECN. Properly understood, the need for financing for DECN is the context of Mr. Berman's reference to "raising millions."

On the issue of whether the Government need not prove the existence of a victim whose money or property was defrauded, the best that can be said of this position is that it is opposed by a very substantial body of case law. In addition to the authorities cited in the opening motion—all of which the Government ignores save for its perfunctory effort to distinguish *Kelly v. United States*, 140 S.Ct. 1565 (2020)—the cases, including from this Circuit, are legion that hold it is essential to wire fraud that the defendant aim to defraud identifiable victims of their money or property. *See, e.g.*, *United States v. Lemire*, 720 F.2d 1327, 1335-36 (D.Cir. 1983) ("[T]here is judicial consensus about certain requisite elements of a scheme to defraud…[T]he scheme to defraud must threaten some cognizable harm to its target …"); *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020) ("[W]e…hold that wire fraud requires the intent to…deprive the victim of money or property by deception."); 2 Sand, et. al., *Modern Federal Jury Instructions* 44-5 (2019) ("'Intent to defraud' means to act knowingly and with the specific intent to deceive, for the purpose of causing some financial or property loss to another.")

Finally, on *Kelly*, the Government focuses on the Supreme Court's rejection of one of the Government's vain efforts to salvage the conviction, and suggests the decision should be confined to its unique facts. But the Court did not write a narrow opinion. Instead, it discussed the foundational requirement that wire fraud is a property crime while holding that "a defendant violates Section 1343 only if an object of [his] dishonesty was the [victim's] money or property [and] …the Government must prove property fraud." 140 S. Ct. at 1568, 1571.

**Conclusion**

The motion to dismiss Count Two for failure to allege a wire fraud scheme that defrauded victims of their money or property has led to a Government opposition that (1) disavows one

theory of wire fraud liability based on transactions in DECN shares and the diversion of fraud proceeds, and (2) spins out a description of one or more incomprehensible wire fraud theories which are also based on DECN stock purchases and the diversion of fraud proceeds. Since the Government has repeatedly failed to identify the victims of the alleged fraud whose money or property was the object of the wire fraud, or how Mr. Berman received any proceeds from publicly traded stock transactions—whether, described as victim losses, securities purchases, or value gained from investor purchases— Count Two must be dismissed.

Dated: September 14, 2021

                                            Respectfully submitted,

                                            /s/ Walter P. Loughlin
                                            Walter P. Loughlin, Esq. (D.C. Bar No. NY 0433)
                                            40 West 57th Street
                                            Suite 5D
                                            New York, New York 10019
                                            Tel. (203) 216-3445

                                            Ronald S. Goldberg, Esq.
                                            Goldberg Segalla LLP
                                            50 Main Street
                                            Suite 425
                                            White Plains, New York 10606
                                            Tel. (914) 798-5419

                                            Attorneys for Defendant Keith Berman