UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 1:20-cr-00278-TNM |
| v. : | |
| : | |
| KEITH BERMAN, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S SECOND MOTION IN LIMINE**

The United States of America, through its undersigned counsel, respectfully submits its response in opposition to defendant Keith Berman's second motion in limine (ECF 43 ("Def.'s Mot.")).

Daniel Kim, the CEO of a Korean company called The Bio, is expected to be a witness in the government's case-in-chief. Mr. Kim's testimony is likely to inculpate the defendant. According to the Superseding Indictment, beginning in or around March 2020, Mr. Kim repeatedly told the defendant – in a series of emails – that The Bio had not made progress on developing the defendant's idea for a COVID-19 fingerstick blood test, which the defendant had named GenViro! (ECF 19 ¶¶ 15-24.) Mr. Kim's emails directly contradict the defendant's contemporaneous public statements, in which he falsely told investors that The Bio had already finalized and validated the COVID-19 blood test. (*Id.*)

The defendant knows this evidence of his guilt is overwhelming: in an email the defendant sent to an investor ("Investor 1") in February 2021 (approximately two months after he was indicted), the defendant admitted that a March 2020 email from Mr. Kim is "the biggest nail in [his] current coffin." (Feb. 8, 2021 email chain between Investor 1 and the defendant, attached as

1

Exhibit 1 (the "February 2021 Emails") (*filed under seal*).)  Investor 1 responded that the defendant should tell The Bio that he could draft a new letter from them in broken English that says "we so sorry, we wrong[], Genviro work[] sank you." (*Id.*)  The defendant replied, "Ron Herzog and I already did about 3 weeks ago." (*Id.*)

    Around this same time, the defendant exchanged a series of text messages with Investor 1 about Investor 1's cooperation with federal law enforcement in connection with its investigation of the defendant.  In his texts to Investor 1, the defendant questioned the true motives behind the government's investigation of the defendant, criticized the questions the law enforcement agent had asked of Investor 1, disparaged the law enforcement agent, and suggested that Investor 1 stop cooperating with her and retain an attorney.  (February 2021 text messages between the defendant and Investor 1 (the "February 2021 Texts") (attached hereto as Exhibit 2) (*filed under seal*), at 2, 10 ("it is true that the sec ruined our relationship with the fda just like the doj ruined our relationship with the clia lab and they are trying to ruin our relationship with you"); 7 ("trying to make anyone who helps the company quit and become government witnesses"); 5 ("Isn't it ironic that the postal inspector could care less about that"); 5 ("It is also ironic that the question they asked you and [Investor 2] are not directly related to me, but to the company and product which are not part of the indictment"); 1 ("The general consensus is to tell your nail [sic] lady that you have given her two interviews and you are uncomfortable and need to consult with an attorney[.] Thank you and good bye").)[1]

---

[1] When the defendant communicated with Investor 1 by sending the February 2021 Emails and February 2021 Texts, the defendant violated his conditions of pretrial release prohibiting him from: (i) all contact, directly or indirectly, with any person who is a known witness or victim in the case; and (ii) all contact, directly or indirectly, with Decision Diagnostics Corp.'s investors on an individualized basis (ECF 23), and the Court expressed concern (*see* Apr. 27, 2021 Hr'g Tr. (attached hereto as Exhibit 7) at 14:5-14:11; 16:4-16:9).

2

At trial, the government intends to admit the February 2021 Emails and February 2021 Texts.  The evidence is intrinsic to the crimes alleged in the Superseding Indictment and the government therefore intends to offer it as evidence of the offenses and scheme charged.  In the alternative, the evidence is admissible as non-propensity other-acts evidence under Federal Rule of Evidence 404(b), specifically to prove the defendant's intent, knowledge, absence of mistake, and consciousness of guilt.

On October 7, 2021, the government provided notice to counsel for the defendant; while the Federal Rules of Evidence do not require notice for the admission of intrinsic evidence, the government sent this notice out of an abundance of caution, since these communications postdate the time period of the defendant's charged crimes.  (*See* Def.'s Mot., Ex. 1.)  On November 5, 2021, the defendant moved to exclude the evidence identified by the government, on the ground that its admission would run afoul of Federal Rules of Evidence 404(b) and 403.  (*See* Def.'s Mot. at 2 (noting the "risk[ of] juror confusion and undue delay by the introduction of evidence on collateral issues that could spark mini-trials on these extraneous issues and that will require repetitious limiting instructions").)

The defendant's arguments are meritless.  He has not explained how this evidence is not intrinsic, or in the alternative, inadmissible under Rule 404(b).  Further, he devotes much of his motion to improperly litigating, on the papers, factual matters reserved for the jury.  As such, his arguments go to the weight, not the admissibility, of the evidence.  Accordingly, the Court should deny the defendant's motion.

I.      **The Evidence Is Relevant.**

The defendant argues that his admission that he and his attorney attempted to persuade Mr. Kim to retract certain emails they believed to be "the biggest nail in [the defendant's] current

coffin" is not relevant.  (Def.'s Mot. at 4-5.)  He asserts that no evidence that he actually sought such a retraction exists.  (*Id.*)  And he further claims that in March 2020, he and The Bio were actually on the "same page."  (*Id.* at 5.)  The defendant's claims are not true, but even if they were, the argument that the government is misinterpreting these communications is one about weight, and not admissibility.  The defendant is free to offer context on cross-examination or at another juncture in the case, but the evidence itself should be admitted.

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Rule 402 provides that any relevant evidence is admissible unless otherwise provided by the United States Constitution, federal statute, the Federal Rules of Evidence or other rules of the Supreme Court.  Fed. R. Evid. 402.

This case is about lies the defendant told to investors in March 2020.  The defendant told his shareholders that his company, Decision Diagnostics Corp., had developed a COVID-19 blood test.  The key factual question the jury will be asked to answer at trial is therefore whether the defendant actually believed there was such a COVID-19 blood test at that time.  The truth is the defendant knew there was not a COVID-19 blood test.  Emails the defendant exchanged with Mr. Kim in March 2020 prove this fact.  The defendant's later email in which he states that these March 2020 emails with Mr. Kim are "the biggest nail in [the defendant's] [] coffin" are thus admissible as evidence of consciousness of guilt and intent, because they show that the defendant was aware that the Kim emails existed and inculpated him.

In March 2020, Mr. Kim repeatedly told the defendant that The Bio had not made progress on developing the defendant's idea for a COVID-19 blood test, because The Bio did not understand how the test the defendant proposed could detect COVID-19 in blood using a fingerstick test:

- "The Bio only can see possibility by antigen-antibody applications but not

fingerstick." (DOJ-BERMAN-R_0000054600-06 (Mar. 19, 2020 email from Mr. Kim to the defendant) (attached as Exhibit 3.);

- "The purpose of the above device is to detect the virus present in the sample. It is not possible to distinguish the type of virus detected." (DOJ-BERMAN-R_0000011281-DOJ-BERMAN-R_0000011282 (Mar. 22, 2020 PowerPoint attached to email from Mr. Kim to the defendant) ) (attached as Exhibit 4).);

- "Like the flu, COVID-19 also detects viruses through the respiratory secretions of infected patients. Since our test detects a virus, respiratory secretions should be used as samples." (*Id.*)

- "We are trying to measure the resistance component of virus with a size of 100 to 200nm through impedance. If there is no foreign substance in the solution containing virus like buffer, it may show meaningful results as in papers. However, when testing in the field, it is very likely that foreign substances will be included because the virus must be detected in respiratory secretions. Even a small amount of material will cause very loud noise because the virus itself is so small. Therefore, in order to use the crude sample, an effective pretreatment process of the sample is essential, and it should be noted that excessive dilution of the virus due to the pretreatment process causes a decrease in detection sensitivity." (*Id.*)

- "The final conclusion of this paper … is as follows. 'One of the large remaining issues is to evaluate the detection and identification ability of some specific viruses from the heterogeneous mixture of crude sample. That is the universal challenge for any types of biosensing methods, and also the future work to put this method into practical use.' Our detection method will meet the same problem. Since Thebio [sic] has never studied disease diagnosis methods due to viruses, solutions to these problems are not prepared. Also, this is not a problem that can be solved within a week or two." (*Id.*)

- "The purpose of this report is not to draw a foot. The purpose is to review 'Is the right direction to go?', 'Is the right time to go?' And 'Are we ready to go?' If the goals and targets are not clear, the process will be wrong." (*Id.*)

The defendant's contemporaneous responses to Mr. Kim's March 2020 emails also directly contradict the statements he now makes in his brief claiming that he and The Bio were on the "same page." (*Compare* Exhibits 3 and 4 *with* Def.'s Mot. at 4-5.) To the contrary, the defendant repeatedly threatened to fire The Bio unless Mr. Kim was able to get The Bio on the "same page" (which it clearly was not):

5

> The Bio: We need to have clear understanding and common consultation of GenViro's detection targets and samples. The development details and schedule can then be discussed.
>
> Defendant: We have made this abundantly clear. But you keep making the same comments. I have a $1 billion product and you appear not to want a part of it. There are two first items of importance. Get FDA pre-EUA approval. First get The Bio on the same page. I know how to handle the FDA. I am clueless how to handle The Bio.

(Exhibit 4 at pdf p. 8.)[2]

According to additional email evidence from around this time, Mr. Kim continued to reiterate—to the defendant—his disbelief that the test the defendant proposed could detect COVID-19 in blood using a fingerstick test: "GenViro's detection of COVID-19 virus in capillaries is wrong, and I would like to say that it should be changed to a sample related to the respiratory system." (DOJ-BERMAN-R_0000006037-DOJ-BERMAN-R_0000006047 (Apr. 2, 2020 email from Mr. Kim to the defendant) (attached as Exhibit 5).) The fact that The Bio was not on the "same page" prompted another person involved in the project – Dr. Matthew Musho –

---

[2] The defendant claims that The Bio told him "that a test to detect the virus in blood or saliva was 'theoretically possible.'" (Def.'s Mot. at 5.) The government has moved in limine to exclude any evidence or argument regarding whether the defendant's idea for a Covid-19 fingerstick blood test was *in fact* theoretically possible, as the issue in this case is whether the defendant falsely represented that the methodology for the test was finalized, that the test was in development, and that FDA approval was imminent, regardless of any supposed theoretical possibilities. (ECF 30.) To the extent the defendant is arguing that The Bio's statement is relevant to a factual issue in the case regardless of *actual* theoretical possibility, he is again improperly litigating on the papers factual matters reserved for the jury. In any event, the defendant's claim is false. The Bio specifically stated that it did not know whether it was possible to use impedance to detect COVID-19 in blood and that the question required further study: "If you ask about theoretically possible the [] virus can be tested through impedance the answer is YES *when the test using buffer*. But when the test specimen is blood or saliva, *it is not sure at this moment*. The specimen of saliva blood contains many resistant material and need to further study how can bring up impedance variation OR might be negative result come. There are many theses about it that test virus by impedance." (DOJ-BERMAN-R_0000052333 (Feb. 28, 2020 email from Mr. Kim to the defendant (emphasis added)) (attached hereto as Exhibit 6).)

to suggest the effort may be "futile":

> It is interesting that they are now backing away from this project, they were the ones that thought this could work.  These guys are obviously not on board and I have no idea if they are right or wrong.  They very well could be correct about the viral load in blood.  I have not seen any data to support that COVID or Influenza virus can be detected in blood.  There are other viruses that show up in blood, but I have no idea if COVID does.
>
> I am not sure what the right answer is here, but it seems to be a futile effort at this point.  I am willing to help if this is something can be successful, but if THE BIO is not on board I am not sure how we can make this happen.

(*Id.*)

The evidence the government intends to admit, showing that the defendant believed these emails to be "the biggest nail in [his] current coffin" and attempted to persuade Mr. Kim to retract them, is no doubt relevant.[3]

## II. The Evidence Is Admissible as Intrinsic to the Charged Offenses or as Non-Propensity Other-Acts Evidence.

The government provided notice to the defendant of its intent to introduce the above evidence out of an abundance of caution.  The evidence is intrinsic to the crimes charged and therefore does not fall under Federal Rule of Evidence 404(b) and its notice requirement.  *See United States v. Machado-Erazo*, 901 F.3d 326, 333-34 (D.C. Cir. 2018) ("[A] threshold question in determining the admissibility of evidence of other crimes and bad acts is whether the evidence, in actuality, relates to acts unconnected with those for which the defendant is charged, or instead is

---

[3] The defendant argues that the government has not pointed to evidence that the defendant actually sought a retraction from The Bio.  (*See* Def.'s Mot. at 4.)  This argument goes to weight, not admissibility:  assuming the defendant did not seek a retraction, his mere recognition that The Bio's statements about his idea for the COVID-19 blood test were a "nail in [his] . . . coffin" is, as discussed, probative of his knowledge and consciousness of guilt.  To the extent the defendant wishes to argue he did not actually seek a retraction from The Bio, he will have the opportunity to do so at trial.

7

intertwined with the commission of charged crimes. Acts 'extrinsic' to the crime charged are subject to Rule 404(b)'s limitations; acts 'intrinsic' to the crime are not.").

The defendant does not attempt to argue that his statement that Mr. Kim's March 2020 emails are "the biggest nail in [his] current coffin" or his effort to persuade Mr. Kim to retract them are not inextricably intertwined with the offenses charged in the Superseding Indictment. Indeed, this evidence points to his consciousness of guilt.

Nor does the defendant explain why, if the evidence is not intrinsic, it is not in the alternative probative of his intent, knowledge, absence of mistake, and consciousness of guilt and therefore admissible under Federal Rule of Evidence 404(b)(2). *See United States v. Lieu*, 963 F.3d 122, 127 (D.C. Cir. 2020); *United States v. Miller*, 895 F.2d 1431, 1435-36 (D.C. Cir. 1990) (the purposes listed in Rule 404(b)(2) for which other crimes, wrongs, or acts can be admitted are not exhaustive but merely illustrative); *United States v. Perholtz*, 842 F.2d 343, 358 (D.C. Cir. 1988) (consciousness of guilt is a permissible purpose under Rule 404(b)); *United States v. Gatto*, 995 F.2d 449, 454 (3d Cir. 1993) ("It is well-established that evidence of threats or intimidation is admissible under Rule 404(b) to show a defendant's consciousness of guilt."). At most, the defendant attempts to distinguish the cases relied upon by the government on their facts or the crimes involved. (Def.'s Mot. at 5-7.) To be sure, the nature of other-acts evidence will necessarily vary from case to case, but the law supports the general proposition that evidence of attempts to influence or tamper with witnesses—to the extent it is not intrinsic—can be probative of permissible purposes under Rule 404(b), including consciousness of guilt.

The defendant also asserts that the probative value of the evidence is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time. His argument lacks merit. The February 2021 Email is highly probative of the

8

key issues in this case; the evidence is also easy to introduce, easy to understand, and not lurid or sensational.  *See United States v. Straker*, 800 F.3d 570, 589 (D.C. Cir. 2015) ("The Rule's requirement that the danger of unfair prejudice *substantially* outweigh probative value calls on us, in close cases, to lean towards admitting evidence."); *id*. at 591 ("The danger of unfair prejudice was minimal because the other-crimes evidence added no emotional or other pejorative emphasis not already introduced by the evidence of the crime charged in this case.") (internal quotation marks omitted).  The evidence is clearly inculpatory—it indicates that the defendant knew Mr. Kim's testimony would show that he lied to investors, and it also indicates that he wanted to obstruct a federal proceeding by tampering with a witness.  But the defendant does not explain why the evidence would be *unfairly* prejudicial, which is what the law requires for exclusion.  The February 2021 Texts, evidencing the defendant's separate efforts to tamper with a second witness, Investor 1 – are admissible for all of the same reasons.

Lacking a persuasive legal argument against the evidence, the defendant makes a number of factual claims that either are irrelevant or go to the evidence's weight, not its admissibility.  For example, the defendant attempts to re-litigate the question of whether he actually violated his conditions of release by arguing that Investor 1 does not consider himself to be a victim.  As a matter of law, Investor 1 can be a victim even assuming he does not see himself that way.  *See United States v. Brown*, 820 F. App'x 191, 197 (4th Cir. 2020) ("A victim's perception of the scheme to defraud is irrelevant to whether the defendant intended to defraud the victim.").  And, in any event, whether Investor 1 is a "victim" or not has no bearing on the relevance or admissibility of the February 2021 Emails, which relate to the defendant's admission that he and his lawyer attempted to persuade, or planned to persuade, Mr. Kim to retract certain emails they believed to be "the biggest nail in [the defendant's] current coffin."  It also has no bearing on the relevance or

admissibility of the February 2021 Texts, which relate to the defendant's efforts to tamper with Investor 1 as a witness, and are relevant to show the defendant's consciousness of guilt.[4]

For the foregoing reasons, the Court should deny the defendant's motion.

---

[4] In his brief, the defendant admits he has continued to communicate about the case with multiple individuals who are investors and potential witnesses. (Def.'s Mot. at 3.) This is likely in violation of his conditions of release, which prohibit the defendant from having individualized conversations with investors or potential witnesses, especially about the case. (ECF 23.)

The defendant offers to produce these communications *in camera*, but claims the government should be prohibited from reviewing them because some discuss his defense. (*Id.*) The government already obtained a copy of at least some of these communications from Investor 1, who voluntarily produced them prior to the time the defendant filed the instant motion. These communications, which are concurrently being produced in discovery, are attached as Exhibit 8 (*filed under seal*). In any event, the defendant waived any privilege or confidentiality by discussing his defense with a non-attorney third party. *See In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997) ("voluntary disclosure of privileged material subject to the attorney-client privilege to unnecessary third parties in the attorney-client privilege context waives the privilege, not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter") (internal quotation marks omitted).

        Respectfully submitted,

        JOSEPH S. BEEMSTERBOER
        Acting Chief, Fraud Section
        Criminal Division

By:   /s/
        Christopher Fenton
        Trial Attorney
        Justin Weitz
        Acting Principal Assistant Chief
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005

        Vijay Shanker
        Deputy Chief
        Appellate Section, Criminal Division
        950 Pennsylvania Ave. NW
        Washington, DC 20530

CERTIFICATE OF SERVICE

    I certify that on November 15, 2021, I filed a true and correct copy of the foregoing with the Clerk of Court via ECF.

                                                    /s/ Vijay Shanker