## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

-----------------------------------------------------x

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                Case No.: 1:20-CR-000278 TNM

KEITH BERMAN,

        Defendant.

-----------------------------------------------------x

## DEFENDANT'S REPLY TO THE GOVERNMENT'S
## OPPOSITION TO THE MOTION TO SUPPRESS

The defendant Keith Berman, through undersigned counsel, respectfully submits this reply to the Government's opposition to the defense motion to suppress the tape recording and all other evidence derived from the FBI interview of Mr. Berman which occurred without his knowledge or consent as required by Section 632(a) of the California Penal Code. *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) ("California prohibits the recording of a [confidential communication] without consent from all parties.")

As a preliminary matter, the Government contends the suppression motion is untimely, under Rule 12(c)(3), because it was not filed by July 27, 2021, and because an audio tape had been provided to defense counsel months ago. However, this issue only came to the fore on November 16, 2021, when Government counsel emailed a transcript of the tape-recorded interview to defense counsel. The email indicated that the Government intended to offer in evidence at trial excerpts from the tape recording and to ask that the transcript be given to the jury to aid their understanding of the audio tape.

1

The next day, on November 17, we inquired of the Government whether Mr. Berman had consented to the taping of the interview. Government counsel advised us that the taping had been done surreptitiously. Two days later, on November 19, 2021, defense counsel raised this issue in open court in connection with the argument on the pending motions. The Court then set an expedited briefing schedule on this motion. Contrary to the Government's contention, this is consistent with Rule 12, which provides: "At any time before trial, the court may extend or reset the deadlines for pretrial motions." Rule 12(c)(1).

A second preliminary matter is the need to correct the Government's assertion that the FBI interview proceeded on the basis of Mr. Berman's "express recognition" that he would be questioned without an attorney present. (Opp. 1). This is wrong. Here is what "expressly" occurred. Within one minute of the agents introducing themselves to Mr. Berman, he stated: "I need to call my lawyer, if you don't mind." A few moments later, he repeated: "If you don't mind, I'm going to call my counsel," adding moments later: "The attorney will probably have to ask you some questions." (Transcript at pp. 3, 4, 6).

Mr. Berman was unable to reach the lawyer. What this shows is Mr. Berman's clear preference to be represented by counsel for the interview, the difficulty he had in arranging for representation—after the FBI surprise arrival with the evident aim of catching him in an unprepared and uncounseled position—and Mr. Berman's willingness to allow the questioning to continue.

Turning to the merits, the Government contends that 18 U.S.C. Section 2511(2)(c) authorizes federal agents to secretly record conversations in which they participate. After citing to two decisions of this circuit, the Government then announces, after one paragraph of argument: "That is the end of the matter." (Opp. 3) This appears to be no more than a rhetorical flourish since

2

the opposition contains 8 more pages of argument after this premature self-congratulatory pronouncement.

There are a number of flaws in the Government's position, including the following. First, Section 2511(2)(c) does not authorize anything. It provides only that "it shall not be unlawful under this chapter" for a person acting under color of law to intercept a communication if that person or another participant in the communication consents to the interception. As Justice Kagan has famously said: "We are all textualists now."  The Antonin Scalia Lecture Series: Justice Elena Kagan on the Reading of Statutes; Harvard Law School (Nov. 25, 2015). Because the text is the primary source of interpretation, there can be no doubt that the consent exception—as the D.C. Circuit in *Smith v. DOJ*, infra, describes it—does not affirmatively authorize any conduct. Indeed, because this provision only states what conduct "shall not be unlawful," the most that can be said, essentially by negative implication, is that one-party consent to the interception of a communication is permissible under Title III because it does not, by its terms, violate Title III.

More affirmative language can be found in the two cases cited by the Government, *Smith v. DOJ*, 251 F.3d 1047 (D.C.Cir. 2001), and *Bamdad v. DEA*, 617 F. App'x 7 (D.C.Cir. 2015). However, on closer examination, these decisions provide meager support for the Government's position. The Government first relies on *Smith v. DO*J, a case involving a Bureau of Prisons recording of telephone calls between an inmate and his lawyer. The inmate, Smith, claimed his counsel had acknowledged during these calls that he had provided Smith with constitutionally deficient representation. Smith then made a FOIA request to the BOP for a copy of the tape recordings. The request was denied.

Smith then brought a pro se action in the district court to obtain the tapes. The Government opposed the request on the ground that the non-disclosure provision of Title III prohibited their

release. Id. at 1048. After summary judgment was granted in favor of the Government in the district court, Smith appealed. The Court of Appeals observed: "Although an unmonitored telephone was available for [calls to his attorney] Smith used a telephone line on which he knew all calls were monitored and recorded pursuant to a policy of the Bureau of Prisons." Id.

Two points immediately distinguish this case from the present motion. First, unlike the secret taping of Mr Berman, Smith chose to have his calls recorded—presumably to buttress a claim that his counsel had rendered ineffective assistance. Second, the decision involves the non-disclosure provision of 18 U.S.C. Section 2510(a)(5)(ii)—which has nothing to do with this motion.

The Government lost the case. The Court held that the provision the Government cited to prohibit disclosure, Section 2510(5)(a)(ii), "excludes [the BOP-taped calls] entirely from the coverage of the statute." Id. at 1050. Because Title III did not prohibit disclosure, the Court granted Smith's request for the tapes. Id. at 1051. Further, the Court's references to Section 2511(2)(c) are mere dicta.

For instance, there are references to Section 2511(2)(c) in the Court's description of the Government's position: "The Government here contends," arguing the BOP qualified for the one-party consent exception. This is an example of an overly capacious view of the consent exception since the prison authorities were not parties to Smith's conversations with counsel; because their role was solely to monitor and record the calls they were not, under Section 2511(2)(c), a party to the communication who could consent to its interception.

Describing the Government's position again, the Court stated: "The Government said as much before the district court," referring to the argument that the BOP taping was "legal." Id. at 1049-50. Finally, the Court appeared to state a broad version of Section 2511(2(c) that features

4

prominently in the Government's opposition. However, understood in context, the Court referred to the consent exception in order to point out how wrong the Government's position was on the interplay of the non-disclosure provision and consent exception, stating: "The Government's reading [of Section 2511(2)(c)] would render Section 2510(5)(a)(ii) superfluous." Id. at 1051. Such references, amounting to dicta, do not advance the Government's opposition to the motion to suppress.

The Government also relies on *Bamdad v. DEA*, supra, an unpublished judgment to which D.C. Cir. Rule 36(e)(2) applies. The Rule states, in pertinent part, that: "A panel decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." Due to the lack of it being precedent, the value of *Bamdad* as authority for deciding subsequent matters, including this motion, is diminished. Because the Rules also permit an unpublished disposition to be cited—and it is one of only two authorities on which the Government relies in this connection—we respond as if this was a fully published decision of the Court—rather than an unpublished disposition.

After being convicted of offenses related to the illegal sales of oxycodone, Dr. Bambad sued the DEA and others at the agency. He sought a declaratory judgment and damages on the ground that DEA agents, while posing as his patients, made video and audio recordings of their conversations with him. The Complaint alleged the DEA had violated Title III and his constitutional rights.

The District Court dismissed the Complaint on the ground that Bambad should have raised these issues in a habeas petition. The Court of Appeals decided the case on other grounds, including that under the Bivens doctrine Bamdad could not sue the DEA, and that the individual defendants had qualified immunity. With respect to the Title III issue, the Court dealt with this in a single

sentence: "To begin with, the wiretapping statute expressly allows officers acting under color of law to secretly record their own conversations," citing Section 2511(2)(c). We have already addressed the issue that such characterizations of the consent exception are not supported by the statutory language unless accompanied by that portion of Section 2511(2)(c) which specifies that it simply states that one-party interceptions do not violate Title III

Rather than repeat that argument, we observe that, after confidently asserting in open court that the suppression motion was foreclosed by a legion of cases interpreting Section 2511(2)(c), the Government's research has apparently disclosed only two such cases—one of which refers to the consent exception only in dicta along the way to a holding that the recordings in question were not even subject to Title III. The second case, an unpublished disposition, refers to Section 2511(2)(c) in a lone sentence.

On the issue of Supremacy and its derivative doctrine of preemption, the Government's position is that the California Penal Code provision must yield to Title III, despite the substantial legislative history set forth in the initial defense submission demonstrating that Congress intended, and even invited, states to enact statutes more protective of privacy and more restrictive of the interception of communications than Title III.

The authorities on which the Government relies are curious indeed. It first cites to *Gade v. National Solid Wastes Mgmt. Assoc.*, 505 U.S. 88 (1992), which involved a claim that an Illinois state law conflicted with federal law in that both sought to regulate the training and licensing of those who handle of hazardous substances. In a plurality opinion that could not command a majority—with four dissents and one concurrence—the plurality Supreme Court opinion observed that the federal law permitted state preemption over federal law: "Congress not only reserved certain areas for state regulation, but also in [Section 18 of 29 U.S.C. 651 et seq.] it gave the states

the option of preempting federal regulation entirely." Id. at 97. This is hardly a ringing endorsement of the supremacy of federal law.

The Government's second citation fares no better. In *Pharm. Care Mgmt. Ass'n v. Wehbi*, 2021 WL 5355916 (8th Cir. Nov. 17, 2021), a trade association for pharmacy benefit managers, ("PBM's") who manage prescription drug benefits on behalf of health insurance plans, challenged North Dakota's laws regulating their business on the ground that the state laws were preempted by ERISA and Medicare Part D.

However, the Eighth Circuit was not persuaded, observing that: "The practice of pharmacy is an area traditionally left to state regulation," citing Medicare Prescription Benefits, 70 Fed. Reg, 4194, 4278 (Jan. 28, 2005) (explaining that the Department of Health and Human Services had a general position of deferring to states for the regulation of pharmacy). The Eighth Circuit also found that Medicare laws and regulations "indicate an intent to leave to the states the specifics of what plans and PBMs may or may demand of pharmacies." 2021 WL 5355916 at 16. The Court concluded, after a comprehensive analysis, that no provision of the North Dakota state laws was preempted by ERISA, 8 provisions were not preempted by Medicare Part D, and 6 were preempted by Medicare Part D.

Combining these cases with the recognition in the Senate Report that Congress established in Title III what was constitutionally required but states were free to go further than the constitutional minimum, California Penal Code Section 632 is not preempted by federal law.

Next the Government argues that federal, not state, law governs in federal investigations and any proceedings that follows. To support this proposition, the Government first relies on *United States v. Sanderson*, 289 F. App'x 619 (9th Cir. 2008). In citing to this case, not only is this the second time Government has relied on a case having no precedential value, the Government

has also disregarded the Ninth Circuit Rule applicable to this case. *Sanderson*, designated as a Memorandum and only a few paragraphs long, states: "This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. Rule 36-3." That Rule states: "Unpublished dispositions and orders of this Court are not precedent except where relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." The Rule further provides that such dispositions may be cited "to the courts of this circuit." Clearly, none of these conditions apply here. But the Government apparently could not resist citing to a case that supports its position—no matter what limits the Ninth Circuit applies with respect to its own cases.

 Because of the summary nature of the disposition, it precludes analysis. There are no background facts, the Court stating: "The facts are well known to the parties; we need not repeat them here." The treatment of the the issue of state and federal law consists of three sentences.

More illuminating is the Supreme Court case cited by the Ninth Circuit, *Virginia v. Moore*, 553 U.S. 164 (2008). In this case, a driver in Virginia was arrested for the misdemeanor of driving with a suspended license. Having been arrested, he was searched and found to be in possession of cocaine. As Justice Scalia stated for the Court: "Under state law, the officers should have issued Moore a summons rather than arresting him." Id.

Moore was prosecuted for possession of cocaine. He moved to suppress the drugs. The motion was denied. His subsequent conviction was reversed by the Virginia Supreme Court. The Supreme Court then reversed, holding that an arrest on probable cause did not violate the Fourth Amendment even if it violated Virginia state law. However, Justice Scalia acknowledged the novelty of the claim, and that prior to this 2008 decision, the Court had only "signaled" in prior cases the decision it had just reached. *Id*. at 178.

That is because some of these prior cases went the other way. For instance, in *United States v. Di Re*, 332 U.S. 581, 589-90 (1948), federal and state officers working jointly on an investigation arrested the defendant for a federal crime. The Government argued—as it does here—that federal law governed the warrantless arrest. The Supreme Court, however, held that the legality of the arrest should be "judged according to state-law standards." Evidence was suppressed once the arrest was determined to be unlawful. Justice Jackson, writing for the Court and drawing on his customary eloquence, warned of "a too permeating police surveillance." *Id* at 595. Similarly, In *Michigan v. DeFillippo*, 443 U.S. (1976), the Court again addressed a warrantless arrest, stating: "[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Id*. at 36.

The Government's reliance on *United States v. Goodapple*, 958 F.2d 1402 (7th Cir. 1992), is a makeweight. The defendant raised a plethora of claims on appeal, including many which the Court addressed fully. One to which it gave more perfunctory treatment was a claim of a due process violation in that he was prosecuted in federal court where he was subject to more severe punishment and was unable to seek the protection of a state wiretapping statute. Since no claim of unlawful wiretapping was raised on appeal, the Court relegated its response to a footnote observing that since he was being prosecuted in federal court, Section 2511(2)(c) applied.

In sum, the Government's position on this point is feeble. It is supported by a summary disposition without precedential value, which it was not entitled to cite, and a three-sentence footnote.

The balance of the Government's opposition, even if supported by case law citations, is primarily policy-based. For instance, the Government contends that requiring federal agents to obtain consent to tape record someone such as Mr. Berman—8 months before the first

indictment—would result in absurdity and hamper federal law enforcement. But that is based on the false premise that consent would invariably be refused. However, In the analogous circumstance of consenting to a warrantless search, we are all familiar with the phenomenon of persons consenting to searches of their cars or residences—even when they know it is likely that drugs, stolen property, or illegal firearms may be found.

The Government also contends that Mr. Berman should be pleased because the tape recording is more reliable evidence than an FBI agent's memory of his interview or notes taken of what transpired. This is an argument only a prosecutor who has not been secretly tape recorded could make. Finally, the Government strains to find the Justice Department advice to consult state privacy laws in advance of an interception was aimed solely to state law enforcement personnel and was not intended for a federal audience at all. This is too implausible to accept.

The sole point of the Government's opposition that has merit is on the issue of remedy. Specifically, that the remedy of suppression or exclusion of evidence relates primarily to a claim of constitutional violation. Because this motion is based on a state statutory violation, our remedy of suppression is based on the Court's exercise of its supervisory power. In the interest of brevity, we incorporate by reference our briefing on supervisory power set forth in the motion papers submitted on the motion to dismiss the indictment due to the subpoena of defense counsel's phone records. (Dkt. 40)

**CONCLUSION**

For the foregoing reasons, the tape recording from the FBI interview, and all evidence related to that interviewer should be suppressed. In the event this motion is denied, and the Government introduces excerpts from the tape recorded interview, our alternative relief is to have

the full interview played before the jury pursuant to Rule 106 of the Federal Rules of Civil Procedure.

Dated: December 10, 2021

Respectfully submitted,

*/s/ Walter P. Loughlin*

Walter P. Loughlin, Esq. (D.C. Bar No.NY0433)
340 West 57th Street
Suite 5D
New York, NY 10019
Tel. (203) 216-3445

Ronald S. Herzog, Esq.
Goldberg Segalla LLP
50 Main Street
Suite 425
White Plains, NY 10606
Tel. (914) 798-5419

*Counsel for Defendant Keith Berman*