## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | **CRIMINAL NO. 1:20-cr-00278-TNM** |
| **v.** | **:** | |
| | **:** | |
| **KEITH BERMAN,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO MOTION *IN LIMINE* RELATING TO AN AUDIO RECORDING OF FBI INTERVIEW OF THE DEFENDANT

The United States of America, through its undersigned counsel, respectfully submits this reply to the defendant's response (ECF 72) to the government's motion in limine relating to an audio recording of a Federal Bureau of Investigation (FBI) interview of the defendant (ECF 66).

As the government demonstrated in its motion, the audio recording of the defendant is not hearsay under Federal Rule of Evidence 801(d)(2) if introduced by the government.   The audio recording and portions thereof are hearsay under Federal Rule of Evidence 801(c) if the defendant seeks to introduce them.   While Federal Rule of Evidence 106 allows a defendant to admit statements that might otherwise be hearsay under the concept of completeness, the rule does not require the admission of an entire recording or writing simply because portions of it were admitted. And if the defendant seeks to admit portions of the recording, he bears the burden to establish that those portions are necessary to correct a misimpression created by the portions admitted by the government.

In his response, the defendant makes no effort to show that the portions of the recording the government intends to introduce are misleading or taken out of context.   That alone counsels in favor of granting the government's motion in limine.   *See United States v. Lopez*, 4 F.4th 706, 715

1

(9th Cir. 2021) ("the rule of completeness codified in Rule 106 renders additional portions of a complete document or recording relevant when the opposing party distorts the meaning of the document or recording by introducing misleading excerpts into evidence"); *United States v. Edmond*, 52 F.3d 1080, 1111 (D.C. Cir. 1995) (no error in admission of redacted portions of a conversation where court was "satisfied that the redacted portion included sufficient contextual matter in addition to the few statements relating to appellant so as not to mislead the jury"); *see also United States v. Aungie*, 4 F.4th 638, 647 (8th Cir. 2021) ("the rule of completeness does not apply because Aungie fails to specify how the admitted text messages distorted or misled the jury without the addition of the missing texts"); *United States v. Altvater*, 954 F.3d 45, 50 (1st Cir. 2020) (burden is on defendant "to explain why it would be necessary to admit into evidence each and every statement contained in the redacted material to dispel some alleged distortion caused by the government's redactions"); *United States v. Haddad*, 10 F.3d 1252, 1259 (7th Cir. 1993) (defendant must demonstrate that the offered portions of the statement are necessary to: "1) Explain the admitted evidence, 2) Place the admitted portions in context, 3) Avoid misleading the trial of fact, and 4) Insure fair and impartial understanding of the evidence").

Nonetheless, the government does not object to all of the portions of the audio recording designated by the defendant in his response.   The defendant has proposed five designations.   The government responds as follows, using bold text and highlighting to indicate designations to which it objects:

1)   Defendant designation of transcript time stamps 4:00 through 5:37:

> **[00:04:00]**
> **Keith Berman: Hi, Kristie.**
> **[00:04:00]**
> **Interviewer 1: She's with me, Heather, FBI. So, uh, we just came by to chat today if you have a couple of minutes, and,**

[00:04:09]
Keith Berman: About?
[00:04:09]
Interviewer 1: About the COVID tests. And I just want to say up front that I know there's been some tension with the SEC and I don't want to talk about that. I don't want to talk about anything related to the SEC. We don't want to. I'm certainly, I'm trying to steer clear from that. I just,
[00:04:27]
Keith Berman: Are we under investigation?
[00:04:29]
Interviewer 1: There, so, let me, there is a grand jury investigation.
[00:04:33]
Keith Berman: There is what?
[00:04:34]
Interviewer 1: An investigation. But I, I'm here to figure out the truth and I know there's a bunch of haters out there, but that doesn't mean that I follow what the haters say. I, I'm super pumped about COVID products and I can't wait for life to get back to normal, so I want to figure out what's actually going on here. We don't have to, like I said, we don't have to talk about any of that because, plus, I know nothing about science.
[00:05:02]
Keith Berman: Okay. I need to call our lawyer if you don't mind.
[00:05:05]
Interviewer 1: Okay.
[00:05:05]
Keith Berman: Because these haters have caused us more harm.
[00:05:09]
Interviewer 1: Okay.
[00:05:09]
Keith Berman: Are you here because of haters like [inaudible]?
[00:05:13]
Interviewer 1: No, that's what I just said. I'm, I'm here to figure, when I get called, it's, like, alright, let me try and figure out what's going on. I don't know what's going on, but I want to hear all sides of the story, and actually figure out what's going on and I know there's a lot of good things out there, too, with, uh, with good people, good people well I don't know if they're good people but they say good things on the message boards.
[00:05:36]
Keith Berman: I don't pay attention to the message boards.
[00:05:37]
Interviewer 1: Okay. But, that's why I'm here. When I see, there's a lot of things going on, good and bad. And so, I'm like, I just need to,

The defendant fails to explain how the bolded/highlighted statements above are relevant, are not hearsay, and serve to correct any misimpressions.   Based on comments in the defendant's

motion to suppress the audio recording (ECF 50 at 4 (complaining that the FBI Special Agent sought "to put Mr. Berman at ease"); *id*. ("He was not able to reach his lawyer—which likely was part of the FBI's plan.")) and the contents of the above designation, it appears that the defendant intends to claim at trial that the government infringed on his right to counsel or engaged in an unlawful ruse.   Any such argument would be inappropriate and prejudicial to the government. The defendant did not move to suppress on those grounds and, in any event, this Court denied his motion to suppress.   Moreover, later in the interview, the defendant expressly consented to being interviewed in the absence of counsel.   *See* Transcript at 10:49 ("Anyway, ask me your questions.").

2)   Defendant designation of transcript time stamps 11:00 through 12:23:

[00:11:00]
Interviewer 1: Okay. Well, I guess I'm just to figure out, like, I don't know why there's people hating, but I, I do know that there was a shareholder letter written that was, I don't want to say nice, how do you describe it? Just very, explanatory of some other, what's going on.
[00:11:22]
Keith Berman: To my understanding, three shareholder letters were written.
[00:11:27]
Interviewer 1: Well, was there three total? Okay.
[00:11:28]
Keith Berman: But that, that's, they weren't, they were written by shareholders.
[00:11:34]
Interviewer 1: Okay, so,
[00:11:35]
Keith Berman: Not the company.
[00:11:36]
Interviewer 1: So, they obviously care and, and think positively.
[00:11:38]
Keith Berman: We have, we have 12,000 shareholders.
[00:11:42]
Interviewer 1: Oh, that's a lot.
[00:11:44]
Keith Berman: For a small company like ours, yeah.
[00:11:45]

4

Interviewer 1: That's a lot. Yeah. So, I mean, there's positive things being said about people who actually have shares and, um, the sha-, the shareholders' names weren't on that, though, were they?

[00:11:59]

Keith Berman: Yeah.

[00:12:00]

Interviewer 1: Oh, they were on that?

[00:12:00]

Keith Berman: Yeah.

[00:12:02]

Interviewer 1: Okay. Well, maybe I'll have to reach out to some shareholders or something to figure out.

[00:12:07]

Keith Berman: Yeah.

[00:12:07]

Interviewer 1: That were on the letter.

[00:12:08]

Keith Berman: Uh-huh. And, as far as I know, it wasn't always the same shareholders.

[00:12:13]

Interviewer 1: Okay.

[00:12:15]

Keith Berman: Also, as far as I know, each shareholder letter got more shareholders than the one before it.

[00:12:23]

Interviewer 1: Yeah, it was written nice. Very, um, uh, what am I trying to say? Very smart, well written, articulated letter, I thought. So, that was good. That's good for the company.

The government has no objection to the above designation (which subsumes a portion of the recording the government intends to introduce).

3)    Defendant designation of transcript time stamps 45:04 through 47:15:

[00:45:04]

Interviewer 1: I totally believe you, by the way. You're trying to come up with a product that can help humanity. I believe you, I get it. It's important. It's just all this other stuff that's in the ether that I'm trying to make sense of in my head. Uh, um, and why so many people would hate. Is it because, is it because, um, has it always been shareholder based? The stock prices changing?

[00:45:38]

Keith Berman: It's like I said to you, the anonymity of message boards creates horrible situations.

[00:45:47]

5

==Interviewer 1: Yeah.==
==[00:45:47]==
==Keith Berman: Okay? The woman next to us? She's being stalked.==
==[00:45:52]==
==Interviewer 1: Yeah.==
==[00:45:54]==
==Keith Berman: Yeah. We've been broken into and had things stolen. Things that have no value. It's, like, here, desktop computers. Right? A $1000.00 monitor sits on the desktop and stolen.==

[00:46:14]
Interviewer 1: Do people ever go on the message boards or something and shut them down under their own anonymous? Would that work, to do that? Like, you shut them down on your own anonymous thing?

[00:46:26]
Keith Berman: I don't know how you shut it down. I mean, First Amendment and all. The problem is, this has now gone too far.

[00:46:35]
Interviewer 1: So, you wouldn't do that? Just, get your own anonymous thing and,

[00:46:39]
Keith Berman: No, I don't post stuff, no. Again, I'm in the business of creating and selling, medical devices. What happens on the message boards, and by the way, that's a trick question.

[00:46:56]
Interviewer 1: What's a trick question?

[00:46:58]
Keith Berman: Because one of the things that the message boards people say is that I'm involved in the message boards.

[00:47:05]
Interviewer 1: Who? The message board people?

[00:47:08]
Keith Berman: Yeah, the people that are causing us the problem.

[00:47:11]
Interviewer 1: Oh. You're saying they're saying your involved with the message boards?

[00:47:13]
Keith Berman: Yes, yes.

[00:47:15]
Interviewer 1: Oh, I get it. I get it.

The defendant fails to explain how the bold/highlighted statements above are relevant, are not hearsay, and are necessary to correct any misimpressions.

4)   Defendant designation of transcript time stamps 50:11 through 50:13:

[00:50:11]
Keith Berman: Okay? And, the guy that signed the letter, a fellow by the name of Matt,

The government has no objection to the above designation.

5)   Defendant designation of transcript time stamps 54:57 through 59:10:

[00:54:57]
**Interviewer 1: Thank you, though. Um, to move it from the complaint box, you have to, like, do something. You always have to, like, do an interview followup, always. You can't just, like, say, no thanks. You have to take some steps and then it moves to a different box, or it just moves to the like, dead box or the something else box. You have to do some sort of followup. We get a lot of complaints. So, we do a lot of that.**
[00:55:25]
**Keith Berman: Where did this complaint originate?**
[00:55:28]
**Interviewer 1: Uh, I don't, I'm not, I'm not 100% sure, because I don't always know where the origination comes from. I'm just told go do.**
[00:55:40]
**Interviewer 2: It's kind of like how we, you know, like, due diligence, I guess. It's just we can't close something down without at least making an attempt,**
[00:55:47]
**Interviewer 1: Yeah.**
[00:55:47]
**Interviewer 2: to figure out.**
[00:55:48]
**Keith Berman: I totally understand that. The fact that you, when you people walked in here, 100% of your knowledge base is based on things that a cabal, criminals. These people stole documents. They hacked into our website and stole the documents. They're cyber criminals. The fact that cyber criminals created this story, and I don't know what they plan to get from it? What do they plan to get from this story? This isn't the type of thing the SEC would pay for? A tip about stock fraud. Because none of here trade stocks.**
[00:56:35]
**Interviewer 1: Yeah, so what would you care what happens to stocks?**
[00:56:39]
**Keith Berman: Yeah, why would, why would these people, day in and day out, write terrible things on the message boards, call SEC lawyers. I just don't, I don't understand how, how they could possibly be convincing when they've never met, spoken to, or corresponded with anybody here.**
[00:57:05]

7

Interviewer 1: Well, I, I've been doing this for a while and I've done cases where very big names, and nothing ever happens, it gets shut down.

[00:57:18]

Keith Berman: It, being the investigation gets shut down?

[00:57:19]

Interviewer 1: Yes, yes.

[00:57:21]

Keith Berman: Okay.

[00:57:23]

Interviewer 1: That's happened to me plenty of times over the years. But, the point is, that we have to do, we have to take steps to get to some sort of resolve.

[00:57:32]

Keith Berman: When, when did you get this?

[00:57:36]

Interviewer 1: Well, we, we were told to come talk to you, I don't know, we were just trying to figure out our schedules. Within the last week or two, to come talk to you this week. Like, okay, well, we have this on our schedule, so we were just coordinating it.

[00:57:51]

Keith Berman: So, so at the moment, there is no formal investigation?

[00:57:55]

Interviewer 1: Well, no, there always is a formal thing that, there's always a formal investigation as part of this. There is a formal investigation. But what I'm saying, there's a formal grand jury investigation in D.C., and we'll go talk to our bosses about what we found out, but that's how everything works.

[00:58:13]

Keith Berman: There's a for-, there's a grand jury investigation?

[00:58:14]

Interviewer 1: That's what they're all called.

[00:58:16]

Keith Berman: Oh. So, the grand jury is looking at us?

[00:58:22]

Interviewer 1: That's always, that's always what they're called, though, 100% of the time. That's very, that's normal. That's just what they're called. And that's, like I said, I don't know what will happen in the end, stuff gets shut-down all the time, but I'm just here to figure it out. So, I appreciate you, you, like, providing me some clarity today. It was very helpful and I'm glad that we talked and I'm trying to sort all of this out. I appreciate that. So, now, I've just got to write it all up which should be fun so, I don't want to take any more of your time today. I mean, I feel like there was a lot of information for me to process. So, you told me much more stuff that I won't remember.

[00:59:10]

Keith Berman: So, so, you call the grand jury investigation is from Washington, D.C.?

The government objects to the entirety of this defense designation (and accordingly has placed the entire text in bold/highlighting).   The defendant fails to explain how this almost-five-minute discussion about the government's investigation and the grand jury proceedings is relevant to any issues that will arise at trial.   He likewise cannot show that the statements above are not hearsay, or that they are necessary to correct any misimpressions created by the government's limited designations.

*     *     *

In sum, the government does not object to the defense introduction of the following portions of the audio recording of the FBI interview of the defendant:

Time stamps 5:13 to 5:37

Time stamps 11:00 to 12:23

Time stamps 46:14 to 47:15

Time stamps 50:11 to 50:13

Respectfully submitted,

JOSEPH S. BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division

By:     /s/_____
        Christopher Fenton
        Trial Attorney
        Justin Weitz
        Acting Principal Assistant Chief
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005

        Vijay Shanker
        Deputy Chief
        Appellate Section, Criminal Division
        United States Department of Justice
        950 Pennsylvania Ave. NW
        Washington, DC 20530

10

CERTIFICATE OF SERVICE

I certify that on January 3, 2022, I filed a true and correct copy of the foregoing with the Clerk of Court via ECF.

_____ /s/ Vijay Shanker _____