UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

─────────────────────────────x

UNITED STATES OF AMERICA,

        Plaintiff,

                                      Docket No. 1-20-cr-00278-TNM

  -v-

KEITH BERMAN,

        Defendant.

─────────────────────────────x

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S
MOTION IN LIMINE TO PRECLUDE DEFENSE EXHIBIT N**

Defendant Keith Berman, through undersigned counsel, respectfully submits this opposition to the Government's motion to preclude the admission of defense Exhibit N, which consists of a Decision Diagnostic ("DECN") glucose test meter and related test strips. This exhibit is plainly relevant and will aid the jury's understanding of a disputed trial issue.

Preliminarily, this particular motion should be viewed against the backdrop of the Government's persistent campaign to undermine Mr. Berman's defense. This began at the very earliest stage of the case. Barely one month after the initial Indictment was unsealed, the Government wrote to the Court that current defense counsel should not be allowed to continue to represent Mr. Berman because of purported conflicts of interest. This was resolved only after Mr. Berman retained independent counsel and conferred with that counsel about the Government's

theories of conflict. So advised, Mr. Berman then made it clear, in a direct colloquy with the Court, that he wished to continue being represented by current counsel.

Failing in its effort to oust defense counsel from the case, the very next month, on February 23, 2021, the Government subpoenaed one of Mr. Berman's defense counsel's telephone service provider to obtain the telephone, text, and data records for counsel's direct office landline and personal mobile phone for the nearly three-month period of December 1, 2020 through February 23, 2021. Apparently the Government could not decide whether it wanted to have defense counsel removed or investigated, so on the heels of the former it did the latter.

Next, the Government sought to preclude the defense from introducing evidence about either the "theoretical feasibility" of a blood test for COVID-19, or Mr. Berman's effort a few months later to investigate the feasibility of a saliva-based test. (Doc. 30) This motion was filed despite the allegation in the Indictment, at par. 16, that Mr. Berman emailed DECN'S long-time manufacturer in Korea, and one of the government's trial witnesses, on or about February 29, 2020 to ask whether it was "theoretically possible" to use impedance technology—on which DECN's glucose meter is based—to develop a test for COVID-19 based on "blood or saliva." This motion also sought to restrict defense counsel's cross-examination of the two witnesses, Matthew Musho and Daniel Kim, who worked with Mr. Berman on both the glucose and COVID-19 test.

The Government also sought to preclude the defense from introducing testimony that Dr. Musho had worked with Mr. Berman's regular FDA counsel, Marc DuVal and Lisa Pritchard of DuVal & Associates, to prepare DECN's application to the FDA for the COVID test—despite the fact that the Indictment contains 11 paragraphs (par. 25-35) of allegations about this very FDA

process. (Doc. 63) Moreover, there are at least 5 exhibits on the Government's exhibit list setting forth email communications between the FDA and the DuVal law firm on the subject of the blood-based COVID test. This places the Government hypocrisy on full display. It could introduce evidence about the FDA process in an attempt to prove that the DECN press releases on this subject contained false statements. But it wanted to prevent the defense from introducing testimony from the persons who were actually involved in preparing the application and communicating with the FDA about it.

More recently, the Government filed a motion to preclude the defense from introducing any portion of the surreptitious tape-recording of Mr. Berman's April 17, 2020 FBI interview. (Doc. 66) After the Court accepted a handful of defense excerpts, on Rule 106 completeness grounds, defense counsel wrote to Government counsel, by email dated January 13, 2020, to inquire, as a matter of trial logistics, whether the Government was preparing a recording that played both their excerpts and the defense excerpts and a transcript aligned with those excerpts for the jury. Five days later, the Government responded, by email dated January 18, 2020, stating that "in light of the Court's Order relating to the audio excerpts," it was considering modifying its exhibit list. Although this message did not contain any more specifics, the inference appeared to be that the Government might remove Exhibit 30 from its witness list, which is the audio tape of the FBI interview. If this occurs, it calls to mind the playground behavior of the sore loser who takes his ball and goes home. Is it possible that—after extensive briefing, close examination of the transcript by all, argument, and the Court's ruling—the jury will not hear the audio tape or see any transcript of it, simply because the Court allowed the defense to introduce a few minutes from it?

Finally, while preparing the response to this Government motion in limine, the Government filed yet another motion in limine seeking to restrict defense counsel's direct examination of its two of its own witnesses.

In sum, all of the foregoing, as well as the present motion, represents a continuing course of Government maneuvering that threatens Mr. Berman's right to present his defense to the charges in the Indictment. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" (quoting *California v. Trombetta*, 467 U.S. 479, 485. (1984) (footnotes omitted)).

Turning to the present motion, the Government seeks to prevent the defense from introducing into evidence DECN'S glucose meter and test strips despite the fact that the Indictment describes DECN "as being in the business of developing, manufacturing, and distributing glucose test strips and meters…that used a process known as impedance technology." (Par. 1) Further, in par. 16, the Indictment alleges that Mr. Berman contacted its Korean manufacturer to discuss whether the impedance technology being used in the glucose meter could be adapted for use in a test for COVID-19 using blood or saliva. These and other factual allegations in the Indictment are described as "material to this Superseding Indictment." (Ind. p. 1) Material allegations, and the facts set forth in those material allegations, cannot be irrelevant under Rule 401.

Moreover, in DECN's March 3 and 4, 2020 press releases, cited in the indictment (Par.18) Mr. Berman is quoted as stating that DECN had "the technology perfected which will take months off the development schedule."  Exhibit N will verify the accuracy of that statement,

referring to DECN having perfected the impedance technology in the glucose meter which was expected to shorten the time needed to develop the COVID-19 test in blood or saliva.

      Being able to show the jury the glucose meter will make more understandable to the jury the anticipated testimony of Dr. Musho and Mr. Kim who worked with Mr. Berman to develop the glucose meter and on the effort to adapt its impedance technology for use in the COVID test. This is a fundamental element of the defense case because it is the beginning of the narrative which, according to the Government, led to the press releases it alleges were false.

      Rule 7(c) Federal Rule of Criminal Procedure describes an Indictment as a "statement of the essential facts constituting the offense." The defense, of course, had no hand in the allegations the Grand Jury voted upon when it returned the true bill that is the Superseding Indictment. The Government drafted the Indictment which defines the scope of the issues at trial. It cannot now redefine the scope of the issues put in dispute by the allegations on which it chose to base this prosecution. The Indictment contains allegations that refer to the glucose meter. By definition, it is relevant and thus admissible under Rules 401 and 402.

      The Government proclaims it will be the victim of unfair prejudice, under Rule 403, if the jury is shown a DECN glucose meter and a few test strips. But this claim is more imagined than real. It is based on the unfounded speculation that the defense will somehow try to fool the jury by attempting to present the glucose meter as a blood test for COVID-19. This is an insulting accusation unworthy of the Government—which does not explain how such legerdemain could even occur in open court—especially under the adversarial gaze of the prosecution.

Showing the jury the glucose meter will make the testimony about the effort to use its impedance technology to develop the blood-based meter more understandable. Evidence that is more concrete and less abstract aids the jury's understanding. As the Supreme Court stated in *Old Chief v. United States*, 519 U.S. 172, 187 (1992): "The persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them." The jury's ability to see the tangible glucose meter in its concrete particularity will make more understandable the testimony of Matthew Musho and Daniel Kim—two Government witnesses who worked on the glucose meter and the effort to create a blood test for detecting COVID-19 from the glucose meter's impedance technology.

**CONCLUSION**

In sum, a trial is said to be aimed at determining the truth. *Tehan v. United States ex rel Shott*, 382 U.S. 406, 416 (1966). Our system is premised on the belief that the adversary system is the best method for arriving at the truth. But at every turn the Government seems to want an adversary with one arm tied behind its back. This latest motion should be denied so that a tangible piece of evidence that is both part of the defense case and helpful to the jury's understanding of the testimony of trial witnesses can be introduced.

Dated: February 10, 2022  
      New York, New York

Respectfully submitted,

      /s/ Walter P. Loughlin  
Walter P. Loughlin  
Attorney-at-Law  
1225 Park Avenue  
Suite 3D  
New York, New York 10128  
Tel. (203) 216-3445  
walter.loughlin@gmail.com

Ronald S. Herzog
Goldberg Segalla LLP
50 Main Street, Suite 425
White Plains, New York 10606

Counsel for Defendant Keith Berman