<pre>
 1                     UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * *    )
 3     UNITED STATES OF AMERICA,        )      Criminal Action
                                        )       No. 20-00278
 4                    Plaintiff,        )
                                        )
 5        vs.                           )
                                        )
 6     KEITH BERMAN,                    )      Washington, D.C.
                                        )      February 23, 2023
 7                    Defendant.        )      2:06 p.m.
                                        )
 8     * * * * * * * * * * * * * * *    )

 9

10            TRANSCRIPT OF ASCERTAINMENT OF COUNSEL HEARING
                          CONDUCTED VIA ZOOM
11         BEFORE THE HONORABLE TREVOR N. McFADDEN,
                    UNITED STATES DISTRICT JUDGE

12

13     APPEARANCES:

14     FOR THE GOVERNMENT:      CHRISTOPHER R. FENTON, ESQ.
                                MATTHEW REILLY, ESQ.
15                              U.S. DEPARTMENT OF JUSTICE
                                CRIMINAL DIVISION, FRAUD SECTION
16                              1400 New York Avenue, Northwest
                                Washington, D.C. 20530
17
       FOR THE DEFENDANT:       MICHELLE PETERSON, ESQ.
18                              OFFICE OF THE FEDERAL PUBLIC
                                   DEFENDER
19                              625 Indiana Avenue, Northwest
                                Suite 550
20                              Washington, D.C. 20004

21     FOR PRETRIAL SERVICES:   CHRISTINE SCHUCK

22     REPORTED BY:             LISA EDWARDS, RDR, CRR
                                Official Court Reporter
23                              United States District Court for the
                                   District of Columbia
24                              333 Constitution Avenue, Northwest
                                Room 6706
25                              Washington, D.C. 20001
                                (202) 354-3269
</pre>

```
 1              THE COURTROOM DEPUTY:  This is Criminal Case

 2    20-278, the United States of America versus Keith Berman.

 3              Can the parties please identify yourselves for the

 4    record, starting with the Government.

 5              MR. FENTON:  Thank you.  Christopher Fenton and

 6    Matthew Reilly for the United States.

 7              THE COURT:  Good afternoon, gentlemen.

 8              MS. PETERSON:  Good afternoon, your Honor.

 9    Michelle Peterson from the Federal Public Defender Service.

10    We do not currently represent Mr. Berman, but we're here at

11    the Court's request.

12              THE COURT:  Good afternoon.

13              MS. PETERSON:  I don't see Mr. Berman's counsel

14    here, although I assumed he would be here.

15              THE COURT:  Good afternoon, Ms. Peterson.

16              Good afternoon, Mr. Berman.

17              And I see Christine Schuck from Pretrial Services.

18    Thank you for being here, ma'am.

19              I've got a few things I wanted to discuss.

20              First, Mr. Berman, have you retained an attorney

21    since we last spoke?

22              THE DEFENDANT:  Working very hard at it.  I have a

23    retainer agreement that I am considering.  And I figured it

24    would take six to eight weeks to get this done from the

25    beginning, and I think there's several more weeks that it
```

```
1    will take because I have to bring in a person to pay for the

2    services, which I've identified as well.  So I'm close.

3              THE COURT:  So I guess, Mr. Fenton, maybe I should

4    ask you what you think we should do here.  I've seen the

5    Defendant has now filed an affidavit that appears to

6    indicate on its face that he'd be entitled to CJA

7    assistance.

8              Ms. Peterson is here at my request from the Public

9    Defender Service.  I believe public defenders would be

10   willing either to represent the Defendant or find a CJA

11   attorney who can, although I think the Federal Defender's

12   Office has indicated they're not confident they could find

13   anybody available for our current trial date.

14             Is that correct, Ms. Peterson?

15             MS. PETERSON:  Yes, your Honor.  I have had some

16   initial discussions with a law firm that might be willing to

17   join with our office to try the case, but I think it would

18   be hard to do that before September.

19             THE COURT:  So I don't know if the Government

20   intended to try to challenge the affidavit in light of the

21   other information here, but it seems like at least if we go

22   forward with the CJA attorney we're probably not going to be

23   able to keep the summer trial date.  I'm not sure that we'd

24   be able to in any event in light of the medical information.

25             But what's your position, Mr. Fenton, both on the
```

```
 1    Defendant's entitlement to a CJA attorney -- I mean, maybe

 2    we should wait to see if it looks like he's making progress

 3    on finding his own attorney or just proceed with CJA and

 4    then try to pick a new trial date.

 5              MR. FENTON:  Yes, your Honor.  Thank you.

 6              The Government believes that we should proceed

 7    with the CJA.  The reason why is because there's an urgent

 8    need for counsel here.  Probation has requested a hearing to

 9    address what the Government believes is a serious violation

10    of Mr. Berman's conditions of release.  In the Government's

11    view, it appears that Mr. Berman is attempting to engage in

12    another multimillion-dollar securities fraud.

13              Also, we do have the July 10 date, and the

14    Government is committed to keeping that date if at all

15    possible.

16              It's important for the Government and for the

17    Court to receive accurate information about whether or not

18    Mr. Berman is able to travel and participate in trial.  And

19    we think that it's really critical for the Court to appoint

20    counsel now so that Mr. Berman -- we've got a more reliable

21    channel of communication.

22              Also, we just think it's important for the Court

23    to understand that the fact that Mr. Berman does not now

24    have and has not for several months had counsel is impeding

25    the Government's ability to prosecute this case.  And while
```

1    it's not Mr. Berman's fault that his attorney became ill,

2    there was a seven-month delay between when his attorney

3    became ill and when the Government learned of that fact.

4    And that delay is between the time period of April 2022 and

5    December 2022, which, you know, the Government would have

6    expected Mr. Berman to bring that to the Court's attention.

7           Finally, if Mr. Berman later decides to change

8    counsel and he actually has the financial means to do so, he

9    can of course retain new counsel.  It would be the

10   Government's position that he should not be permitted to use

11   the retention of new counsel as a basis for further delay,

12   but that certainly is something he can do if and when he's

13   actually able to pay for a new attorney to represent him.

14          THE COURT:  So, Ms. Peterson, are you able to

15   represent the Defendant at least for today's purposes,

16   recognizing that you're not committing -- and I think

17   Mr. Fenton here is -- I'm not going to hold you or a CJA

18   attorney to the July trial date?

19          MS. PETERSON:  Yes, your Honor.  As long as the

20   July trial date is not going to be the trial date in the

21   case, I am willing to enter my appearance and then get

22   additional firm assistance on the case.

23          I'm not prepared to address any release condition

24   violations today, not having heard of that until just now.

25   So if we -- if that is something we need to address, I would

1      ask that we schedule another status conference to do that so

2      people can bring me up to speed on what the issue is.

3              THE COURT:  So I am going to appoint Ms. Peterson

4      to represent the Defendant.  I had said back in January

5      almost exactly a month ago that Mr. Berman needed to have

6      retained counsel by this point or else he would provide the

7      CJA affidavit.  He did provide the CJA affidavit, which

8      suggests that he's entitled to appointed counsel.  And he's

9      not to this point retained his own attorney.  So I am going

10     to appoint Ms. Peterson.

11             I take Ms. Peterson's point.  She's not in much of

12     a position to address release conditions.

13             What is the Government requesting on that point?

14             MR. FENTON:  Well, your Honor, at this point,

15     we're requesting the hearing that Probation has asked for.

16             At this point, in light of these recent

17     developments, the Government is concerned that Mr. Berman is

18     actually a serious flight risk.  And the reason is twofold:

19     One, he appears to be ghost-writing his doctor's notes,

20     which is extremely problematic from the Government's

21     perspective and appears designed to delay his trial date.

22     And number two, at the same time that he's doing this, he's

23     apparently trying to raise millions of dollars, and in the

24     instance of the document at issue seeks a million dollars.

25     That agreement calls for immediate availability of funds.

1    There is as far as the Government can tell no legitimate

2    business purpose for him raising so much money because his

3    company is effectively dead.  And the Government believes

4    that the appropriate inference here is that the Defendant is

5    amassing a nest egg to run.

6           So we would like to have a hearing as soon as

7    possible.  And we think that some action should be taken.

8           THE COURT:  So, Ms. Schuck, if I'm understanding,

9    all you're asking is me to order the Defendant to provide

10   your office access to any requested financial information

11   and authorize the release of any financial information.  Am

12   I correct about that, Ms. Schuck?

13          THE PRETRIAL SERVICES OFFICER:  Yes, your Honor.

14   Thank you.

15          THE COURT:  So, Ms. Peterson, you're welcome to

16   weigh in if you'd like.  But I think I'm just going to order

17   that right now.

18          MS. PETERSON:  That's fine, your Honor.  I can

19   obviously speak with Mr. Berman about it after.  But that

20   seems to be an appropriate request if there's an issue as to

21   whether or not he's violating those -- if the Court is not

22   going forward with a hearing to seek additional sanctions,

23   I'm prepared to take at least that step today.

24          THE COURT:  That's what Probation is asking.  I am

25   going to authorize that.

1              If the Government is asking for something else,

2     the Government can make that motion.  But at this point,

3     that's all that's in front of me, and I don't think we need

4     to do anything further on that.

5              So the doctor's note -- and I do appreciate the

6     Government's notice there.  I guess I'm a bit of two minds

7     on this.  I understand the Government's concern.  But I

8     also -- I guess I'd say I'm not shocked that doctors aren't

9     thrilled about writing multipage letters to judges and took

10    and apparently edited what the Defendant wrote before

11    signing it.  It doesn't sound like in the Government's

12    discussion with the doctors they're saying that they didn't

13    sign this or that this is somehow fraudulent.

14             So as I read this letter, I don't take this letter

15    to be saying he's not going to be ready for July.  It seems

16    like the doctor is saying they're not sure.

17             Ms. Peterson is not going to be ready for trial in

18    any event in July, which likely makes this something of a

19    moot point.

20             So, Mr. Fenton, I hear your frustration.  And if

21    you're seeking authorization to somehow confirm to your

22    satisfaction that the Defendant is ill, I'm very open to

23    that.  But I'm not sure what else to do right now.

24             MR. FENTON:  May I be briefly heard on this, your

25    Honor?

1              THE COURT:  Sure.

2              MR. FENTON:  If the Defendant's medical condition

3       is a fact that could potentially cause the trial to be

4       delayed further and not the availability of counsel, the

5       Government would ask that the Court not rely on these

6       doctor's notes in the future, but schedule an evidentiary

7       hearing so that the doctor can actually testify directly to

8       the Court about what the Government believes are the three

9       key questions that are not really being addressed by these

10      letters.

11             The first is whether or not the Defendant can

12      actually travel.  The second is what measures, if any, could

13      be taken so that the Defendant can safely attend the

14      proceedings.  And the third question is what length of time,

15      if any, the Defendant could attend proceedings on a daily or

16      a weekly schedule.

17             And the letter that the Defendant wrote most

18      recently for the doctor to sign provides only speculation

19      with respect to these potential issues.  So if this is

20      something that, going forward, a medical condition is going

21      to be persistent, we think that we should have an

22      evidentiary hearing because these letters are no longer

23      reliable.

24             THE COURT:  All right.

25             MR. FENTON:  One important fact, your Honor, that

1          I would just like to add for the record is that the

2     Government previously attempted to work with Mr. Berman and

3     his counsel to potentially transfer the case from this court

4     to the Central District of California, which is the district

5     where Mr. Berman lives.

6               And that transfer of venue can only take place --

7     can take place pursuant to Federal Rule of Criminal

8     Procedure 21, but only if the Defendant consents.  And

9     whereas the Government does not want to transfer the case,

10    we would be open to doing it so that Mr. Berman can actually

11    proceed and we can have a trial.

12              Here, Mr. Berman refused to consent.  And it's

13    within his right to do so.

14              But the basis that was given to us was that he

15    would still have to commute downtown and basically drive 30

16    to 40 minutes.  And according to his counsel, Mr. Berman is

17    unwilling to do that and is apparently unable.

18              From the Government's perspective, we've been

19    trying to working with Mr. Berman, including trying to work

20    with him to transfer the venue of the case.  He seems

21    unwilling to do that.  And from the Government's

22    perspective, it seems like he's trying everything he can to

23    avoid trial.

24              THE COURT:  So, Mr. Fenton, much of what you're

25    saying sounds reasonable to me.

```
 1                   Is there any reason, though, that you couldn't

 2       interview or have an agent interview the doctor and

 3       determine those things substantially for yourselves?  I

 4       mean, is there some client-patient privilege or something

 5       that would prevent you from doing that without setting up an

 6       evidentiary hearing?

 7                   MR. FENTON:  Your Honor, are you asking if we

 8       would be able and willing to speak to Mr. Berman's counsel

 9       or --

10                   THE COURT:  Doctor.  If I said counsel, that was

11       my mistake.

12                   MR. FENTON:  No.  I'm sorry.  Or are you

13       suggesting we retain an independent expert to evaluate

14       Mr. Berman's medical condition?

15                   THE COURT:  At this point, I'm not suggesting

16       that.  I'm just -- I think you had three questions.  Those

17       sound like great questions.  But I don't think those have

18       been asked at all.  And it strikes me that an intermediate

19       step might be you or one of your agents trying to pose those

20       directly to the doctor.

21                   MR. FENTON:  We have -- to Dr. Dutta?

22                   THE COURT:  Yes.

23                   MR. FENTON:  So we have tried to have

24       communications, and they have not been particularly

25       successful.  What we really need is to have a fulsome
```

1    discussion where we can pose these questions and get the

2    answers.  And to date, we've made efforts and we have not

3    been successful in getting those answers.

4         So we're happy to try again and report back to the

5    Court on our progress.  But at some point -- I mean, we've

6    been at this for quite some time.  This case is getting

7    quite old.  We really want to get this case to trial, and we

8    are really doubtful about the claims that are being made by

9    the Defendant and his conduct.  We're willing to make the

10   effort, but I think at some point an evidentiary hearing

11   might be appropriate.

12        THE COURT:  So, Ms. Peterson, let me tell you all

13   what I think we should do.  I think we should try to set

14   trial based on the parties' availability.  And,

15   Ms. Peterson, if we need to wait to figure that out so you

16   have somebody else in, I'm happy to give a short continuance

17   on that basis.  But I'd like to try to get a trial date that

18   works for all of us.

19        And then I agree with Mr. Fenton that we would

20   almost certainly need an evidentiary hearing or something

21   more substantial than we've had to date to justify a

22   continuance on medical grounds.

23        But I don't think this letter -- certainly this

24   letter would not in and of itself justify a continuance

25   anyway.  I think it's saying that the trial date is still

1    five months out and the doctor is saying -- is not sure.

2    And that strikes me as a pretty reasonable response at this

3    point.

4             MS. PETERSON:  I think I agree with the Court.  I

5    think it wouldn't do us any good to have an evidentiary

6    hearing at this point because the answer the doctor is going

7    to give is:  I don't know.  I won't know until closer to

8    that trial date.

9             But certainly if you set a trial date and it

10   appears that for some reason Mr. Berman is not going to be

11   able to do it, I would not object to proceeding in that

12   fashion.

13            I would suggest that we either set this down for a

14   status or the Court just direct the parties to come up with

15   some potential trial dates in the fall and propose that.

16            The difficulty there is not knowing -- I guess I

17   have the most recent master trial calendar -- what the

18   Court's calendar looks like for the fall.  I do need to

19   consult with the law firm that has indicated they might join

20   us to make sure that I don't pick a date that they cannot

21   do.

22            THE COURT:  Why don't we just do a brief

23   continuance.  And I think that would also -- if Mr. Berman

24   is about to hire an attorney, if we're picking a new trial

25   date anyway, I would just as soon have that attorney be

1    involved and help make that decision.  But, Ms. Peterson,

2    how long are you looking for?

3              MS. PETERSON:  Well, I'm jumping in on a trial

4    because other people can't do it starting on Monday before

5    Judge Friedman, unexpectedly so.  If we could perhaps do the

6    week of March 13th.  Is that too far out?  If it's too far

7    out, if we scheduled it on the lunchtime, that also might be

8    possible.

9              THE COURT:  That's fine.  How about 1:00 p.m. on

10   Wednesday, March 15th?  Does that work for the Government?

11             MR. FENTON:  Yes, your Honor.

12             THE COURT:  And Ms. Peterson?

13             MS. PETERSON:  Yes, your Honor.  That'll be fine.

14             THE COURT:  So we'll set this for a status

15   conference -- it'll be virtual -- on Wednesday, March 15th,

16   at 1:00 p.m.

17             I think basically that is about, Mr. Berman, the

18   time that you had originally suggested you'd have an

19   attorney.  So let me say, you've got free and excellent

20   counsel here in Ms. Peterson or CJA attorneys; but you have

21   the right to retain your own attorney as long as that

22   attorney is not going to be interfering with -- I'd be

23   looking to do an expeditious trial.  I'm certainly willing

24   to hear from that attorney on appropriate trial dates.  So

25   if you've got an attorney you've retained, let me just tell

1    you to have that attorney appear for the 1:00 p.m. status

2    conference on March 15th.

3              Do you understand that, Mr. Berman?

4              THE DEFENDANT:  I do.

5              Am I allowed to say anything at this point?

6              THE COURT:  I think it's probably a bad idea to.

7    Anything that can't wait until March 15th?

8              THE DEFENDANT:  This is something that's going to

9    occur on Friday.

10             THE COURT:  Okay.

11             THE DEFENDANT:  I can discuss it with

12   Ms. Peterson --

13             MS. PETERSON:  Thank you.

14             THE DEFENDANT:  -- and she can decide what to do.

15             THE COURT:  Yes.

16             THE DEFENDANT:  If the Court could put us in a

17   breakout room at the conclusion of the hearing, I can get

18   some contact information from Mr. Berman and make sure we

19   talk about what, if anything, needs to be done before

20   Friday.

21             THE COURT:  Ms. Chaclan is an air traffic

22   controller here.  We've got two other hearings we've got

23   going on.

24             So, Mr. Fenton, I'm not ignoring you on your

25   concern about flight risk.  But I think you need to make a

1    motion.  And if you want to make a motion then or before --

2    between now and then, that's fine.  But at this point, the

3    only request pending in front of me is from Probation.  And

4    I granted that.

5              MR. FENTON:  Understood, your Honor.  The

6    Government understands.

7              One request that I would ask of the Court is for

8    the Court to remind the Defendant for the purpose of the

9    interim, between now and March 15, that the Defendant's

10   conditions of release prohibit him from selling,

11   transferring or giving away any asset valued at $10,000 or

12   more without notifying and obtaining permission from the

13   Court, because that is a condition that Probation has

14   indicated the Defendant has already violated and that the

15   Government is concerned that he will violate again in the

16   future in his efforts to essentially arrange for financing

17   to either hire a new attorney or to flee.

18             And what the Government's concerned about here is

19   Mr. Berman selling stock or selling -- which would harm the

20   interests of the victims he's already victimized, or sell

21   parts of the company in order to benefit himself personally.

22             THE COURT:  Mr. Berman, I think it is appropriate

23   for me to remind you that you are released on your personal

24   recognizance on the basis of multiple conditions, one of

25   which was that you should not sell, transfer or give away

1    any asset valued at $10,000 or more without permission of

2    the Court.

3             As I think you can tell, both Pretrial Services

4    and the Government are very concerned about this loan

5    agreement you sent us.  I'm not going to ask you to comment

6    on it at this point; but I will say that many, if not most,

7    federal criminal defendants await trial in jail.  You're

8    lucky in that you're released.  But if there's evidence that

9    you're violating your release conditions, you may well be

10   locked up.  And regardless, if this case comes to

11   sentencing, I certainly do take into account defendants'

12   conduct while on pretrial release.

13            So let me just direct you to make sure that you're

14   scrupulously following your release conditions.  To the

15   extent you have questions about whether something is

16   appropriate, you've got an excellent attorney in

17   Ms. Peterson.  You can check with Probation.  But you

18   shouldn't be doing something that may violate your release

19   conditions.  I don't want you to put yourself in that

20   situation.

21            I believe we've already tolled time until the

22   trial date, so I don't think that is an issue.  Do I

23   remember that correctly, Mr. Fenton?

24            MR. FENTON:  Yes, your Honor.

25            THE COURT:  Ms. Peterson, anything further for the

1  defense?

2          MS. PETERSON:  No, your Honor.

3          THE COURT:  Ms. Schuck, anything from your side?

4          THE PRETRIAL SERVICES OFFICER:  Nothing from

5  Pretrial, your Honor.

6          THE COURT:  Thanks, folks.

7          Ms. Chaclan, I'll ask you to put Ms. Peterson and

8  Mr. Berman in a breakout conference to the extent you're

9  able to.

10          THE COURTROOM DEPUTY:  I'm doing that now.  Just

11  give me one moment.

12          THE COURT:  Yes.

13          (Proceedings concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

1                        **<u>CERTIFICATE</u>**

2

3                I, LISA EDWARDS, RDR, CRR, do hereby

4      certify that the foregoing constitutes a true and accurate

5      transcript of my stenographic notes, and is a full, true,

6      and complete transcript of the proceedings produced to the

7      best of my ability.

8

9

10                      Dated this 27th day of February, 2023.

11

12               <u>/s/ Lisa Edwards, RDR, CRR</u>
                 Official Court Reporter
13               United States District Court for the
                   District of Columbia
14               333 Constitution Avenue, Northwest
                 Washington, D.C. 20001
15               (202) 354-3269

16

17

18

19

20

21

22

23

24

25