```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
      * * * * * * * * * * * * * * *    )
 3    UNITED STATES OF AMERICA,        )      Criminal Action
                                       )       No. 20-00278
 4                   Plaintiff,        )
                                       )
 5       vs.                           )
                                       )
 6    KEITH BERMAN,                    )      Washington, D.C.
                                       )      June 26, 2023
 7                   Defendant.        )      10:03 a.m.
                                       )
 8    * * * * * * * * * * * * * * *    )

 9

10              STATUS CONFERENCE CONDUCTED VIA ZOOM
            BEFORE THE HONORABLE TREVOR N. McFADDEN,
11                 UNITED STATES DISTRICT JUDGE

12

13    APPEARANCES:

14    FOR THE GOVERNMENT:       CHRISTOPHER R. FENTON, ESQ.
                                KATHERINE McCARTHY, ESQ.
15                              MATTHEW REILLY, ESQ.
                                U.S. DEPARTMENT OF JUSTICE
16                              CRIMINAL DIVISION, FRAUD SECTION
                                1400 New York Avenue, Northwest
17                              Washington, D.C. 20005

18
      FOR THE DEFENDANT:        KEVIN B. COLLINS, ESQ.
19                              ELIZABETH ERTLE, ESQ.
                                COVINGTON & BURLING, LLP
20                              850 Tenth Street, Northwest
                                Washington, D.C. 20001
21
                                MICHELLE M. PETERSON, ESQ.
22                              FEDERAL PUBLIC DEFENDER FOR THE
                                  DISTRICT OF COLUMBIA
23                              625 Indiana Avenue, Northwest
                                Suite 550
24                              Washington, D.C. 20004

25
```

1    REPORTED BY:              LISA EDWARDS, RDR, CRR
                               Official Court Reporter
2                              United States District Court for the
                                 District of Columbia
3                              333 Constitution Avenue, Northwest
                               Room 6706
4                              Washington, D.C. 20001
                               (202) 354-3269
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURTROOM DEPUTY:  Your Honor, this is
 2   Criminal Case 20-278, the United States of America versus
 3   Keith Berman.
 4              Counsel, please introduce yourselves for the
 5   record, starting with the Government.
 6              MR. FENTON:  Good morning, your Honor.
 7   Christopher Fenton, Kate McCarthy and Matthew Reilly for the
 8   United States.
 9              THE COURT:  Good morning, folks.
10              MR. COLLINS:  Good morning, your Honor.  Kevin
11   Collins on behalf of Mr. Berman.  I'm joined by my colleague
12   Elizabeth Ertle, and I know -- I see Michelle Peterson from
13   the Federal Defender's is also on.  And there may be a
14   couple of other of my colleagues I can't see on the screen
15   at this point.
16              THE COURT:  Good morning, folks.
17              Mr. Collins, are we still waiting for your client?
18              MR. COLLINS:  Your Honor, good question.  I don't
19   know.  I mean, I would think when this status conference was
20   set a couple months ago, the expectation was that he was
21   going to be in D.C.  I think, as the Court knows, he's still
22   in California.  We've had limited access to him.  So the
23   answer is, I don't know.
24              We understood the Marshals Service were going to
25   try to have him up here by Zoom.  We're not sure of the
```

1    status of that.

2          THE COURT:  I'm inclined just to proceed.  I think

3    we're only going to be taking care of largely administrative

4    tasks at this point.  Do you have a problem with that?

5          MR. COLLINS:  I don't.  At least at this moment, I

6    don't.

7          THE COURT:  So I've reviewed the parties' joint

8    status report.  You all have laid out a briefing schedule

9    that I'm generally comfortable with.  It seems like the only

10   motions you're expecting to file relate to expert witnesses.

11         I want to make -- I just want to clarify, does

12   that mean neither party is seeking to file any additional

13   motions, pretrial motions?  Mr. Fenton?

14         MR. FENTON:  Yes, your Honor.  Based on the record

15   as it stands, the Government is not planning to file any

16   additional pretrial motions.

17         If it were the case that the Government believed

18   that there was a basis to, for example, file a *Daubert*

19   motion, were the Defendant to notice an expert and the Court

20   were to think there were grounds, we would file to -- we

21   would file that motion at that time.

22         But aside from the *Daubert* motion, we don't

23   anticipate anything else at this time.

24         THE COURT:  Well, how would that fit into this

25   schedule that you've laid out, Mr. Fenton?

1          MR. FENTON:  So we don't provide for that here

2    because we don't know whether or not we would actually -- we

3    don't know if the Defendants are actually going to notice an

4    expert and we don't know if we would actually move.  But if

5    they were to do so, they are required under this proposed

6    schedule to provide notice by October 16th.  So we would

7    anticipate filing a motion within maybe two or three weeks

8    after we receive that notice.

9          THE COURT:  Two to three weeks would be almost on

10   top of the pretrial conference.  So I think what I'm going

11   to ask you all to do is go back and come up with a schedule

12   that includes any potential pretrial motions, certainly

13   including any *Daubert* litigation.  Otherwise, I'm happy with

14   this.

15          But what I don't want is for us to have unexpected

16   last-minute motions that aren't accounted for here and that

17   are going to have us all running up against the pretrial

18   conference.

19          So if you all want to use this as a basis and just

20   add in, it occurs to me that that defense expert disclosure

21   might be a little late in that it's less than a month before

22   the pretrial conference.  So you all might think about

23   moving things back a bit to give you some additional time

24   for motions.  But I just don't want there to be any

25   confusion about what schedule we're on for any motions that

1   might be filed here.

2            Does that make sense to you, Mr. Fenton?

3            MR. FENTON:  Yes, your Honor.

4            THE COURT:  And, Mr. Collins, does that make sense

5   to you?

6            MR. COLLINS:  It does, your Honor.

7            THE COURT:  And I also will just ask that you add

8   in a date for voir dire questions and final jury

9   instructions.

10           My recollection, Mr. Fenton, is there had been an

11  agreement on these with prior defense counsel.  And I

12  understand that Mr. Collins understandably wants an

13  opportunity to consider those before he signs off on them.

14  I'm fine with that.  But we need -- I think what I'll ask is

15  that we have everything filed including any voir dire

16  questions and final jury instructions at least one week

17  prior to the pretrial conference.

18           So let's keep November 6th as the last date for

19  anything to be filed; and you all can work back from that to

20  include a schedule for any motions that may be filed and a

21  final agreement, ideally an agreement, but otherwise

22  nonagreement, on voir dire questions and final jury

23  instructions.

24           Mr. Fenton, is there anything else you wanted to

25  discuss?

1          MR. FENTON:  One additional point, your Honor.

2          We had raised with counsel the question of whether

3    or not there would need to be any accommodations made for

4    Mr. Berman during the trial, given his medical condition.

5    And we have not heard anything back.  But we just wanted to

6    put that on the Court's radar so that we resolve that issue

7    sooner rather than later.

8          THE COURT:  My guess is Mr. Collins isn't really

9    sure about that.

10          MR. COLLINS:  That's correct, your Honor.

11          THE COURT:  I mean, it seems like he's got

12    something of a dynamic situation and in any event is in a

13    hospital on the other side of the country.  And Mr. Collins

14    expected that he was going to be out here based on the

15    Government's representations.  So I am interested in how you

16    all think we should resolve this and what is a realistic

17    timing for that.

18          I haven't dealt with a situation like this before.

19    I don't know if either of you have.

20          Mr. Collins, what's your suggestion on how to

21    figure this out?

22          MR. COLLINS:  My suggestion, your Honor, is that

23    the Government file something under seal so that we have a

24    better understanding as to when and where Mr. Berman might

25    be transferred to.  When this was before the Court last a

1      couple months ago, when they were in part of the transfer

2      motion or the revocation of the bond, there was

3      representations made by the Government that they had a

4      Learjet fueled up on the tarmac ready to take him due to

5      cost and safety concerns and they were going to transport

6      him to a facility near D.C., in Alexandria or Pennsylvania

7      somewhere.

8              Now we understand based on conversations we had on

9      Friday that he could be several states away.

10             And we view that right now, our ability to access

11     Mr. Berman, to provide effective assistance of counsel, is

12     incredibly limited.  It will be very, very difficult for

13     Mr. Berman to access us if he's three or four states away.

14     We think we need an update from the Government

15     because they've been -- I understand and we're sensitive to

16     the marshals' concerns about, you know, telling us where

17     he's going to be transferred exactly.  But when this motion

18     was before the Court, the representations were that he was

19     ready to go; they had the ability to do it.  That's fully

20     expected to be the case.

21             Now we're told he's going to be several states

22     away.  That to me raises concerns about his -- Mr. Berman's

23     right to access and our ability to provide effective

24     assistance of counsel.

25             So we're in the dark, as the Court noted a moment

1  ago.  So we have pretty limited access.  The Government

2  seems to have a lot more information.  And I think they

3  should make a filing in terms of timing, potential

4  facilities.  And if we view that as problematic, we think we

5  should revisit this transfer going forward.

6          THE COURT:  So frankly, I'm not sure the

7  Government is going to be in a position to do that.  They

8  obviously -- I mean, the U.S. Attorney's Office, or I guess

9  the criminal division, is not calling the shots on this.

10  And I think the Marshals Service is dealing with an unusual

11  situation and it's kind of a fluid one.

12          When you say you don't have access to him now,

13  Mr. Collins, are you saying -- my recollection is you all

14  were seeking to have this trial out there in California.

15  Are you saying you're not able to access his hospital room

16  for attorney visits or are you saying that you don't have --

17  you're not able to do Zoom calls with him?  Or is this just

18  the difficulties of you being on the East Coast and him

19  being on the West Coast?

20          MR. COLLINS:  I would like Ms. Ertle to speak to

21  this.  My understanding is we have sort of periodic visits

22  with him in the hospital.  I haven't had a Zoom call with

23  him in the hospital.  Obviously --

24          THE COURT:  Is that because it's not being

25  allowed, Mr. Collins?  Or is that just you haven't tried to

1    do it?

2              MR. COLLINS:  I would ask Ms. Ertle to address

3    this, because she's had a number of communications with him

4    and I haven't.

5              THE COURT:  Okay.

6              MS. ERTLE:  Yes, your Honor.  Can I go ahead and

7    speak to that?

8              THE COURT:  Yes.

9              MS. ERTLE:  Yes.  So the process right now is

10   Mr. Berman is able to call us approximately once a day if he

11   needs to.

12             But we are able to access him a little bit more

13   practically because we do have a colleague out of our LA

14   office who intermittently is able to go and visit him in

15   person.

16             Our understanding is we're not able to deal with

17   him unless that colleague goes in person, which obviously is

18   a pretty burdensome process.  He has to get to the hospital

19   every time and get the rest of us involved.

20             However, compared to moving him somewhere here on

21   the East Coast, we do at least have someone out there local

22   who can go occasionally.

23             So that's why the concern is if he's moved several

24   states away, it will become even more difficult than it

25   currently is.

1          Obviously, there are a lot of issues with the way

2     it currently is just as a practical matter, having to get

3     in-person meetings if we want to talk with him on the phone.

4          But we are concerned that maybe moving him to the

5     East Coast not within driving distance of D.C. would worsen

6     the situation.

7          THE COURT:  As I see it, it looks to me like you

8     have very adequate access to him right now.  Daily calls are

9     frankly something that a lot of my pretrial detainees would

10    love to have.  And the attorney access also sounds pretty

11    good.

12         I understand the concern about the unknown here in

13    the future.  What I think I want to do is just put this off,

14    set a status conference for the end of the summer, see where

15    Mr. Berman is at that point, and at least as importantly his

16    medical situation.  I think we'll all be in a better

17    position at that point to try to think about the

18    practicalities of the trial.

19         But right now, I don't hear a real issue with his

20    Sixth Amendment access to counsel.  So I think I want to set

21    a status date.

22         Anything else for the defense, Mr. Collins, before

23    we set that date?

24         MR. COLLINS:  No, your Honor.

25         THE COURT:  And, Mr. Fenton, I'm putting -- I

1    don't think it's fair to ask Mr. Collins to weigh in on

2    medical concerns for trial for the reasons I just said.

3              Anything else you think we need to discuss?

4              MR. FENTON:  No, your Honor.

5              THE COURT:  How about 2:00 p.m. on Tuesday, August

6    29th?  I think it's probably just as well for us to plan for

7    that to be a video teleconference.

8              Mr. Fenton, does that work for the Government?

9              MR. FENTON:  Your Honor, I think it would be

10   preferable if we could possibly do it the following week, if

11   at all possible.

12             THE COURT:  Yes.  I could do, let's say, 3:00 p.m.

13   on Tuesday, September 5th.  Does that work for the

14   Government?

15             MR. FENTON:  Yes, your Honor.

16             THE COURT:  And, Mr. Collins, does that work for

17   defense?

18             MR. COLLINS:  It works for me.

19             Ms. Ertle, are you free?

20             MS. ERTLE:  Yes.

21             MR. COLLINS:  It works for us, your Honor.

22             THE COURT:  So we'll set this for a status

23   conference on Tuesday, September 5th.  And to be clear, what

24   I'm primarily hoping to determine at that point is the

25   medical situation.  So I mean, I'm hoping Mr. Berman is

1    going to be wherever he's going to be for the fall at that

2    point.

3            Mr. Fenton, it certainly sounds like he would,

4    based on the representations here.  But I expect you to be

5    in a position to speak to that.

6            And, Mr. Collins, I'm going to want you to be in a

7    position to talk about what trial would look like and any

8    accommodations from a medical perspective, obviously

9    recognizing that his medical situation might change in the

10   months after that.  But at least based on what you can

11   reasonably tell at that point.  That's kind of the

12   conversation that I'm hoping to have on the 5th.

13           Let me also ask the parties to file a revised

14   joint proposed scheduling order by next Wednesday.  So July

15   5th.  I'll just ask you to file an updated proposed

16   scheduling order for briefing and other dates; as I say,

17   including any potential motions or at least where those

18   would go and have the last one be no later than November

19   6th.

20           Anything else for the Government?

21           MR. FENTON:  No, your Honor.

22           THE COURT:  And, Mr. Collins, anything further for

23   defense?

24           MR. COLLINS:  No, your Honor.

25           THE COURT:  Thanks, folks.

1            MR. COLLINS:  Thank you, your Honor.

2            (Proceedings concluded.)

**<u>CERTIFICATE</u>**

I, LISA EDWARDS, RDR, CRR, do hereby certify that the foregoing constitutes a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript of the proceedings produced to the best of my ability.

Dated this 23rd day of July, 2023.

<u>/s/ Lisa Edwards, RDR, CRR</u>
Official Court Reporter
United States District Court for the
  District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269