**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal No.** |
| **v.** | **1:20-cr-00278-TNM** |
| **KEITH BERMAN** | |
| **Defendant.** | |

<u>**GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO**</u>
<u>**EXCLUDE THE TESTIMONY AND OPINIONS OF THOMAS CAROCCI**</u>

The United States, by and through its undersigned counsel, opposes the Defendant's Motion to Exclude the Testimony and Opinions of Thomas Carocci (Dkt. 142) and respectfully submits that the Court should deny the defendant's motion in its entirety. The defendant frames Mr. Carocci's proposed testimony as complicated and special when it is, in fact, simple and commonplace. The government offers Mr. Carocci as a non-expert summary witness to introduce basic securities concepts ('Securities 101'), summarize otherwise admissible evidence, and authenticate summary exhibits he has prepared. To be clear, as proposed, the government does not intend to elicit any expert opinion testimony from Mr. Carocci. Instead, the government seeks to have Mr. Carocci testify about uncontroverted facts and standard marketplace data without espousing a view as to causation or correlation—as he and his colleagues at the Financial Industry Regulatory Authority's ("FINRA") Criminal Prosecution Assistance Group ("CPAG") do every year in cases across the country. Providing the jury with this otherwise admissible evidence in this fashion is clearly contemplated by Federal Rules of Evidence 611 and 1006, and is a long recognized and encouraged form to efficiently present voluminous information to the jury.

Moreover, even if the Court were to deem some portion of Mr. Carocci's proposed testimony within the scope of expert testimony, that testimony should be admitted in light of Mr. Carocci's clear qualifications and the straightforward principles and methods he will apply to the subject matter.  Lastly, the defendant's arguments that Mr. Carocci's testimony should be excluded as irrelevant or confusing are without merit.  For these reasons, the Court should deny the defendant's motion and permit the testimony of Mr. Carocci at trial.

## I.    FACTUAL BACKGROUND

On September 4, 2023, the government filed its supplemental expert disclosure containing its position on the anticipated of Thomas Carocci, Esq. of FINRA CPAG.  *See* Exhibit A.  The government made clear in its disclosure that it was providing the disclosure out of an abundance of caution because it did not intend to qualify Mr. Carocci as an expert,[1] did not intend to elicit opinion testimony from Mr. Carocci, and that Mr. Carocci would be testifying as a summary witness pursuant to Federal Rule of Evidence 1006.

The government explained in its disclosure that Mr. Carocci has worked since 2008 at FINRA, assisting criminal investigations and prosecutions involving securities-related offenses. The government also included his role at FINRA's predecessor, the National Association of Securities Dealers ("NASD"), where he was a Special Investigator in the Member Registration Department conducting routine and special cause examinations of FINRA member firms, and investigated brokerage firms' books and records, operations, and sales practices to evaluate compliance with FINRA rules, U.S. Securities & Exchange Commission ("SEC") regulations, and U.S. securities laws.  The government also disclosed other roles that Mr. Carocci held at NASD,

---

[1] The government reserved the right to offer Mr. Carocci as an expert if the Court deemed that Mr. Carocci's testimony need be admitted as expert testimony under Rule 702.

his role as Vice President, Compliance Regulatory Affairs at Goldman Sachs & Co., and his role as Vice President, In-House Counsel at Bowes Funds LLC.  In addition, the government disclosed that Mr. Carocci has provided training to federal and state law enforcement agencies regarding securities markets, fraud schemes, and investigative techniques.  Finally, the government included an index of the 15 federal trials and six state trials at which Mr. Carocci has testified as either a summary or expert witness on behalf of the United States, New York Attorney General's Office, or the District Attorney for New York County since 2018.

The government then disclosed the background testimony that it anticipated Mr. Carocci would provide concerning securities markets, general industry terms, the regulators and disclosure requirements, and general interplay of news reported by a publicly traded company on its stock price and trading volume.  Mr. Carocci will also testify as to the duty public company officers owe to shareholders, including that they should not make any material misrepresentations or omissions. This testimony is considered a basic "overview of the securities markets" regularly provided by Mr. Carocci in federal market manipulation trials.  *See, e.g., United States v. Schena*, 20-cr-00425 EJD (N.D. Cal. 2022).

The government also disclosed the anticipated summary testimony based on otherwise admissible evidence—Decision Diagnostics Corp.'s ("DECN") press releases, market price and volume data, and the personal knowledge of Mr. Carocci from a review of traditional market data and research tools such as the Bloomberg Terminal.  The disclosure stated that Mr. Carocci would provide testimony on each of the following topics related to the relevant DECN press releases: (1) the stock price movement following the announcement, (2)  the stock price movement of the market as a whole as measured by the S&P 500 Index, (3) whether there was any other news or events prior to the press release that would have impacted the stock price change on the day of or

after the announcement, (4) the timing of potential market-moving events such as press releases, filings, or any other public statements regarding DECN, and (5) the use by Mr. Berman, Alpha Capital Anstalt, and others of stock sales, convertible notes/securities, and offerings to benefit Mr. Berman.[2]

The government's expert disclosure was timely, complying with the Court-ordered deadline. The government's expert disclosure also complied with the government's obligations under Rule 16. When providing its expert disclosures, the government told the defendant that it was available to discuss if he have any questions about Mr. Carocci's proposed testimony. The defendant, however, did not have any questions for the government.

## II.    LEGAL STANDARD

"Summary evidence need not be an exhibit, but may take the form of a witness's oral testimony. Although there is no explicit requirement that the witness be an expert or have special expertise, practical considerations often necessitate having technicians, such as accountants, testify or prepare exhibits." 6 WEINSTEIN'S FEDERAL EVIDENCE § 1006.05 (2023) (noting that FRE 1006

---

[2] The government does not intend for Mr. Carocci to provide an opinion (expert or lay) on any of these topics. Mr. Carocci will testify as to the otherwise admissible evidence such as the chronology of the press releases, stock price and volume movements, S&P 500 stock price movements, and—from his own personal knowledge—the lack of other Bloomberg Terminal news stories connected to DECN on the dates of the press releases. The government acknowledges that three references in the expert disclosure could be read to suggest Mr. Carocci would give opinions on these topics: "the effect of market-moving events"; "created elevated trading volume"; and "stock price moves were not consistent with broader market movement in the S&P 500 Index." In light of the moving brief, and to avoid any doubt, the government confirms that, at trial, Mr. Carocci's will not testify to his opinion as to any causal effect or correlation between the press releases and reactions in either stock price or volume, nor will Mr. Carocci provide any views or conclusions as to what inferences the jury should draw about a comparison of DECN's stock price and volume and that of the S&P 500. Mr. Carocci's testimony will lay out facts about press releases and market data, and present that admissible evidence in summary charts prepared by Mr. Carocci as contemplated by FRE 1006. His role will be limited to summarizing that evidence, and will not offer any opinions about it.

"appears to contemplate" that summary exhibits "will have been prepared by a witness available for cross-examination, not by the lawyers trying the case").   Courts have regularly upheld the use of non-expert summary witness testimony by professionals finding that a "prosecutor's 'non-expert summary witness can help the jury organize and evaluate evidence which is factually complex.'" *United States v. Cooper*, 949 F.3d 744, 750 (D.C. Cir. 2020) (*quoting United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983)).   Such a non-expert summary witness can appropriately testify so long as he or she is not offering an opinion or conclusion.  *United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 459 (D.D.C. 2020) (citing *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) (noting that witnesses who "summarized business records and client lists and presented them in condensed form ... expressed neither a lay nor an expert opinion"). So long as the summary witness does not describe "what inferences should be drawn from [the] evidence[,]" "draw controversial inferences or pronounce judgment[,]" or treat the summary testimony as "as additional evidence or as corroborative of the truth[,]" he may properly testify by "help[ing] the jury organize and evaluate evidence which is factually complex and fragmentally revealed in the testimony of a multitude of witnesses or documents throughout the trial." *United States v. Abou-Khatwa*, 40 F.4th 666, 685 (D.C. Cir. 2022) (upholding the admission of summary testimony by an FBI forensic accountant and finding harmless error in admission of another agent's summary testimony) (internal citations and punctuation omitted).[3]

Courts routinely permit non-experts to summarize voluminous evidence, pursuant to Federal Rule of Evidence 1006, when the "task require[s] only everyday reasoning rather than

---

[3] In the *Abou-Khatwa* decision, the D.C. Circuit held that when a summary witness testifies, "this circuit requires a limiting instruction advising that the testimony 'is only an aid in evaluating evidence.'" 40 F.4th at 688 (*quoting Lemire*, 720 F.2d at 1348 (D.C. Cir. 1983). Such a limiting instruction should be included with Mr. Carocci's proposed summary testimony.

specialized knowledge" and "results from a process of reasoning familiar in everyday life, whereas

an expert's testimony results from a process of reasoning which can be mastered only by specialists

in the field."  *United States v. Faulkenberry*, 614 F.3d 573, 588 (6th Cir. 2010) (permitting the

testimony of a witness who presented summary evidence regarding executive compensation and

the amount of advances wired to certain entities in which the defendant had an ownership interest).

This truism is reflected by the variety of non-expert summary witnesses permitted by the D.C.

Circuit.[4]  *See Abou-Khatwa*, 40 F.4th 666 at 687 (upholding the testimony of a forensic accountant

in a healthcare fraud prosecution); *Cooper*, 949 F.3d at 750 (D.C. Cir. 2020) (upholding lengthy

summary witness testimony by an IRS agent that "dealt with extensive and detailed charts listing

bank records, tax returns, refund checks, and more connecting the defendants with the tax fraud"

and finding any alleged error from the witness straying beyond the evidence in the charts "quite

minor"); *United States v. Weaver*, 281 F.3d 228, 231 (D.C. Cir. 2002) (upholding postal auditor's

"routine computations and culling through of documents" to estimate the minimum amount of cash

received daily and to compare that minimum amount to the close-out logs as permissible summary

---

[4] In a range of settings involving more technical and complicated subject areas than the standard operations of the U.S. equities markets, courts have regularly found testimony such as that which is proposed here is within the ambit of Federal Rule of Evidence 701 and did not require an expert designation. *See, e.g., Ryan Dev. Co., L.C. v. Ind. Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013) (determining that the district court reasonably concluded that accountant witnesses could offer lay testimony given that the accountants "used basic arithmetic, personal experience, and no outside expert reports in calculating lost income and other claims for coverage"); *United States v. Thompson*, 393 F. App'x 852, 858 (3d Cir. 2010) (permitting a witness "trained in, experienced in, and [who] had verified the functioning of GPS devices" to testify as a lay witness about GPS technology); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005) ("Taking a simple average ... though technically a statistical determination, is not so complex a task that litigants need to hire experts in order to deem the evidence trustworthy."); *Depalma v. Scotts Co., LLC*, Civ. No. 13-7740, 2019 WL 2417706, at *7 (D.N.J. June 10, 2019) ("The proponent ... has gained personal familiarity with the underlying data furnished by [the defendant]; the underlying data would be admissible in evidence; and the calculations, which involve little more than arithmetic, are within the ken of a lay person.")

witness testimony); *see also Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 636 F. Supp. 3d 144, 161 (D.D.C. 2022) (finding no error in having a paid outside witness present summary evidence and read non-voluminous records into evidence as if a party "want[s] to pay [the witness] to do work that otherwise could be done by a paralegal or any other witness, that is their choice").

## III.   ARGUMENT

### A.  Mr. Carocci's Testimony Should be Admitted as That of a Summary Fact Witness

#### 1.  *The Case Law Is Clear that Non-Expert Summary Witnesses Are Permissible to Testify Regarding Basic Securities Concepts and Facts*

Mr. Carocci will testify about and summarize facts based on admissible evidence stopping far short from answering any questions of causation or correlation and properly leaving those issues for the jury to decide, as necessary.  Mr. Carocci will not offer an opinion on any causal relationships between the defendant's public statements and DECN's stock price or volume. Causation is not an element of any of the crimes charged in the indictment and as such, will not be a topic about which Mr. Carocci (or any other government witness) testifies.  Mr. Carocci's proposed testimony simply is not opinion testimony[5] and will instead be used to aid the jury by laying out the chronology of the defendant's press releases and DECN's stock price and volume against the backdrop of the broader market and other publicly-available news about DECN.

---

[5] The defendant cites the government's prior disclosures representing that Mr. Carocci would testify as an expert.  That history, however, weighs in support of the government's position.  Upon evaluating the potential testimony that the government intends to elicit from Mr. Carocci, it became clear the government was not going to seek, and Mr. Carocci was not going to offer, opinion testimony.  Our most recent disclosure properly notified the defendant that no opinion testimony was forthcoming and instead the testimony of Mr. Carocci would be limited to that of a summary witness.  The government does reserve the right to offer Mr. Carocci as an expert in the event he was not permitted to be a non-expert summary witness.

The defendant's primary argument for excluding Mr. Carocci's summary testimony is that it is purportedly based on scientific, technical, and other specialized knowledge.[6]  However, the case law makes clear that summary testimony about press releases, stock price and volume only require the process of reasoning familiar in everyday life and do not require specialized knowledge. The Third Circuit considered a similar challenge to the one the defendant makes here concerning the SEC's non-expert summary witness in a market manipulation securities enforcement case and found the testimony was properly admitted.  *United States v. Georgiou*, 777 F.3d 125, 143–44 (3d Cir. 2015).  In *Gergiou*, an SEC employee, offered as a non-expert lay witness, offered "[trial] testimony and accompanying charts concerning the manipulative trading activity charged in the indictment and explained the relevance of his trading analysis to the other evidence presented in the case."  *Id.* at 144.  The Third Circuit rejected the notion that comparisons of stock quantities and prices required scientific, technical, or other specialized knowledge "and thus [found such testimony] was squarely within the scope of Rule 701."  *Id*. at 143-44.  This type of factual information and summaries based on voluminous trading records personally reviewed by the witness in his capacity as an SEC employee did not circumvent Rule 702, but was wholly within its bounds.  *Id*.  (citing *SEC v. Treadway*, 430 F.Supp.2d 293, 321–22 (S.D.N.Y. 2006) (rejecting challenge to admissibility of testimony of SEC witness under Rule 701 because witness was "simply an SEC employee providing his view of the facts as a summary of certain evidence and

---

[6] The defendant cites the government's expert disclosure's reference that "Mr. Carocci's testimony will be based on his training and experience in securities market regulation and compliance, which he has obtained in several decades of employment by FINRA, the National Association of Securities Dealers, and at private financial institutions" as an admission that Mr. Carocci's proposed summary testimony would be based on those qualifications.  That is not so.  The language the defendant references is part of the government's argument in the alternative should Mr. Carocci need to be qualified as an expert in order to testify.  The defendant makes a circular argument and misleadingly cites the government's disclosure *if* Mr. Carocci must testify as an expert in order to argue that he *must* testify as an expert.

as an aid to the Court," and that witness's declaration "was more akin to a summary document than an expert analysis")); *see also United States v. Levy*, No. S5 11 CR 62 PAC, 2013 WL 815915, at *1 (S.D.N.Y. Mar. 5, 2013) (rejecting an attempt to exclude under Rules 701 and 702 testimony by a FINRA CPAG summary witness summarizing voluminous records of price and trading volume information of the stocks at issue, trading records of certain brokerage accounts at issue, and business records maintained by FINRA).

In another illustrative example permitting nearly identical testimony by a FINRA CPAG witness in an insider trading prosecution, the government offered a non-expert summary witness to testify about summary charts she prepared, and to define and explain common terms found in the documents she summarized.  *See United States v. Afriyie*, 16-cr-377, Dkt. 267-1 (S.D.N.Y. Jan. 12, 2017) [Exhibit B].  That witness did not offer an opinion concerning any causal relationship between press releases and stock price reaction and her testimony was based on brokerage, records, press releases, and publicly-available data regarding the price and trading volume of the relevant securities.  *Id.*  The court permitted the testimony, finding it was appropriate for a FINRA witness to testify as to the rise in a stock price and the public announcement of a merger and "merely put those two points in time together and leave it to counsel to argue what is pretty obvious."  *Id.* at 40.  The court rejected the notion that the witness needed to be certified as an expert and found it appropriate for the government to choose a summary witness who "lives in the space and is more articulate with the terminology."  *Id.* at 42-43 ("Look, I would rather have Joe Torre testify about home runs and RBIs than the coach of the Knicks. Doesn't […] mean it's expertise, right?").  The court concluded that while the background testimony and summary exhibits offered did not require specialized knowledge, it aided the truth-seeking process to have a witness "for whom the words don't stumble out of the mouth but can speak with some level of articulation" because the case

involved "a complicated area of the world."  *Id.* at 43, 46 ("There's nothing that says the government has to choose the minimally qualified person in terms of their verbal skills or familiarity with the area as long as the content isn't expert testimony.  If I was either of you I would want someone familiar with the terms.").

Moreover, at least two district courts within the last year have permitted Mr. Carocci to provided similar summary and background testimony without being certified as an expert.  *See United States v. Goel*, 1:22-cr-396 (S.D.N.Y. 2023); *United States v. Buyer*, 1:22-cr-397 (S.D.N.Y. 2023).  This pattern reflects that non-expert summary testimony by Mr. Carocci is commonplace in federal securities prosecutions and regularly permitted because it aids the jury's fact finding process, allows for an efficient and articulate offering of common background terms by a competent witness, and allows admissible facts to be clearly laid out for the jury to interpret without Mr. Carocci offering his own opinions on that evidence.

### 2. Mr. Carocci's Proposed Testimony Concerning Other Market News Related to DECN Should Be Allowed

Similarly, the anticipated testimony from Mr. Carocci that there was no other news or corporate events related to DECN in connection with the dates of DECN's press releases is permissible evidence to be introduced by a non-expert summary witness.  As an initial matter, the testimony will be based on Mr. Carocci's personal knowledge in checking widely accepted market sources, *i.e.* the Bloomberg terminal, to determine if there was other news related to DECN published on the dates in question.  Moreover, non-expert summary witnesses have regularly been permitted to testify as to the absence of records from otherwise voluminous data.  *See  Honeywell Int'l Inc.*, 337 F.R.D. 456, 460 (finding testimony that there were no invoices reflecting a particular purchase was proper summary of voluminous records by a summary witness);  *Abou-Khatwa*, 40 F.4th at 686–87 (finding "basic inferences, resting on knowledge that [the summary witness] gained during

the course of her examination of CareFirst records, fall within the heartland of proper summary testimony"). Mr. Carocci will not offer any view or inference as to whether or not there was a causal relationship between any market news or press release and DECN's stock price or volume, instead his testimony will be limited to his personal knowledge as to whether there was any other published news concerning DECN in the markets on the relevant dates. The defendant will have his opportunity to cross examine Mr. Carocci on how he derived this personal knowledge and the jury will be positioned to determine what weight to give it; but its admissibility is not an issue.

### 3. The Defendant's Cases Do Not Support the Exclusion of Mr. Carocci's Proposed Testimony

The cases cited by the defendant are inapposite and do not support a finding that Mr. Carocci will provide expert testimony.[7] The defendant's reliance on *Picard v. Sage Realty*, 2021 WL 5926059, at *3-4 (S.D.N.Y. Dec. 15, 2021) is misplaced. That case focused on whether the defendant complied with the civil expert disclosure rules, and involved "various calculations" that are inapplicable and not proposed here. In any event, the court did <u>not</u> exclude the evidence pre-trial.

The defendant also misstates the holding in *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 77 (D.D.C. 2007). There the court was not asked to, and did not, find that any of the topics Mr. Carocci will testify about required expert testimony. In *Johnson*, the witness was a CPA and offered to give

---

[7] In a footnote, the defendant references *United States v. Moore*, 651 F.3d 30, 60 (D.C. Cir. 2011) for the proposition that non-expert summary witnesses are disfavored. (Def.'s Mot. at 5). However, the proposed testimony by Mr. Carocci tracks what the D.C. Circuit has outlined as permissible in *Moore* and its progeny. *Id.* at 60-61 (discussing that a summary witness may "be able to provide relevant background information as to the investigation's duration and scope or the methods of surveillance, based on personal knowledge" or "may describe a complicated government program in terms that do not address witness credibility" or otherwise offer an opinion); *see also United States v. Miller*, 738 F.3d 361, 370–71 (D.C. Cir. 2013) (discussing the permissible uses of law enforcement summary witnesses after *Moore*).

expert opinion testimony, nearly all of which was permitted by the district court.  Moreover, the proposed industry practice testimony did not deal with general market concepts (like those covered by Mr. Carocci's proposed testimony), but rather complex accounting concepts and their application, such as the technical determination of how and when to record and report revenue using GAAP principles.  Nothing in the proffered testimony of Mr. Carocci even brushes up against such a specialized rule regime nor requires a similar exercise of applying facts to such rules.

In another case relied upon by the defendant, *SEC v. Big Apple Consulting USA, Inc.*, No. 6:09-CV-1963-ORL-28, 2011 WL 3753581, at *4 (M.D. Fla. Aug. 25, 2011), the defendant conceded that the expert in question <u>could</u> testify as a summary witness and the court's findings were in the context of a proposed expert opinion as to whether boiler rooms created demand for a certain stock.

The remaining cases cited by the defendant concern substantially more complicated topics than those to be covered by Mr. Carocci such as asset-based lending in the hedge fund industry[8] and trust receipts in the context of an international import/export commercial transaction.[9]

---

[8] *SEC v. Quan*, No. CIV. 11-723 ADM/JSM, 2013 WL 5566252 (D. Minn. Oct. 8, 2013) *aff'd sub nom. United States Sec. & Exch. Comm'n v. Quan*, 870 F.3d 754 (8th Cir. 2017).

[9] *Bank of China v. NMB, LLC*, 359 F.3d 171 (2d Cir. 2004).  Moreover, in *Bank of China* the lay witness's testimony impermissibly drew conclusions about the defendant's guilt and opined on the ultimate issue in the case. *Id.* at 180 and n.10.  Nonetheless, the Second Circuit reversed, not because of the expert testimony issue, but because of an error in the jury instructions. *Id.* at 180, 183 ("[B]ecause we find that the jury verdict must be reversed because of the error in the jury instructions, we need not consider whether the District Court's evidentiary error was harmless.").  Additionally, at least one district court has expressly found *Bank of China* inapplicable to the testimony of a FINRA CPAG witness testifying as a summary witness. *Levy*, 2013 WL 815915, at *1 (finding that testimony of general securities terms incorporated in the summary exhibits differed from the "more complex banking terms" involved in *Bank of China*).

\*\*\*

As Mr. Carocci's proposed testimony—providing background on basic concepts and principles in securities and summarizing the contents of admitted press release and publicly-available market information—does not rely on a process of reasoning which can be mastered only by specialists in the field, is regularly admitted by federal courts to aid in the jury's understanding of the issues, and will not involve opinion testimony, it should plainly be admitted as non-expert summary witness testimony.

### B. If the Proposed Testimony was Deemed Expert Opinion, Mr. Carocci Should be Certified as an Expert Under FRE 702

The defendant's motion largely focuses on why Mr. Carocci's testimony should not be admitted as expert testimony because the defendant does not agree with the principles and methods it understands Mr. Carocci to be using in reaching an opinion on the causal relationship between DECN's press releases and its stock price and volume. But Mr. Carocci will not be providing opinions, including about causal relationships. Mr. Carocci will testify generally about the securities markets and regulations, and laying out a chronology of press releases, stock price, volume, and market data, but will not be opining about materiality or offering legal conclusions. As such, there is no "specific analysis and methodology" to challenge; testifying about historical and otherwise admitted market movements do not require any sort of methodology, they are summary factual observations. Mr. Carocci will simply not be testifying as to his causal opinion between the various items in question and therefore the defendant's attacks on the use of the S&P 500 Index and lack of differential effect of the pandemic are irrelevant to the issue at hand. This chronological testimony will provide the jury with evidence as to one of the defendant's motivations in issuing false and misleading press releases and clearly lay out the pattern of

DECN's stock price movements during the relevant period—important context for the jury in evaluating the nature of the defendant's scheme and the context in which it occurred.

Should the Court determine that Mr. Carocci need to testify as an expert, he clearly possesses the proper qualifications to testify as to the subject matter of this case.  In considering the background topics and securities practices that he will testify to as well as the rather straightforward market information he will summarize, it is evident: Mr. Carocci is eminently qualified.  Since 1997, he has held a variety of in-house legal and self-regulatory agency roles that have required daily intimacy with the U.S. equity markets, their operations, the regulatory and statutory regimes they operate in, and the norms of public company issuers, and the basic interplay between company announcements and their stocks.  In these roles, Mr. Carocci has obtained specialized training and experience in the securities markets and the regulation of these markets and securities professionals.  He himself has ensured compliance from within firms as a compliance professional and also worked as on outside investigator and examiner inspecting firms as a watchdog.  He has trained FBI agents and federal prosecutors on the securities, and worked on many criminal cases based on his specialty, attended industry and law enforcement conferences concerning fraudulent schemes and investigative techniques, and has testified in federal criminal trials.  And Mr. Carocci's very job is to testify in criminal securities prosecutions[10] involving market manipulation and other crimes on behalf of the securities industry's own self-regulatory organization.[11]

---

[10] For example, Mr. Carocci has been certified as an expert in a number of recent federal criminal trials.  *See, e.g., United States v. Schena*, 20-cr-00425 EJD (N.D. Cal. 2022); *United States v. United Development Funding III LP et al*, 4:21cr289 (N.D.T.X. 2022); *United States v. Hackett et al*, 3:18-cr-3072 (S.D. Cal. 2021); *United States v. Petrossi*, 1:17-cr-192 (M.D. Pa. 2018); *Unites States v. Diaz*, (M.D. Pa. 2020); *United States v. Korchevsky et al*, 1:15-cr-381 (E.D.N.Y. 2018); *United States v. Carton*, 1:17-cr-680 (S.D.N.Y. 2018).

[11] FINRA "is authorized by Congress to protect America's investors by making sure the broker-dealer industry operates fairly and honestly. [FINRA] oversee[s] more than 624,000 brokers across

This testimony is admissible under Federal Rule of Evidence 702.  Mr. Carocci is clearly "qualified as an expert by knowledge, skill, experience, training, or education." *Id.*  Further, in light of the actual testimony anticipated from Mr. Carocci at trial, his presentation of "technical, or other specialized knowledge will assist the trier of fact to understand the evidence" in this case. *Id.*  Here, Mr. Carocci will not offer an opinion about the propriety of defendant's actions or conduct any causal analysis.  Rather, he will share with the jury basic concepts surrounding the securities markets and regulation.  This will be soundly rooted in his education and many years of practice and experience in the fields of securities and securities regulation. As such, his testimony necessarily will be based on sufficient facts and data, will be the product of reliable principles and methods, and will reliably apply those principles and methods to the facts of this case.

While the defendant attempts to detract from Mr. Carocci's obvious qualifications and history of being certified as an expert to testify in federal criminal trials by suggesting that he may not be qualified in this case, that argument lacks merit.  The proposed testimony here falls squarely within the ambit of what Mr. Carocci has testified to in prior cases and reflects a core area of his expertise: the basic functions and guardrails of the U.S. securities markets, the basic interplay of company news and public company stock price, and the basic chronology of a single company's press releases largely over a one month period laid against the backdrop of that company's stock price and volume as well as the performance of the S&P 500 Index.

While the government maintains that none of Mr. Carocci's anticipated testimony need be admitted under Rule 702, it certainly satisfies the requirements.  Because Mr. Carocci is amply qualified to provide expert testimony on the discrete topics and events outlined in the government's

---

the country—and analyze billions of daily market events."   FINRA: About FINRA, https://www.finra.org/about (last visited October 4, 2023).

disclosure and this brief, this Court should rule that Mr. Carocci's testimony is admissible under Rule 702 as necessary.

### C. The Proposed Testimony Is Highly Relevant and Poses No Risk of Confusion for the Jury

The defendant argues that Mr. Carocci's testimony is irrelevant because the defendant does not think the S&P 500 Index is the right benchmark for comparison to DECN's stock price movement and the convertible notes that benefited the defendant are not explicitly referenced in the indictment.   Neither argument has merit.   Rule 401 governs relevancy and states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  As to the S&P 500 Index, Mr. Carocci's proposed testimony satisfies both prongs.   The directional movement of the standard bearer index for the U.S. securities markets on dates when the defendant issued false and misleading press releases—and DECN's stock price moved directionally inconsistent with the broader market—provides ample opportunity for the jury to evaluate whether the defendant had a financial or other motive to issue such press releases.   The timing of the convertible notes similarly speaks directly to the defendant's financial motive to commit the crime charged.   Evidence of financial motive is relevant in a criminal fraud case whether or not the particular motive is described in the indictment, including when it is not an element of the crime charged.  *See United States v. Sanford Ltd.*, 878 F. Supp. 2d 137, 145 (D.D.C. 2012) ("Although [the defendant] is correct that monetary proceeds are not an element of any offense charged, the government has demonstrated that at least some evidence of monetary proceeds will be relevant because it is probative of the incentives and priorities of the defendants and, thus, will have a tendency to make it more or less probable that the defendants committed the charged offenses."). Additionally, the defendant's objections to two specific areas of proposed testimony certainly do

not justify the defendant's extreme proposed remedy of wholesale exclusion of the witness's testimony.  (Def.'s Mot. at 11.)

The defendant's final argument is that Mr. Carocci's testimony concerning the S&P 500 Index should be excluded under Federal Rule of Evidence 403 because it is irrelevant and "its risk of confusing the jury as to the appropriate legal standards."  Federal Rule of Evidence 403 enables the Court to "exclude relevant evidence if its probative value is **substantially outweighed** by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  (emphasis added).  As an initial matter, the rule contemplates that the evidence in question is relevant, so the defendant's repetition of his irrelevancy argument is misplaced.  Moreover, the defendant ignores the controlling test, does not even reference the substantially outweighs prong, only offers a cursory basis for his exclusion without explaining what "appropriate legal standards" he believes Mr. Carocci will reference, and only offers irrelevance to explain how the testimony will purportedly confuse the jury.  Finally, the defendant highlights the standard for exclusion of expert testimony under Rule 403, but fails to address that the government is offering Mr. Carocci as a non-expert summary witness.

## IV.    Conclusion

For these reasons, the government respectfully requests that the Court deny the Defendant's

Motion to Exclude the Testimony and Opinions of Thomas Carocci (Dkt. 142).


Respectfully submitted,

GLENN S. LEON
CHIEF, FRAUD SECTION
Criminal Division, U.S. Department of Justice

*/s Matt Reilly*
CHRISTOPHER FENTON
KATE T. MCCARTHY
MATTHEW REILLY
Trial Attorneys
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 320-8523
Fax: (202) 514-0152
Matthew.Reilly2@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on October 10, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

_/s/ Matt Reilly_
Matthew Reilly
Trial Attorney