# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | **CRIMINAL NO. 20-CR-278-TNM** |
| v. | ) | |
| | ) | |
| KEITH BERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF THOMAS CAROCCI

### I.     INTRODUCTION

Despite its representation to this Court, the government's "expert disclosure" for "non-expert summary witness" Thomas Carocci anticipates testimony that is far from "simple and commonplace."  Opp. (ECF No. 144) at 1.  Rather, the government asks this Court to bless an overly expansive reading of Federal Rule of Evidence 1006, which has no grounding in precedent, and allow Carocci to offer testimony at trial that is unmoored to the requirements of Federal Rule of Evidence 702.  This Court should decline that invitation.

With limited exceptions, Carocci's disclosed testimony clearly is subject to the requirements of Federal Rule of Evidence 702.  In particular, the government's disclosure anticipates that Carocci will offer a bifurcated presentation of two distinct categories of testimony at trial:  "background testimony" and "summary fact witness" testimony.[1]  The proposed

---

[1]  *See* Sept. 4, 2023 Discl. (ECF No. 144.1) at 2 (summarizing "background testimony" which the government asserts is not subject to Federal Rule of Evidence 702); *see id*. at 3 (summarizing purported "summary fact witness" testimony pursuant to Federal Rule of Evidence 1006); *see id.* at 4 ("[W]e anticipate the possibility of dividing Mr. Carocci's testimony into two distinct segments, with Mr. Carocci providing an overview of the securities markets towards the beginning of the government's case-in-chief, before reviewing relevant trading later in the government's case-in chief.").

"background testimony" encompasses a wide range of topics requiring specialized knowledge, including some topics which have no nexus to the purported summary evidence that Carocci intends to offer pursuant to Rule 1006.[2]  The disclosed "summary fact witness" testimony, extends far beyond merely summarizing "voluminous writings" and invades the province of experts.  In particular, the government's disclosure of "summary fact witness" testimony adumbrates an event study, albeit one that would fail to meet Rule 702's reliability standard and also should be excluded under Federal Rule of Evidence 403.  *See* Mot. to Exclude (ECF No. 142) at 7–9, 11–12.

This Court should ensure that Carocci's testimony conforms to the requirements of the Federal Rules of Evidence.  For the reasons discussed below, Carocci's "summary fact witness" testimony should be limited to describing summary charts of DECN's press releases, describing summary charts of DECN's stock price and volume movements (including any terms incorporated into those charts), and discussing how he compiled that information.  Carocci's other disclosed "summary fact witness" testimony should be excluded because it does not meet the requirements for expert testimony under Federal Rule of Evidence 702 and because its probative value would be substantially outweighed by the danger of unfair prejudice, misleading the jury, confusing the issues, and wasting time.  In addition, this Court should preclude Carocci from offering "background testimony" regarding "the general effects of news reported by a publicly traded company on its stock price and trading volume," any determinants of stock price, and any relationship between stock price movement and trading volume or liquidity because Carocci is not qualified to offer testimony regarding these topics.

---

[2] *See* Sept. 4, 2023 Discl. at 2 (disclosing "background testimony" that includes, among other topics, "FINRA's and the SEC's roles in regulating the trading of securities of publicly traded companies" and "disclosure requirements, regulations, and forms of publicly traded companies registered with the SEC, and the general duties of officers of publicly traded companies").

## II.    LEGAL STANDARD

Federal Rule of Evidence 1006 permits a proponent to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. For such a summary to be admissible, "the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient; the documents themselves must be admissible; the documents must be made reasonably available for inspection and copying; the summary must be accurate and nonprejudicial; and the witness who prepared the summary should introduce it." *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) (internal quotation marks and citations omitted).

"[T]here are strict limits on the role of summary witnesses." *United States v. Abou-Khatwa*, 40 F.4th 666, 685 (D.C. Cir. 2022). Although "a non-expert summary witness can help the jury organize and evaluate [admissible] evidence[,]" "there are obvious dangers posed by the summarization of evidence" and "the pervasiveness of these dangers requires that [the court] review the use of a summary witness closely." *United States v. Lemire*, 720 F.2d 1327, 1348 (D.C. Cir. 1983). In particular, summary testimony is not "additional evidence" but is "just a compilation of existing evidence into a manageable format." *Abou-Khatwa*, 40 F.4th at 685 (internal quotation marks and citations omitted). Accordingly, a summary witness "may not usurp the jury's fact-finding function by summarizing or describing . . . what inferences should be drawn from that evidence." *United States v. Cooper*, 949 F.3d 744, 750 (D.C. Cir. 2020); *see also Lemire*, 720 F.2d at 1350 (cautioning that summary testimony should not "draw controversial inferences"). Furthermore, summary testimony may not be a vehicle for the introduction of otherwise inadmissible evidence. *See Lemire*, 720 F.2d at 1349.

The admissibility of testimony that is based on specialized knowledge derived from previous professional experience, as opposed to particularized knowledge of an investigation, is

governed by Federal Rule of Evidence 702. *See United States v. Miller*, 738 F.3d 361, 371–72 (D.C. Cir. 2013) ("[K]nowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of 701") (internal quotation marks and citation omitted); Fed. R. Evid. 701 Committee Notes on Rules —2000 Amendment ("[A] witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

A witness offering testimony based on specialized knowledge is not immune from the requirements of Federal Rule of Evidence 702 merely because he does not offer "an opinion." *See* Fed. R. Evid. 702 ("A witness who is qualified as an expert . . . may testify in the form of an opinion *or otherwise* . . .") (emphasis added); Fed. R. Evid. 702 Notes of Advisory Committee on Proposed Rules ("The assumption [that experts testify only in the form of opinions] is logically unfounded."). When "an expert educate[s] the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case[,]" such as when an expert "instruct[s] the factfinder . . . on how financial markets respond to corporate reports, without ever knowing about or trying to tie their testimony to the facts of the case," Rule 702 requires for such generalized testimony that: "(1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case." Fed R. Evid. 702 Committee Notes on Rules — 2000 Amendment.

However, if an expert witness purports to tie his testimony to the facts of the case, this application must be conducted reliably. *See id.*; *see also* Mot. to Exclude at 3. "*[A]ny* step that renders the analysis unreliable . . . *renders the expert's testimony inadmissible. This is true whether*

*the step completely changes a reliable methodology or merely misapplies that methodology*." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d. Cir. 1994) (emphasis original).

## III.   ARGUMENT

Although the government asserts in its opposition that Carocci's proposed testimony is "simple and commonplace" and will consist only of "introduc[ing] basic securities concepts ('Securities 101'), summariz[ing] otherwise admissible evidence, and authenticat[ing] summary exhibits he has prepared," Opp. at 1, the text of the government's disclosure provides additional detail that belies this characterization.  As described below, the vast majority of the disclosed testimony relies on specialized knowledge and thus is properly subject to the admissibility requirements of Rule 702.

Further, elements of Carocci's proposed "summary fact witness" testimony erroneously imply that he has performed a valid event study.  This testimony, which appears aimed at leading the jury to conclude that "DECN's stock price moved directionally inconsistent with the broader market," Opp. at 16, is not based on a reliable methodology.  In addition, the probative value of such testimony would be substantially outweighed by the danger of unfair prejudice, misleading the jury, confusing the issues, and wasting time.  Thus, it should be excluded on both of those bases even if this Court holds that Carocci's other disclosed testimony is admissible.

### A.   Carocci's Disclosed Testimony Exceeds the Bounds of Permissible Summary Witness Testimony

In its opposition, the government argues that *all* of Carocci's proposed testimony is "non-expert summary witness" testimony contemplated by Federal Rule of Evidence 1006.  *See* Opp. at 2, 7.  *But see* Sept. 4, 2023 Discl. at 3 ("*Much* of Mr. Carocci's testimony will be that of a summary fact witness") (emphasis added).  However, both Carocci's disclosed "summary fact witness"

testimony and "background testimony" are based on specialized knowledge and thus extends
beyond what a lay witness can testify about under the Federal Rules of Evidence.

> **1.    *Carocci's Purported "Summary Fact Witness" Testimony Is Not Merely
> a Compilation of Existing Evidence into a Manageable Format***

Carocci's anticipated "summary fact witness" testimony evades the "strict limits" on the
role of summary witnesses and is not merely a "compilation of existing evidence into a manageable
format." *Abou-Khatwa*, 40 F.4th at 685.  Although the government insists in its opposition that
"Carocci will testify about and summarize facts based on admissible evidence," the disclosed
testimony does not merely "lay[] out the chronology of the defendant's press releases and DECN's
stock price and volume against the backdrop of the broader market and other publicly-available
news about DECN."  Opp. at 7.  In its disclosure, the government states that Carocci may testify
to all of the following as a "summary fact witness," pursuant to Federal Rule of Evidence 1006:

- "how . . . stock price movement **compared** with the movement of the market as a whole as measured by the S&P 500 Index"

- "whether there was any other news or events prior to the press release that **would have impacted** the stock price change on the day of or after the announcement"

- "**the effect of market-moving events** such as press releases, filings, or any other public statements made by DECN **on stock prices**"

- "that the Decision Diagnostics **press releases** . . . **precipitated increases in** Decision Diagnostics **stock price and created elevated trading volume** over previous months"

- "based on his review and **analysis,** there were **no other news or corporate events** related to Decision Diagnostics during the relevant period **that would have impacted the stock price change**"

Sept. 4, 2023 Discl. at 3 (emphasis added).  The D.C. Circuit has "repeatedly warned" that
summary witnesses should not "draw controversial inferences."  *Abou-Khatwa*, 40 F.4th at 685;
*see also United States v. Honeywell Int'l Inc.*, 337 F.R.D. 456, 460 (D.D.C. 2020) (striking

6

inference relying on two sources of summary evidence).[3]   Carocci's disclosed testimony will provide such inferences free from the evidentiary guardrails of Rule 702.

To be sure, non-expert summary witnesses can permissibly provide "routine computations" that summarize admissible evidence. *Abou-Khatwa*, 40 F.4th at 686.  However, the government cited to no authority that supports its broad reading of permissible summary witness testimony, which extends far beyond merely summarizing "voluminous writings."   For example, in *Honeywell*, the summary witness was permitted to multiply numbers provided in deposition testimony and in invoices produced during discovery to arrive at a profit estimate but was not permitted to offer conclusions. *See* 337 F.R.D. at 459.  Similarly, the testimony of both summary witnesses in *Weaver* involved "routine computations" and "the addition of known sources of income and known expenditures," and did not reference comparisons to overall market data or controversial inferences. *See United States v. Weaver*, 281 F.3d 228, 231 (D.C. Cir. 2002);[4] *see also Abou-Khatwa*, 40 F.4th at 685, 687 (finding that summary witness testimony pertaining to "basic calculations from information on the face" of invoices and bank records was permissible, but admitting testimony regarding inferences was error).  Finally, in *Cooper*, the D.C. Circuit did not deem it appropriate for a summary witness to "stray beyond a narrow summary of the evidence

---

[3] We understand from the government's opposition that "Mr. Carocci's [sic] will not testify to his opinion as to any causal effect or correlation between the press releases and reactions in either stock price or volume, nor will Mr. Carocci provide any views or conclusions as to what inferences the jury should draw about a comparison of DECN's stock price and volume and that of the S&P 500." Opp. at 4 n.2.  Further, "the government does not intend to elicit any expert opinion testimony from Mr. Carocci." *Id.* at 1.  This is clearly at odds with the language of the government's disclosure, which explicitly references "analysis," Sept. 4, 2023 Discl. at 3, and confirms that Carocci's "*opinions* will be based on data and information obtained from market data and research tools," *id.* at 4 (emphasis added).

[4] Although one summary witness in *Weaver*, a long-time member of the Postal Inspection Service, "concluded that someone must have stolen cash and replaced it with unprocessed out-of-town postage meter checks," the court observed that he "was an active participant in the investigation." *Weaver*, 281 F.3d at 231.

reflected in the charts" but rather found, on the facts of that case, that the defendants were not substantially prejudiced.  *See* 949 F.3d at 751–52.

The government's out-of-circuit authority is similarly unavailing.  In contrast to Carocci's proposed "summary fact witness" testimony—which includes comparing DECN's business records to larger market trends to support an inference regarding the causes of its stock price movements—the summary witness's proposed testimony in *Levy* was "directed *solely* towards explaining the information drawn from voluminous records" and the summary charts offered by the witness did not include "inferences" as to causality.  *United States v. Levy*, 2013 WL 815915, at *1 (S.D.N.Y. Mar. 5, 2013) (emphasis added); *see also United States v. Falkenberry*, 614 F.3d 573, 588 (6th Cir. 2010) (witness "presented summary evidence regarding the compensation . . . and the amount of advances wired to certain providers" but did not "offer any conclusions as to what the data meant").  In *Georgiou*, unlike in this case, the parties had entered into a pretrial stipulation that provided, among other things, the witness could testify as a "summary fact witness to explain the relevance of his trading analysis to the other evidence in the case."  *United States v. Georgiou*, 777 F.3d 125, 143 n.16 (3d Cir. 2015).  On appeal, the Third Circuit cited *both* Rule 701 and the parties' pretrial stipulation in holding that the district court did not abuse its discretion in admitting the SEC employee's testimony.  *Id.* at 144.  And in any event, the testimony involved "comparisons of stock quantities and prices" aimed at describing specific transactions as opposed to comparing an individual stock price trend to a market index.  *Id.*  Similarly, the summary witness in *United States v. Afriyie* did not rely on broader market data, but rather restricted her analysis to the two stocks at issue in the investigation.  *See* Jan. 12, 2017 Tr. (ECF No. 144.2) 33:4–34:2 (stating that analysis relied on brokerage records, bank account records, press releases, and data from Bloomberg regarding the price of stock, call options, and trading volumes for ADT and

XPO).   Thus, the government's authority is distinguishable; the scope of Carocci's proposed "summary fact witness" testimony extends beyond the government's cited precedent.

### 2.   Carocci's Proposed "Background Testimony" Is Expert Testimony Subject to the Requirements of Federal Rule of Evidence 702

The key determinant of whether testimony is subject to Rule 702's requirements is whether the testimony is based on "specialized knowledge."[5]  As relevant here, testimony that is based on specialized knowledge derived from previous professional experience, as opposed to particularized knowledge of an investigation, is governed by Federal Rule of Evidence 702.  *See Miller*, 738 F.3d at 371–72; *United States v. Bostick*, 791 F.3d 127, 146 (D.C. Cir. 2015) (Kavanaugh, J.) (stating that admission of statements by FBI agent regarding general investigative techniques as lay opinion testimony was error, but harmless).[6]

Despite the government's assertion in this particular case that Carocci's testimony is not subject to Rule 702,[7] Carocci's disclosed "background testimony" is not restricted to "basic

---

[5] *Compare* Fed. R. Evid. 702 (requiring that "the expert's scientific, technical or other specialized knowledge" help the trier of fact to understand the evidence or to determine a fact in issue), *with* Fed. R. Evid. 701(c) (requiring that opinions given by lay witnesses not be based on "scientific, technical, or other specialized knowledge").

[6] Further, Carocci's proposed background testimony is not free from Rule 702's requirements simply because the government asserts that Carocci will not offer "opinions."  *See* Opp. at 4 n.2. Expert testimony is not restricted to "opinions." "Opinions" as well as testimony intended "to educate the factfinder about general principles" that rely on specialized knowledge are properly within the ambit of Rule 702.  Fed. R. Evid. 702 Committee Notes on Rules —2000 Amendment; *see* Fed. R. Evid. 702 ("in the form of an opinion or *otherwise*") (emphasis added).

[7] The government's position that Carocci's proposed background testimony is not subject to Rule 702 is inconsistent with its prior treatment of Carocci.  *Compare* Opp. at 3 (stating that "a basic 'overview of the securities markets' [is] regularly provided by Mr. Carocci in federal market manipulation trials," citing *United States v. Schena*, 20-cr-00425-EJD (N.D. Cal. 2022)), *with* Opp. at 14, n.10 (stating that Carocci was "certified as an expert" in *Schena* without distinguishing why no such certification is required in the instant case).

securities concepts."[8]   In particular, the government's disclosure states that Carocci will offer testimony regarding such specialized topics as "FINRA's and the SEC's roles in regulating the trading of securities of publicly traded companies" as well as "disclosure requirements, regulations, and forms of publicly traded companies registered with the SEC, and the general duties of officers of publicly traded companies."  Sept. 4, 2023 Discl. at 2.  The government's disclosure also anticipates that, in the course of his testimony, Carocci will discuss securities concepts such as "materiality."   *Id.*  ("[C]orporate officers should not make any material misrepresentations or omissions to shareholders . . . Any statements made by the company that would be material to investors must be accurate and complete.").  Clearly, none of the above specialized knowledge could "result[] from a process of reasoning familiar in everyday life," as is required of lay testimony.  Fed. R. Evid. 701 Committee Notes on Rules — 2000 Amendment.

Carocci's proposed "background testimony" is inadmissible as lay opinion testimony, and thus, is subject to the requirements of Rule 702.  First, Carocci's proposed "background testimony" is not based on particularized knowledge that he derived from this investigation, but rather embraces securities market concepts that rely on specialized knowledge.  For example, understanding determinants of stock prices and knowing what constitutes a "material misrepresentation or omission" for purposes of securities regulation require specialized knowledge, which extends beyond any particularized knowledge that Carocci acquired during the

---

[8] The government mischaracterizes the following as "involving more technical and complicated subject areas than the standard operations of the U.S. equities markets."  Opp. at 6 n.4.  For example, *Ryan* involved accountants testifying about how they utilized numbers from records and a formula to calculate "lost income and insurance coverage."  *Ryan Dev. Co., L.C. v. Indiana Lumbermens Mut. Ins. Co.*, 711 F.3d 1165, 1170 (10th Cir. 2013).  *Thompson* involved allowing a lay witness to testify about the results of a GPS tracking device.  *United States v. Thompson*, 393 Fed. App'x. 852, 858 (3d Cir. 2010).  In *Bryant*, the lay witness simply took the average of 103 numbers.  *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005).  Lastly, *Depalma* involved plaintiff's counsel applying "little more than arithmetic" to data in generating a summary chart.  *Depalma v. Scotts Co.*, LLC, 2019 WL 2417706, at *2, 6–7 (D.N.J. June 10, 2019).

course of this investigation.  Second, Carocci's proposed "background testimony" extends well beyond topics necessary for understanding his proposed summary charts, and thus, does not solely "summarize other admissible evidence."  *See Levy*, 2013 WL 815915, at *1 (finding that a summary witness's proposed testimony was admissible because it was "directed solely towards explaining the information drawn from voluminous records that are otherwise properly admissible").  This means, despite the government's contention, that Carocci's proposed "background testimony" is subject to Rule 702's requirements for generalized expert testimony.

Applying Rule 702's standard, this Court should preclude Carocci from offering testimony regarding:  (1) "the general effects of news reported by a publicly traded company on its stock price and trading volume"; (2) any determinants of stock price; and (3) any relationship between stock price movement and trading volume or liquidity.  According to the government's disclosure, Carocci lacks any training or experience that would qualify him to speak to determinants of stock prices.  He possesses only an undergraduate degree in Finance and Economics, and it is unclear whether Carocci has acquired any training or professional experience relating to determinants of asset prices during the last 30 years.  His professional experience is limited to legal and compliance roles, and he has no professional economic experience.  *See* Mot. to Exclude at 9–10.  Because Carocci is not qualified, this Court should prevent Carocci from offering "background testimony" regarding these topics.

**B.    Elements of Carocci's Disclosed Testimony Erroneously Imply that He Has Performed a Valid Event Study and Should Be Excluded**

Even if this Court were to find Carocci qualified to offer expert testimony regarding the general effects of news on stock prices and trading volume, it should preclude Carocci from offering testimony that implies either that DECN's stock price performance was irregular or that press releases "precipitated increases" in DECN stock price.  Sept. 4, 2023 Discl. at 3.  For the

reasons discussed below and in our opening brief, this proposed testimony should be excluded because it both fails to meet the requirements of Rule 702 and meets the standard for exclusion under Rule 403.  *See* Mot. to Exclude at 7–9, 11.

"Given the difficulty inherent in proving the effect, if any, of a single news item on the price of a stock, many courts require" event studies in securities fraud cases.  *Bricklayers and Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 853 F. Supp. 2d 181, 186 (D. Mass. 2012), *aff'd*, 752 F.3d 82 (1st Cir. 2014).  An event study seeks to determine the impact of an event on a company's stock price (or other outcome of interest) by comparing the observed value of the stock price to a projection of what stock price would have been but for that event.  *See, e.g.*, *Strougo v. Barclays PLC*, 312 F.R.D. 307, 317 (S.D.N.Y. 2016).  Among other things, "an economist must control for confounding factors, i.e., other industry- or company-specific information released to the market unrelated to the alleged fraud" to conduct a proper event study.  *See Bricklayers*, 853 F. Supp. 2d at 190.  A failure to control for other industry-specific news in attempting to isolate a price effect renders an event study unreliable.  *See id.* at 191 (excluding event study as unreliable).

Elements of Carocci's disclosed "summary fact witness" testimony outline a similar endeavor.  In particular, the government proposes to allow Carocci to testify that "Decision Diagnostics stock price moves were not consistent with broader market movement in the S&P 500 Index and, that based on his review and analysis, there were no other news or corporate events related to Decision Diagnostics [aside from the summarized press releases] during the relevant period that would have impacted the stock price change."  Sept. 4, 2023 Discl. at 3.  However, the government's disclosure does not reveal any methodology that Carocci intends to apply to surmise this impact, even though "there is no great dissension in the financial econometric community

about how to conduct a proper event study." *Bricklayers*, 853 F. Supp. 2d at 186. "[A] subjective analysis without any methodological constraints does not satisfy the requirements of *Daubert*." *Bricklayers and Trowel Trades Int'l Pension Fund v. Credit Suisse Secs. (USA) LLC*, 752 F.3d 82, 95 (1st Cir. 2014). Further, Carocci's proposed use of only the S&P 500 Index[9] in tandem with his review of "news or corporate events related to Decision Diagnostics"—and his failure to even attempt to control for industry-specific factors—renders his analysis unreliable under Rule 702 and thus inadmissible. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 745; Mot. to Exclude at 7–9. Finally, Carocci lacks the "knowledge, skill, experience, training, or education" required by Rule 702 to offer testimony regarding the determination of price impacts, which requires sufficient expertise to select adequate controls, apply the appropriate econometric techniques, and interpret the resulting statistics. *See* Mot to Exclude at 9.

Carocci's testimony on these topics should also be excluded pursuant to Federal Rule of Evidence 403 because its probative value would be substantially outweighed by the danger of unfair prejudice, misleading the jury, confusing the issues, and wasting time. To combat the inference that DECN's performance was irregular and that this irregularity was attributable to the summarized press releases, the defense would be compelled to explain that DECN and the entities listed on the S&P 500 are dissimilar and that those dissimilarities better account for any disparate or outlier performance. But such an effort would require the admission of complex, hard-to-digest evidence regarding financial markets which would risk misleading the jury, confusing the issues, and wasting time. *See United States v. Hussain*, 2018 U.S. Dist. LEXIS 127288, at *82 (N.D. Cal. July 30, 2018) (excluding complex financial information because its admission "would have led

---

[9] Contrary to the language used by the government in its disclosure, the S&P 500 Index does not represent "the market as a whole." Sept. 4, 2023 Discl. at 3. The S&P 500 is an index of 500 leading companies and is far from comprehensive.

to a confusing and time-consuming mini-trial on an attempt to impeach on a collateral issue"). This Court should exclude Carocci's "event study" testimony.

## IV.    CONCLUSION

For the foregoing reasons and for the reasons articulated in our opening brief, this Court should enter an order explicitly limiting Carocci's "summary fact witness" testimony to the following topics:  describing summary charts of DECN's press releases, describing summary charts of DECN's stock price and volume movements (including any terms incorporated into those charts), and discussing how he compiled that information.  In addition, Carocci should be precluded from offering "background testimony" regarding:  (1) "the general effects of news reported by a publicly traded company on its stock price and trading volume"; (2) any determinants of stock price; and (3) any relationship between stock price movement and trading volume or liquidity

In the alternative, we ask that this Court set a *Daubert* hearing to determine whether the proposed testimony satisfies the requirements of Rule 702.

Dated: October 16, 2023                    Respectfully Submitted,

                                            */s/ Kevin B. Collins*
                                            Kevin B. Collins (Bar ID: 445305)
                                            Nicholas J. Xenakis (Bar ID: 90001123)
                                            Jose J. Ramos (*pro hac vice*)
                                            COVINGTON & BURLING LLP
                                            One CityCenter
                                            850 Tenth Street, NW
                                            Washington, DC 20001-4956

                                            Michelle Peterson (Bar ID: 438930)
                                            Assistant Federal Public Defender
                                            For the District of Columbia
                                            625 Indiana Avenue, N.W.
                                            Washington, DC 20004

                                            *Counsel for Keith Berman*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused copies of the foregoing to be transmitted to counsel

registered to receive electronic service.

Signed,

<u>*/s/ Kevin B. Collins*</u>
Kevin B. Collins (Bar ID: 445305)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-5598

*Counsel for Keith Berman*