UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | Criminal No. 1:20-cr-00278-TNM |
| **KEITH BERMAN** | |
| **Defendant.** | |

### UNITED STATES' RENEWED MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY OF DR. STUART WILLIAMS

The defendant previously claimed his expert, Dr. Stuart J. Williams, was prepared to testify at trial that it is theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood. Based on the defendant's representation, the Court permitted Dr. Williams to testify so that he may offer that opinion. However, when the Court ordered the defendant to provide more detail around the specifics of what Dr. Williams will say, the defendant revealed that Dr. Williams actually cannot testify that it is theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood. Instead, the defendant now seeks to elicit from Dr. Williams new and different opinions that are beyond the scope of what the Court has determined to permit. Dr. Williams' proposed testimony should be excluded in its entirety because: (i) he cannot testify that it is theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood; (ii) the other opinions that he can offer are irrelevant, confuse the issues, and will mislead the jury about the ultimate issues and the government's burden of proof; (iii) the defendant violated the Court's November 13, 2023 order; and (iv) the defendant continues to violate Rule 16.

**BACKGROUND**

The defendant's initial expert disclosures were patently deficient. The defendant disclosed only that Dr. Williams will testify as to:

> (a) the detection of viruses through impedance technology; (b) the scientific publications that are the basis for [DECN's] COVID-19 test kits; (c) the design features of DECN's COVID-19 test kits; (d) the design feasibility of DECN's COVID-19 test kits to detect the COVID-19 virus; and (e) the testing protocols and testing data that DECN generated as it developed its COVID-19 test kits.

(ECF 145-1.) The government could not prepare to cross-examine Dr. Williams because it did not know what he would actually say were he to take the witness stand. (*See* ECF 145 at 12-15.) After the defendant refused to comply with Rule 16 by supplementing his expert disclosures with the required information, the government moved to exclude Dr. Williams' proposed testimony. (*Id*.) The government also moved under Rules 401, 402 and 403 to exclude Dr. Williams' proposed testimony about the theoretical feasibility of the defendant's purported COVID-19 blood test. (ECF 145 at 7-11; ECF 148 at 4-8.)

The Court agreed the defendant had violated Rule 16 and the Court's July 6, 2023 order. (11/13/2023 Tr. at 108:10-14 ("Across the board, [the defendant's expert disclosures] … fail to describe the actual opinions the defendant expects to elicit at trial. Where they do explain what those opinions are, … they fail to explain the reasons and bases for them.").) The Court further agreed these violations are "prejudicial" to the government. (*Id*. at 109:6.) The Court declined to exclude Dr. Williams' proposed testimony about the theoretical feasibility of the defendant's purported COVID-19 blood test under Rule 401, finding that it was relevant (*id*. at 111:15-18; 113:16-23; 113:24-114:6), but sought to eliminate the prejudice caused by the defendant's violations by ordering him to serve "complete and accurate" supplemental expert disclosures on

2

the government by November 20, 2023 (*id.* at 110:4-10). The Court admonished that "[i]f the defendant's disclosures continue to be deficient, [the Court] would be open at that time to reviewing a renewed motion to exclude Dr. Williams on the grounds that the defendant has refused to comply with a court order and Rule 16." (*Id.*)

On November 20, 2023, the defendant served the supplemental expert disclosures ordered by the Court. (Exhibit 1.) The opinions the defendant now expects to elicit from Dr. Williams at trial are materially different from those set forth in his initial expert disclosures. (*Compare* 145-1 *with* Ex. 1.) Most importantly, Dr. Williams no longer proposes to testify that it is theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood. Instead Dr. Williams "will testify that, based on its design, DECN's COVID-19 test kit would be able to detect COVID-19 viruses from a controlled virus sample …, but if a complex biological fluid was used in DECN's COVID-19 test kit, the sample would need to be properly processed before being introduced to the sensing electrodes in order to prevent potential measurement error." (*Id.* at 9.) The government understands the reference to "a complex biological fluid" to mean "blood," and further understands this disclosure to mean that Dr. Williams believes it is not theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood.

Dr. Williams will also acknowledge that the defendant's test kit design could not be used to test for COVID-19 at-home (which is what the defendant falsely claimed he had developed). Specifically, Dr. Williams will explain that:

> the only element typical of traditional EIS systems that was not shown in DECN's design was the isolation and/or targeting of the virus itself. Many EIS systems use functionalized electrodes in order to bind the intended target to the surface of the sensing electrode. Dr. Williams will testify that if surface functionalization was used, the AC frequency range

would typically be less than 100 kHz in order to capture electrode surface reactions. However, Dr. Williams will note that there are challenges in incorporating such coatings with enough integrity for a mass manufactured at-home test.

(Ex. 1 at 9.)

The rest of Dr. Williams' proposed testimony concerns whether impedance could be used to create a general virus screening test that is not specific to COVID-19. (*See, e.g.*, Ex. 1 at 2-8.)

## ARGUMENT

### I. THE COURT SHOULD EXCLUDE THE PROPOSED EXPERT TESTIMONY BY DR. WILLIAMS UNDER FRE 401, 402 AND 403

The Court permitted Dr. Williams to testify that it is theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood. (11/13/2023 Tr. at 111:15-18; 113:16-23; 113:24-114:6.) However, it is now clear that Dr. Williams cannot actually testify that it is theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood. To the contrary, were Dr. Williams to take the witness stand, he would testify that it is *not* theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood – particularly in the type of at-home test that the defendant told investors he had developed in March 2020. (Ex. 1 at 9.) Based on this information – which was finally disclosed to the government for the first time on November 20, 2023 – the Court should exclude Dr. Williams' proposed testimony in its entirety.

Indeed, the rest of the opinions the defendant plans to elicit from Dr. Williams at trial are outside of the narrow scope of what the Court permitted. These other opinions are also not probative of any element of the crimes charged. And if these other opinions had any minimal relevance (which they do not), they would undoubtedly confuse the issues and mislead the jury.

For example, in contravention of the Court's order, the defendant plans to elicit Dr.

Williams' opinions that: (1) "viruses can be detected through the use of electrochemical impedance spectroscopy (EIS)"; and (2) "each of the three scientific publications that are the basis for Decision Diagnostic Corp.'s ("DECN") COVID-19 test kit provided a valid EIS technique for detecting viruses". (Ex. 1 at 2.) The defendant, however, is charged with lying to investors about creating a blood test that targeted COVID-19 specifically. (*See, e.g.*, Superseding Indictment (ECF 19) ¶¶ 13, 14.a, 18, 19, 20.) Whether the defendant thought it was theoretically possible to develop a general virus screening test is not probative of the defendant's knowledge and intent at the time that he told investors he had developed a COVID-19 screening test. To suggest otherwise would confuse the issues and mislead the jury to believe that the government has the burden of proving that it is not theoretically possible to use impedance to develop a general virus screening test.

The defendant also proposes to elicit Dr. Williams' opinion that "(3) DECN logically adopted, omitted, and augmented design features detailed in the three scientific publications when developing its COVID-19 test kit". (Ex. 1 at 2.) Whether the defendant logically adopted, omitted and augmented *some* of the design features detailed in the three scientific publications is not relevant because, as Dr. Williams admits elsewhere in his disclosure, the defendant's design did not include the most important feature: a workable means of isolating or targeting COVID-19. (*Id.* at 9 ("[T]he only element typical of traditional EIS systems that was not shown in DECN's design was the isolation and/or targeting of the virus itself.").) As such, this testimony would be outside the narrow scope that the Court allowed (namely, whether the defendant's test design presented a theoretically feasible means of detecting COVID-19 in blood) and should be excluded.

Finally, the Court should exclude any proposed testimony about three scholarly articles cited for the first time in the defendant's supplemental disclosure, namely: (i) V. Ong, A. Soleimani, et al., "Impedimetric sensing: An emerging tool for combating the COVID-19 pandemic," *Biosensors*, 2023, 204 (the "Ong Article"); (ii) S. Witt, A. Rogien, et al., "Boron doped diamond thin films for the electrochemical detection of SARS-CoV-2 S1 protein," *Diamond and Related Materials*, 2021, 108542 (the "Witt Article"); and (iii) Y. Zhao, H Gu, et al., "Accuracy improvement of electrochemical whole blood ketone sensor based on HCT compensation algorithm," *Electrophoresis*, 2020, 1446-1449 (the "Zhao Article"). These articles are not relevant to the defendant's knowledge and intent at the time he made the false and misleading statements alleged in the superseding indictment because they were not the basis for the defendant's test kit design for his purported COVID-19 blood test. In fact, two of the three articles (the Ong Article and the Witt Article) were not published until after the defendant was indicted and the defendant does not purport to have relied on the third (the Zhao Article).

## II. THE DEFENDANT'S SUPPLEMENTAL EXPERT DISCLOSURES FOR DR. WILLIAMS VIOLATE THE COURT'S NOVEMBER 13, 2023 ORDER AND RULE 16

To eliminate the unfair surprise arising from the deficiencies in the defendant's initial Rule 16 expert disclosures, the Court ordered the defendant to supplement his Rule 16 expert disclosures to provide the government with more information about Dr. Williams' opinion that it is theoretically possible to use the defendant's test kit design to detect COVID-19 in a finger-prick sample of blood. (11/13/2023 Tr. at 110:4-16.) Rather than comply with the Court's order and provide specifics about that opinion, the defendant has now disclosed that Dr. Williams will actually testify about something new and different. The defendant's 'bait and switch' tactics

6

warrant exclusion – particularly because this is the third time the defendant represented that he had evidence that his COVID-19 blood test worked (or could work) and, when required to provide more information to the Court, has demurred and substituted different evidence in its stead.[1]  His tactics have wasted a considerable amount of the government and the Court's time and resources, including by requiring briefing and argument about evidence that simply does not exist.  In addition, the defendant's belated disclosures of new and different opinions that he intends to elicit from Dr. Williams at trial is prejudicial to the government because the defendant waited until the eve of trial.

The defendant's supplemental expert disclosures also violate Rule 16 for at least two reasons.  First, the defendant's disclosures continue to be deficient.  Most of the information in the disclosure expounds about ancillary issues.  However, when it comes to the opinions that matter most, the defendant says little or nothing.  For example:

- The disclosure references terms and phrases like "clean sample," "heterogeneous sample," "complex sample," "complex liquid sample," and "complex biological fluid" without defining or otherwise explaining what they mean.  (*See generally* Ex. 1.)  Given the critical role these terms and phrases play in Dr. Williams' proposed testimony, they should be clearly defined – particularly if some of them refer to "blood."

- Dr. Williams will purportedly discuss at great length two scientific publications that studied the use of impedance to detect viruses using controlled samples in a laboratory – as opposed to a sample obtained from an actual patient at home.  (*See*

---

[1] The defendant first engaged in these 'bait and switch' tactics when he disclosed that he was planning to offer into evidence a tangible example of his COVID-19 blood test as "Exhibit N".  When required to produce the COVID-19 blood test in discovery, he demurred and instead produced a tangible example of his glucose test.  (*See* ECF 68; ECF 69; ECF 73; Jan. 3, 2022 Minute Order; ECF 76; ECF 77; Jan. 11, 2022 Hr'g Tr.; ECF 80; ECF 82; ECF 83.)  The second time the defendant engaged in these 'bait and switch' tactics was more recently when, in connection with Dr. Williams' proposed testimony, the defendant disclosed that Dr. Williams would be testifying about testing data for the COVID-19 blood test.  (ECF 148 at 2-4.)  However, at the pre-trial conference, when questioned by the Court, counsel for the defendant backtracked, stating "we're not going to have Dr. Williams testify about any testing. We've taken that off the table. Any testing data, all that is off the table.  (11/13/2023 Tr. at 86:22-24.)

>   Ex. 1 at 4-7 (citing and discussing R. Hatsuki, A. Honda, et al., "Nonlinear electrical impedance spectroscopy of viruses using very high electric fields created by nanogap electrodes," *Frontiers in Microbiology*, 2015, 6, 940; and D.P. Poenar, C. Iliescu, et al., "Label-free virus identification and characterization using electrochemical impedance spectroscopy," *Electrophoresis*, 2014, 35, 433-440.) Despite Dr. Williams' heavy reliance on these two particular scientific publications, the defendant omits Dr. Williams' specific opinions as to the propriety of relying on studies that involved controlled samples in a laboratory when the defendant's test design involved a finger-prick blood sample in an at-home test, and the reasons and bases for his opinions.
>
> - The disclosure states "Dr. Williams will note that there are challenges in incorporating such coatings [i.e. surface functionalization or functionalized electrodes] with enough integrity for a mass manufactured at-home test." (Ex. 1 at 9.) The defendant omits Dr. Williams' specific opinions about these "challenges" or even what they are (which is important because these are presumably "challenges" that rendered the defendant's test design infeasible).
>
> - The disclosure states that "Dr. Williams will note careful consideration is needed when using this approach to evaluate a heterogeneous sample because the publications listed above that did not use functionalized electrodes (*Nonlinear electrical impedance spectroscopy* and *Label-free virus identification*) instead used controlled samples for the detection of virus type and concentration." (Ex. 1 at 9.) The defendant omits what "careful considerations" are needed.
>
> - The disclosure states "Dr. Williams will testify that, based on its design, DECN's COVID-19 test kit would be able to detect COVID-19 viruses from a controlled virus sample similar to those prepared in *Nonlinear electrical impedance spectroscopy* and *Label-free virus identification*, but if a complex biological fluid was used in DECN's COVID-19 test kit, the sample would need to be properly processed before being introduced to the sensing electrodes in order to prevent potential measurement error." (Ex. 1 at 9.) The defendant omits the basis for that general opinion as well as Dr. Williams' opinions regarding: why a "complex biological fluid" could not be used; how one would "properly process[]" a sample so that it could be used; what "potential measurement error[s]" could result from using the defendant's test design, and whether and how the defendant accounted for that, if at all.

The practical effect of the defendant's opaque disclosures is to conceal – not communicate – key information about Dr. Williams' opinions.

Second, Dr. Williams did not "approve and sign the disclosure," as required by Rule

16(b)(1)(C)(v). The defendant's failure to obtain Dr. Williams' signature thus also violates Rule 16. Most importantly, it raises serious concerns because the opinions that the defendant now plans to elicit from Dr. Williams are materially different from what was originally disclosed.

Neither the Court's November 13, 2023 order nor Rule 16 has effectively eliminated the prejudice to the government by the defendant's withholding of information that he is required to disclose. At this point, in light of the defendant's noncompliance, exclusion of Dr. Williams's proposed testimony in its entirety is appropriate and necessary.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court exclude the proposed expert testimony of Dr. Williams in its entirety.

Respectfully submitted,

GLENN S. LEON
CHIEF, FRAUD SECTION
Criminal Division, U.S. Department of Justice

_____//s//_____
CHRISTOPHER FENTON
KATE T. MCCARTHY
MATTHEW REILLY
Trial Attorneys

Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 320-0539
Fax: (202) 514-0152
Christopher.Fenton@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 24, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

                                                */s/ Christopher Fenton*
                                                Christopher Fenton
                                                Trial Attorney