**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Criminal No.** |
| **v.** | **1:20-cr-00278-TNM** |
| **KEITH BERMAN** | |
| **Defendant.** | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE**
**REGARDING DEFENDANT'S USE OF COMPANY FUNDS**

The United States respectfully submits this opposition to the defendant's Motion to exclude evidence of defendant's use of Decision Diagnostics Corp. ("DECN") funds. ECF No. 156. This evidence should be admitted because it is intrinsic to the charged schemes, not unduly prejudicial, and has been known to the defendant since at least December 2021.

**BACKGROUND**

*Superseding Indictment*

As the Court is aware, the Superseding Indictment charges the defendant with, among other things, securities fraud and wire fraud related to his scheme to defraud DECN shareholders. ECF No. 19. In laying out defendant's scheme, the Superseding Indictment describes its impetus: the financial concerns faced by the Defendant and DECN. *Id.* Specifically, the Superseding Indictment spends multiple paragraphs detailing "DECN's Precarious Financial Condition." *Id.* at ¶¶ 6-12.

These paragraphs allege how, in the years leading up to the COVID-19 pandemic, the Defendant misrepresented to the investing public that he took no compensation for his work at DECN, when, in truth, he had spent hundreds of thousands of dollars of investor money on

personal expenses, including to pay to chat live on webcam calls with foreign individuals for

personal purposes, in the period immediately preceding the onset of the COVID-19 pandemic:

> While serving as DECN's CEO and director, BERMAN repeatedly represented that he
>
> "has not received any form of cash compensation as a result of our limited cash flow." BERMAN made these representations to investors in periodic filings and disclosures made public on the OTC Markets Group Inc. ("OTC Markets") website and elsewhere.
>
> BERMAN's representations to the public about his own compensation were materially false and misleading. In recent years, BERMAN misappropriated hundreds of thousands of dollars in DECN funds for his own personal use and benefit.
>
> For example, in 2019 and 2020 alone, BERMAN used over $360,000 in DECN company funds to pay to chat live on webcams with individuals living in foreign countries. These funds were spent for personal entertainment and were not business-related expenses. BERMAN did not disclose these uses of company funds to investors.

*Id.* ¶¶ 6-8.

The Superseding Indictment also alleges that the Defendant sent emails tying his financial

concerns to his plan to advertise a blood test for COVID-19:

> In or around early 2020, BERMAN and DECN were experiencing financial difficulties.
> On or about March 3, 2020, BERMAN stated in an email that "my personal situation is perilous." BERMAN further elaborated on DECN's poor financial condition, stating that "I am letting three more people go Friday."
>
> In or around March 2020, BERMAN discussed his plan to use the COVID-19 crisis as an
> opportunity to increase DECN's value and address DECN's financial issues. On or about March 3, 2020, BERMAN stated in an email that "This will work out. I did something yesterday that worked. I am doubling down today. If this continues to work money will not be a problem for a long time."
>
> On or about March 5, 2020, BERMAN wrote an email in which he stated, "We have a lot
> at stake here. I am not just trying to raise money to pay [Vendor 1], but we need a new story and this coronavirus through impedance is the story that will allow me to raise millions."

*Id.* ¶¶ 9-11.  *See also id.* ¶ 12.

Additionally, in describing the defendant's scheme to defraud DECN's investors, the Superseding Indictment alleges that "[i]t was the purpose of the scheme for BERMAN to artificially increase and maintain the share price of DECN securities to enrich himself through access to additional corporate funds and compensation." *Id*. at ¶13.  The Superseding Indictment also alleges that the defendant's materially false and misleading statements about his use of funds were in furtherance of the scheme:

> In furtherance of the scheme, BERMAN used the following manner and means, among others:
>
> a. BERMAN made, and caused to be made, materially false, fraudulent, and misleading public statements about, among other subjects: … (iii) DECN's business and operations; and (iv) BERMAN's use of DECN's corporate funds.

*Id.* ¶ 14.  The alleged materially false and misleading statements about the defendant's use of DECN's corporate funds were made in periodic filings and disclosures made public on the OTC Markets website and elsewhere.[1]  *Id.* ¶ 6.

*Summary Financial Exhibits*

On December 10, 2021, the government provided defense counsel with its original summary exhibits.  These exhibits included GX 37 (attached hereto as Exhibit 1).   The 2021 version of GX 37 was comprised of nine pages of summary charts, including "Summary of Charges – Credit Cards Keith Berman Had Access To March 1, 2020 – June 30, 2020," "Stipulated Personal

---

[1] These periodic filings were signed and filed by the Defendant throughout 2020 (the relevant time period).  They contain false and misleading statements claiming that the Defendant received $0 in compensation from the company in 2017, 2018, 2019, and 2020 when, in truth, he was spending hundreds of thousands of investor money for his own personal benefit.  The government expects to admit at trial at least some of these periodic filings, which also contain materially false and misleading statements about the Defendant's COVID-19 blood test.

Charges On Credit Cards Keith Berman Had Access To," and "Keith Berman's Personal Use of Company Money," which outlined defendant's use of DECN credit cards and bank accounts for personal purposes.  This exhibit was informed in part by the stipulation regarding defendant's use of DECN accounts for personal purposes.  *See* ECF No. 62.  As memorialized in the final stipulation, the parties agreed as follows:

> Each and every charge in the amount of $149.99 charged to the following credit cards between September 1, 2018 and December 31, 2020, was for the personal use and benefit of defendant Keith Berman and did not constitute business-related expenses incurred by or on behalf of Decision Diagnostics Corp… The parties further agree and stipulate that this stipulation be entered into evidence at defendant Keith Berman's trial in the above-captioned matter.

ECF No. 62.  This stipulation was signed by both government and defense counsel as well as defendant and filed on the docket in December 2021.  This stipulation provides the basis for the "stipulated personal expenses" in both of the challenged summary financial charts that are the subject of the defendant's present motion.  Exhibit 1 at 7-9.

On November 6, 2023, the government provided defendant with updated exhibits including GX 37A-H (attached hereto as Exhibit 2), which contained substantially the same summary financial charts as the 2021 GX 37 now broken up into sub-lettered exhibits for easier reference.

## LEGAL STANDARD

Evidence that is "intrinsic" to the crime charged is not subject to the limitations of Rule 404(b) because, by its very nature, it does not involve "other crimes, wrongs, or acts," and thus there is no concern that it might be used as improper character evidence. *United States v. Bowie,* 232 F.3d 923, 927 (D.C. Cir. 2000).  There are many ways in which evidence may be intrinsic to the charged crimes.  The *Bowie* Court recognized that at least two types of evidence may be properly considered "intrinsic" and not subject to Rule 404(b): (1) evidence "of an act that is part of the charged offense"; and (2) evidence of "some uncharged acts performed contemporaneously

with the charged crime … [that] facilitate the commission of the charged crime." *Id.* at 929.  *See also United States v. Roberson*, 581 F. Supp. 3d 65, 72 (D.D.C. 2022) (an act is intrinsic to the charged conduct where it (a) is part of the charged offense; (b) is offered as direct evidence of the charged crime; or (c) was performed contemporaneously with and facilitated the commission of the charged crime the charged crime). Courts have also reiterated that evidence is intrinsic where testimony and exhibits are offered as direct evidence of facts in issue, rather than as circumstantial evidence requiring an inference regarding the character of the accused.  *United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003) (citing *Bowie*, 232 F.3d at 927-929; *United States v. Badru*, 97 F.3d 1471, 1474–75 (D.C. Cir. 1996)).

Alternatively, Federal Rule of Evidence 404(b) authorizes admission of "[e]vidence of other crimes, wrongs, or acts" provided it is offered not "to prove the character of a person in order to show action in conformity therewith" but rather "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010).  Rule 404(b) is a rule of *inclusion* rather than exclusion, as it prohibits only evidence "which lacks any purpose but proving character."  *Bowie*, 232 F.3d at 929–30 (D.C. Cir. 2000).  The rule operates as a prohibition on pure propensity evidence that cannot serve any other probative purpose.  *United States v. Wilkins*, 538 F. Supp. 3d 49, 69–70 (D.D.C. 2021).

## ARGUMENT

Evidence related to defendant's use of investor funds on personal expenses – and the additional damage he caused to DECN's precarious financial condition – is admissible because it is detailed in the Superseding Indictment and intrinsic to the charged scheme.  Indeed, the defendant stipulated to these personal expenses (and the admission of the stipulation into evidence

at trial) in December 2021.  Even if such evidence were not intrinsic to the charged scheme and had not already been stipulated to, it would properly be admitted under Rule 404(b) as motive evidence that is not unduly prejudicial.  Moreover, because defense counsel, defendant, and the government reached a stipulation on the admission of personal expenses nearly two years ago in December 2021 and the government's proposed summary financial exhibits have not changed substantially since that time, there can be no good-faith objection based on notice.

### A. Evidence of the Defendant's Spending is Intrinsic to the Scheme Charged in the Superseding Indictment

As outlined in the Superseding Indictment, defendant's use of DECN funds for personal purposes and his false statements about such spending is part of the conduct charged.  ECF No. 19 at ¶¶ 6-14, 66, 68-69.  The Superseding Indictment provides that defendant's spending and its impact on the financial condition on DECN provided the impetus and purpose of the scheme to defraud.  *Id.*; *see, e.g.*, *United States v. Machado-Erazo*, 47 F.4th 721, 729 (D.C. Cir. 2018) (other purported crimes were intrinsic where specifically outlined as overt acts in the indictment).

The defendant now tries to mischaracterize the government's summary financial charts – specifically GX 37H and 37I – as "tempt[ing] jurors to decide Mr. Berman's fate based on his past (and uncharged) moral failures."  ECF No. 156 at 4.  They do not.  In fact, GX 37H and 37I show the massive uptick in defendant's use of company money for personal purposes, which in part drove the scheme to defraud.  The government's summary financial charts also show that the Defendant's personal spending correlated to DECN's worsening financial condition and that his spending continued at a high level as investor money flooded the company following the fraudulent marketing of DECN's COVID-19 blood test.  Exhibit 2.  Additionally, the jury will see the defendant's own statements explicitly tying his decision to begin falsely marketing a COVID-19 blood test to DECN's precarious financial situation.  ECF No. 19 at ¶¶ 9-12.  This conduct

and the government's exhibits summarizing it are admissible because the evidence is a core component of the defendant's fraudulent scheme "to enrich himself through access to additional corporate funds and compensation." ECF No. 19 at ¶ 13; *see, e.g.*, *United States v. Coughlin*, 821 F. Supp. 2d 35, 45 (D.D.C. 2011) (determining that evidence of the defendant's medical and athletic activities constituted intrinsic evidence of the charged offense of making a fraudulent claim to the September 11th Victim Compensation Fund); *United States v. Miller*, 799 F.3d 1097, 1105 (D.C. Cir. 2015) (testimony from prospective home buyers that defendant defrauded them was intrinsic to charged scheme to obtain "moneys, funds and property from ... prospective home buyers" by fraudulent means (emphasis omitted)); *Wilkins*, 538 F.Supp.3d at 70-73 (past assaults of complainant by defendant were "part of the charged offense" of sex trafficking by force, fraud, or coercion because the assaults created the coercive atmosphere alleged).

If this were not enough, the parties, including the defendant, signed a stipulation regarding the characterization of his personal expenses in December 2021, immediately following the provision of the government's trial exhibits to the defendant. ECF No. 63.  The thousands of credit charges of $149.99 from 2018 through 2020, which Defendant made to pay for foreign webcam services, total $433,171.  This total was reflected in both the 2021 and 2023 versions of the Government's summary financial chart exhibits.  That is why those exhibits refer these expenses as "stipulated personal charges."  *See* Exhibit 1 at 8-10 and Exhibit 2 at 7-9.   The stipulation of the defendant and his prior counsel is compelling evidence that the defendant understood throughout this case that his personal use of corporate funds was an essential piece of the crimes charged.

   **B.  Evidence of the Defendant's Spending is Admissible Evidence of Motive, Intent, and/or Plan, as Timely Noticed to the Defendant in 2021**

Even if this evidence were not intrinsic to the charged scheme, specifically delineated in the Superseding Indictment, and stipulated to by the defendant, it would still be admissible under Rule 404(b) to prove motive, intent, and plan.  This evidence is not unduly prejudicial under Rule 403.  Defendant argues that the supposed prior bad act (embezzlement) so closely resembles the charged conduct (securities fraud[2]) that the "[j]urors hearing about the latter will be tempted to assume that Mr. Berman is surely guilty of the former."  ECF 156 at 5.  Such argument mischaracterizes both the evidence and the charges.  The defendant is charged with, among other things, misleading the investing public into believing he had developed and perfected a working COVID-19 blood test in order to raise money from those investors.  Defendant's personal spending and its impact on DECN's financial condition is not so similar in kind as to confuse the jury into reaching improper conclusions and is relevant evidence of Defendant's motive, intent, plan, and lack of mistake.[3]  *See, e.g.*, *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (extrinsic

---

[2] While not referenced in the defendant's Motion, the defendant is also charged with wire fraud in connection with his scheme to defraud.  ECF No. 19.

[3] The cases cited by the defendant are inapposite.  ECF No. 156 at 5-8.  *Old Chief* involved a narrow holding regarding the admission of a prior conviction for an assault causing serious injury in a case charging assault with a deadly weapon (and possession of a firearm as a felon).  In that case, the Supreme Court held, narrowly, that that general rule against allowing the defendant to stipulate around the government's presentation of its evidence has "virtually no application" where the issue in dispute is the defendant's status as a felon – in such cases, it violates Rule 403 to admit the record of conviction to prove the defendant's status when the defendant is willing to stipulate.  *Id.* at 190-91.  *Brown* provides the Defendant no assistance either.  *United States v. Brown*, 597 F.3d 399 (D.C. Cir. 2010).  The Court in *Brown* affirmed the defendant's conviction where evidence of prior bad acts was admitted despite bearing a close relation to the crime charged.  *Id.* The Defendant's reliance on a civil case from Western District of Pennsylvania is similarly misplaced.  *See American National Property and Casualty Co. v. Felix*, 2018 U.S. Dist. LEXIS 233018 (W.D. Pa. Nov. 21, 2018).  In that case, the court found the evidence of the prior fire not relevant to the issue in dispute: whether a pair of earrings was destroyed in a later fire.  *Id.* at *4. Additionally, when conducting its Rule 403 and 404(b) analysis, the court found that "ANPAC is trying to introduce evidence of the 2013 fire to show that Felix is predisposed to commit insurance

evidence of defendant's "knowledge, motive, and the absence of mistake or accident" was admissible under Rule 404(b) "to show his specific intent to defraud"); *see also United States v. Inserra*, 34 F.3d 83, 90 (2d Cir. 1994) ("[Rule 404(b) other crimes evidence] is admissible during the Government's case-in-chief if it is apparent that the defendant will dispute that issue."); *United States v. Estabrook*, 774 F.2d 284, 289 (8th Cir. 1985) ("[W]here it is made clear at the outset of the trial that the defendant's principal defense is a lack of knowledge or intent, and thus the issue is unarguably in dispute, the government may take the defendant at his word and introduce the evidence in its case-in-chief"); *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985) ("It was not necessary for the government to await defendant's denial of intent or knowledge before introducing [Rule 404(b) other crimes] evidence; instead the government may anticipate the defense and introduce it in its case-in-chief").

---

fraud because he submitted a suspiciously similar insurance claim to ANPAC in the recent past." *Id*. at \*6. As described in detail herein, the personal spending evidence is not being admitted to prove propensity, but rather the defendant's intent and scheme to defraud investors for personal enrichment. Finally, the portion of *United States v. Mitchell* cited by defendant is a quote from II Wigmore, Evidence § 392 (Chadbourne rev.1979), which describes how proof of general poverty is not admissible to show motive. 172 F.3d 1104, 1108-109 (9th Cir. 1999). While *Mitchell* held that evidence that did not show more than the mere fact that the defendant was poor was inadmissible, it cited other cases in which specific lack of funds (or increases in funds) was admissible. *See United States v. Feldman*, 788 F.2d 544 (9th Cir. 1986) (no abuse of discretion in a bank robbery trial, where the court had admitted evidence that the defendant's joint account with his father was overdrawn by more than $8,000 (caused by checks forged by the defendant), because the evidence that defendant owed "substantial sums" was relevant to show motive); *United States v. Jackson*, 882 F.2d 1444, 1449 (9th Cir. 1989) (evidence was properly admitted that the defendant was "short on funds," "having financial difficulty," and borrowed money because he "couldn't pay for things he needed to have done"). Here, of course, evidence of defendant's spending of DECN funds is not being admitted to link general poverty to a motive to commit crimes. The evidence is relevant and admissible to show the impetus of defendant's scheme as well as his motive, plan, and lack of mistake.

Additionally, the government does not intend on characterizing defendant's spending as "misappropriation" or "embezzlement."  Instead, consistent with the Superseding Indictment, the government will admit the summary charts (and accompanying testimony) that characterize this spending as "stipulated personal expenses," as well as exhibits and testimony related to defendant's public statements regarding his lack of compensation at DECN.  There is therefore no danger that the highly probative value of this evidence would be substantially outweighed by unfair prejudice.  *See* Fed. R. Evid. 403.  Moreover, forcing the government to introduce an inaccurate picture of defendant's and DECN's financial condition (and the reasons for it) would substantially prejudice the government and confuse the jury.  For example, forcing the government to admit GX 37F (Exhibit 2 at 6) showing substantial increases to DECN and defendant's credit cards in 2019 and 2020, without indicating that a substantial driver of that increase was personal expenditures, could lead the jury to conclude that defendant was spending that money developing DECN products, which he was not.  A similar problem occurs with showing the credit card expenditures from March 2020 through June 2020 (GX 37G – Exhibit 2 at 7), where stipulated personal expenses account for 56% of the charges.  Given the highly probative value of this financial evidence, lack of unfair prejudice to the defendant, and substantial prejudice to the government from its exclusion, there is no basis for exclusion under Rule 404(b) or 403.  The evidence should be admitted.

*Finally*, Defendant's arguments regarding lack of notice mischaracterize the record in this case.  As described in further detail above, the government provided a collection of exhibits labeled GX 37 to the defendant in December 2021.  However, the defendant has now baselessly characterized that exhibit as "just one document" and claimed that the Government has "tacked a different course" by labeling "eight different documents".  ECF No. 156 at 2.  In truth, however,

the 2021 version of GX 37 was nine pages of charts which are nearly identical to the sub-lettered version provided in November 2023.[4]  *See* Exhibits 1 and 2.  Thus, rather than providing the defendant with a mere "month" to consider the exhibits, ECF No. 156 at 4, the defendant has had almost two years in which to hire a forensic accountant or undertake any other investigation he thought necessary to respond to the government's summary exhibits.  Additionally, the defendant stipulated that the $149 charges (totaling over $433,000 over the agreed-upon period) were personal expenses in December 2021 and further agreed that the stipulation would be entered into evidence at trial.  ECF No. 63.  This stipulation was signed and filed on the docket after the government had provided its trial exhibits in 2021.  Nearly two years later, the defendant cannot genuinely claim that he was unaware that the Government intended to admit trial evidence regarding his use of company funds on personal expenses; he long ago (and rightly) conceded that this evidence was admissible.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that there is no basis to exclude evidence regarding defendant's spending.  The defendant's motion should be denied.

---

[4] Changes generally include formatting edits and a shift to make GX 37H reflect percentages rather than raw totals for easier reference.

Dated: November 27, 2023

Respectfully submitted,

GLENN S. LEON
CHIEF, FRAUD SECTION
Criminal Division, U.S. Department of Justice

_____//s//_____
CHRISTOPHER FENTON
KATE T. MCCARTHY
MATTHEW REILLY
Trial Attorneys

Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 320-0539
Fax: (202) 514-0152
Christopher.Fenton@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 27, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

*/s/ Kate T. McCarthy*
Kate T. McCarthy
Trial Attorney