UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) CRIMINAL NO. 20-CR-278-TNM |
| v. | ) |
| | ) |
| KEITH BERMAN, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF MISAPPROPRIATION**

The government cannot carry its burden to show that exhibits suggesting that Mr. Berman had misappropriated company funds are admissible under either Federal Rules of Evidence 404(b) or 403. First, the challenged evidence is extrinsic, not intrinsic. The indictment focuses on statements Mr. Berman made "regarding DECN's COVID-19 testing capabilities," Superseding Indictment, ECF No. 19 ¶ 67, and refers to alleged misappropriation only in passing. Second, the probative value of the challenged evidence is substantially outweighed by the danger of unfair prejudice and the risk of presenting "needlessly" cumulative evidence. Fed. R. Evid. 403.

## ARGUMENT

On November 6, 2023, the parties exchanged their respective exhibit lists. This motion concerns two documents on that list: 37H is a bar chart that purports to measure Mr. Berman's "Personal Charges as a Percentage of Total Charges"; and 37I is a table that details "Keith Berman's Personal Use of Company Money," sorts each allegedly illicit expenditure by category, and stretches back to 2017, three years before the events alleged in the indictment.

Both are inadmissible.

**I.      Misappropriation evidence is not intrinsic to the offenses charged.**

Shifting away from its argument that the challenged evidence goes to motive, the government now seeks to avoid Rule 404(b) by arguing that the challenged evidence is intrinsic to the "charged scheme." Gov't Response, ECF No. 158 at 5 (Nov. 27, 2023). The government's argument that such evidence is "intrinsic" and not precluded by FRE 404(b) is wrong.

First, the D.C. Circuit has questioned the intrinsic-extrinsic dichotomy upon which the government relies, explaining its doubts as follows:

> As a practical matter, it is hard to see what function this [dichotomy] . . . performs. If the so-called "intrinsic" act is indeed part of the crime charged, evidence of it will, by definition, always satisfy Rule 404(b). The rule bars bad acts evidence only when the evidence is offered solely to "prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Evidence that constitutes the very crime being prosecuted is not of that sort. So far as we can tell, the only consequences of labeling evidence "intrinsic" are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon defense counsel's request.

*United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000) (alterations in original). "Bifurcating the universe into intrinsic and extrinsic evidence," the court continued, "has proven difficult in practice." *Id.*; *see also United States v. Khanu*, 664 F. Supp. 2d 80, 83 (D.D.C. 2009) (concluding that Circuit case law "demonstrate that few acts may be truly intrinsic to the charged crime"); *United States v. Gonzalez*, 507 F. Supp. 3d 137, 159–160 (D.D.C. 2020) (recounting this Circuit's "dissatisfaction with the extrinsic-intrinsic distinction"); *United States v. Fitzsimons*, 605 F. Supp. 3d 92, 97 (D.D.C. 2022) ("This Circuit has explicitly rejected the more permissive approach to defining intrinsic evidence embraced by other circuits.").

Although the D.C. Circuit has recognized two "narrow" types of intrinsic evidence—"(1) evidence of an act that is part of the charged offense; and (2) evidence of some uncharged acts

performed contemporaneously with the charged crime . . . [that] facilitate the commission of the charged crime," *Bowie*, 232 F.3d at 929—neither category applies here.

In considering the second category of "intrinsic" evidence, such evidence must prove acts that are contemporaneous and which facilitate the commission of the crime. The prior bad acts alleged here were not contemporaneous, and did not facilitate the acts charged in the indictment— they purportedly describe financial misconduct stretching back several years before the first date mentioned in the indictment

Second, the evidence does not establish acts charged in the indictment. The first time the indictment discusses Mr. Berman's alleged misappropriation, it does so to describe "DECN's [p]recarious [f]inancial [c]ondition." ECF No. 19 ¶¶ 7–8. The next discussion of misappropriation occurs when the indictment discusses the "[p]urpose of the [s]cheme." And after a less-than-sentence-long reference in the next paragraph, misappropriation is not mentioned in the 25-page document again. *See id.* ¶ 14(a). The indictment discusses Mr. Berman's alleged misappropriation in passing, and the core allegations detail multiple allegedly "false, fraudulent, and misleading statements" on the following topics:

- Features of Mr. Berman's COVID-19 products, *id.* ¶ 38;
- The viability of Mr. Berman's COVID-19 products, *id.* ¶¶ 19–20;
- Validation results related to those products, *id.* ¶¶ 21, 34–35;
- Mr. Berman's efforts to secure an emergency use authorization from the Food & Drug Administration, *id.* ¶¶ 25, 27, 30, 33;
- Mr. Berman's communications on social media platforms, *id.* ¶¶ 47–48; and
- Mr. Berman's alleged efforts to get shareholders to send a letter to the SEC defending the company, *id.* ¶¶ 52.

Indeed, the government's statement of the case omits references to the misappropriation the government now seeks to resuscitate, proving that this issue is collateral to offense charged in the

3

indictment. Joint Statement of the Case, ECF No. 54  In arguing that misappropriation is intrinsic, the government asserts that such misappropriation "provided the impetus and purpose of the scheme to defraud." ECF 158, at 6. The D.C. Circuit, however, has concluded that "evidence is not generally rendered intrinsic simply because it completes the story or explains the circumstances behind a charged offense." *United States v. Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015).

The cases upon which the government relies do not call for a different result.  Some involve conspiracy or RICO charges. *E.g.*, *United States v. Machado-Erazo*, 47 F.4th 721, 729 (D.C. Cir. 2018).  And in those cases, courts do tend to adopt broader definitions of intrinsic evidence. *Id.* at 728 (describing the doctrine "[i]n conspiracy prosecutions").  But only because those offenses require that the government establish relationships between individuals, evidence of which may long predate the specific crime at issue. *Id.* at 728–29.  Yet here the government has failed to charge Mr. Berman with conspiracy.  So the government's reliance on these cases is misplaced.[1] In others, the "prior bad acts" actually prove charged acts. In *United States v. Coughlin*, for instance, the government wanted to introduce evidence of a defendants sport activities to show that he had exaggerated his injuries defraud a disability fund. 821 F. Supp. 2d 35, 45 (D.D.C. 2011). Likewise, in *United States v. Wilkins*, a court admitted evidence of a defendant's violence to show that he exercised control over sex workers in a sex trafficking case. 538 F. Supp. 3d 49, 70–71 (D.D.C. 2021). Here, by contrast, the challenged evidence serves only to explain the actor's motivation, not to show the actual acts charged in the indictment.

---

[1] The government alleges that a stipulation by Mr. Berman's prior counsel eliminates any prejudice from its lack of notice.  Mr. Berman's current counsel, however, only joined the case in March, 2023.  Regardless, courts have held that mere production of 404(b) material does not satisfy the Rules' notice requirements. *United States v. Spinner*, 152 F.3d 950, 961 (D.C. Cir. 1998) (concluding that it was an abuse of discretion to admit evidence without proper notice, even though government provided "such evidence to the defense in discovery").

4

**II.     Misappropriation evidence is more prejudicial than probative.**

Regardless of whether this evidence is intrinsic, it must still satisfy Federal Rule of Evidence 403. It does not.

The government claims the evidence establishes the financial state of Mr. Berman and his company. But there is substantial alternative evidence available. *Old Chief v. United States,* 519 U.S. 172, 185 (1997) ("The probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point."); Notes of Advisory Committee on Rules ("The availability of other means of proof may also be an appropriate factor" that courts consider when deciding a 403 motion.). The government has detailed documents which depict those finances but do not imply that Mr. Berman has committed other similar crimes. The government also has Mr. Berman's communications, in which he discusses having to terminate employees to stay afloat. It even has exhibits that chart the finances over time—exhibits to which the defense does not object. Given these evidentiary alternatives that may go to motive, the marginal value of the challenged evidence is miniscule.

The danger of unfair prejudice, however, is immense. The evidence may suggest that Mr. Berman is guilty of a later financial crime because he may have committed an earlier one. The financial nature of this alleged misconduct is highly likely to prejudice Mr. Berman and confuse the issues for the jury given the nature of the crimes actually charged. Indeed, the Supreme Court has held that the danger of unfair prejudice is "especially" acute, when (as here) the prior bad act resembles the charged offenses. *Old Chief v. United States*, 519 U.S. at 185; *see United States v. Brown*, 597 F.3d 399, 405 (D.C. Cir. 2010). Additionally, this evidence may inflame the jury into thinking that Mr. Berman deserves punishment, no matter what the government may prove.

## CONCLUSION

For the reasons explained above, this Court should exclude evidence relating to Mr. Berman's alleged misappropriation of his company's funds.

DATED:  November 29, 2023         Respectfully submitted,

 /s/Kevin B. Collins
Kevin B. Collins (D.C. Bar No. 445305)
Nicholas J. Xenakis (D.C. Bar No. 90001123)
Jose J. Ramos (*pro hac vice*)
Lori Taubman (D.C. Bar No. 1673026)
Jonah T. Panikar (D.C. Bar No. 90006218)
José Girón (*pro hac vice*)
Brandon Howell (D.C. Bar No. 1671396)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-5598

Michelle Peterson (D.C. Bar No. 438930)
Assistant Federal Public Defender
For the District of Columbia
625 Indiana Avenue, N.W.
Washington, DC 20004

*Counsel for Keith Berman*

## CERTIFICATE OF SERVICE

I hereby certify that I caused copies of the foregoing to be transmitted to counsel registered to receive electronic service.

        /s/ Kevin B. Collins
Kevin B. Collins (D.C. Bar No. 445305)

*Counsel for Keith Berman*