UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEITH BERMAN<br><br>　　　　Defendant. | Criminal No.<br>1:20-cr-00278-TNM |

**UNITED STATES' REPLY IN FURTHER SUPPORT OF ITS RENEWED MOTION TO EXCLUDE PROPOSED EXPERT TESTIMONY OF DR. STUART WILLIAMS**

　　　　While finding that the defendant had violated the Court's order and Rule 16, the Court permitted him the opportunity to put on an expert to testify about the feasibility of the COVID-19 test described in his press releases – so long as he remedied the prejudice caused to the government by his deficient expert disclosures. In response, the defendant served a supplemental disclosure that revealed the defendant planned to elicit from Dr. Wiliams new opinions about a COVID-19 test different than the one described in the defendant's press releases – and failed to provide critical information about the most important aspects of Dr. Williams's proposed testimony. Inexplicably, it was also unsigned by Dr. Williams in further violation Rule 16.

　　　　Dr. Williams's testimony should be excluded for at least two independent reasons. *First*, the new opinion the defendant plans to elicit at trial is beyond the scope of what the Court permitted and not probative of the elements of the crimes charged. *Second*, the defendant still refuses to comply with the Court's order and Rule 16 despite numerous opportunities to do so. Exclusion of Dr. Williams's testimony is therefore necessary and appropriate to remedy the prejudice to the government caused by the defendant's decision to flout both the Court's order and Rule 16.

### I. WILLIAMS'S PROPOSED TESTIMONY IS ABOUT A TEST DIFFERENT THAN WHAT IS DESCRIBED IN DEFENDANT'S PRESS RELEASES AND IS NOT PROBATIVE OF INTENT

The defendant is charged with making false and misleading statements in press releases about his development of an at-home test kit that used impedance to test for COVID-19 in a finger prick drop of blood. (*See, e.g.,* Superseding Indictment (ECF 19) ¶ 23 (discussing Mar. 23, 2020 press release that falsely claimed "[t]he DECN GenViro! kit … receives its small blood sample through a finger prick, is self-contained and disposable, does not require a hospital or clinical lab based instrument for analysis, and it only takes 15 seconds, ….") (attached hereto as Exhibit A).) During the pre-trial conference, the Court, in explaining that "the defendant intends to argue that the press releases were simply stating that a blood test for COVID was in development", held that "Dr. Williams's testimony would be clearly relevant because it would go to the feasibility of *such a test* and whether it could reasonably be said to have been in development". (11/03/2023 Pre-trial Conf. Tr. at 111:12-18 (emphasis added).) The defendant now acknowledges Dr. Williams cannot testify about the feasibility of the test described in the defendant's press releases. (ECF 166 at 5-6, 10.) In lieu of the testimony permitted by the Court in its November 13, 2023 ruling, the defendant discloses Dr. Williams will now testify about the feasibility of an entirely different test:

| **Test Described in False and Misleading Press Releases** (*See, e.g.,* ECF 19; Exhibit 1) | **Test About Which Dr. Williams Is Now Prepared to Testify** (ECF 157-1; ECF 166) |
|---|---|
| • Finger Prick Sample of Blood | • Controlled Virus Sample |
| • Unprocessed Sample | • Processed Sample |
| • At-Home Test | • Laboratory Wet-Bench Test |

Testimony about any test other than the one described in the press releases underlying the charged conduct is a new and irrelevant opinion beyond the scope of what the Court has determined to permit, is not probative of the defendant's intent, and should be excluded.[1] [2]

## II. WILLIAMS'S PROPOSED TESTIMONY ABOUT A TEST DIFFERENT THAN WHAT IS DESCRIBED IN THE PRESS RELEASES RISK CONFUSING THE ISSUES AND MISLEADING THE JURY

The defendant's supplemental disclosures and brief contain a flood of scientific jargon that the defendant assures the Court is relevant but declines to decipher. (ECF 157-1, 166.) For example, although on notice that he failed to define key words and phrases important to understanding Dr. Williams's proposed testimony (*e.g.*, "clean sample," "heterogeneous sample," "complex sample," "complex liquid sample," and "complex biological fluid"), the defendant simply refuses to provide more information. (*Id.*) The defendant's approach previews how he will present this testimony to the jury: in a purposely vague and confusing manner. The defendant should not be permitted to confuse the jury by putting on the witness stand an expert who speaks a scientific language that is foreign to the jury and then refusing to translate it.

---

[1] The defendant argues *for the first time* that Dr. Williams should be permitted to testify that the defendant's test design could detect COVID-19 in a "clean sample" "because it demonstrates that Mr. Berman lacked fraudulent intent and that the technology he was seeking to develop was indeed possible, as shown by it working with a clean sample (an important step in the process)". (ECF 166 at 10.) The Court should reject this argument because the supplemental disclosures do not disclose that the defendant will elicit from Dr. Williams an opinion that: (i) the detection of COVID-19 in a "clean sample" shows that the test described in the press releases was indeed possible; or (ii) that working with a "clean sample" is an important step in the process of developing the test described in the press releases. (ECF 157-1.) These appears to be lawyer's arguments, which are certain to confuse the jury about both the relevant issues at trial and the science, and not properly disclosed expert opinions.

[2] For the reasons described in the government's moving brief, the rest of the opinions the defendant plans to elicit from Dr. Williams at trial should also be excluded because they are outside of the narrow scope of what the Court permitted and also not probative of any element of the crimes charged. (ECF 157 at 4-6.)

### III.     DEFENDANT'S CONTINUED VIOLATIONS WARRANT EXCLUSION

Exclusion of Dr. Williams is warranted because, even after the Court admonished the defendant, he continues to violate this Court's orders and Rule 16.

*First*, the defendant continues to engage in 'bait and switch' tactics: whenever required to provide more information to the Court, the defendant has demurred and substituted different evidence or purported expert opinions in its stead. Most recently the defendant engaged in this tactic with respect to Dr. Williams, who the defendant now proposes to have testify about something different than before, namely a test different than the one described in the defendant's press releases. Were the Court to allow Dr. Williams to take the stand, there is a significant danger that the defendant will seek to elicit even more new opinions that he has not yet disclosed.

*Second*, the defendant continues to withhold from the government information he is required to disclose by court order and Rule 16 to disclose, including, most recently, the five categories of information that the government outlined in its moving brief. (ECF 157 at 7-8.) All of this withheld information relates to the most important topics about which Dr. Williams may testify, including the definitions of basic terminology necessary to understanding Dr. Williams' ultimate conclusions. Rather than provide this information in his opposition, the defendant merely repeats what he said in his deficient supplemental disclosure.

*Third*, Dr. Williams did not approve and sign his supplemental disclosures, which is especially concerning given that the substance of his proposed testimony is constantly evolving. The defendant claims he did not ask Dr. Williams to sign the disclosures because they were a supplement. (ECF 166 at 7 n. 3.) No such exception exists in the rules. The only time an expert

4

is excused from signing a disclosure is when the defendant "has previously provided under (B) a report, signed by the witness, that contains all the opinions and the bases and reasons for them required by (iii)." Fed. R. Crim. P. 16(b)(1)(C)(v). No such report has been provided here. Rather than have Dr. Williams sign his supplemental disclosures, counsel tells the Court to take their word for it. There is no reason why the Court should rely on counsel's representation when Rule 16 requires an expert's approval and signature.

These are not mere technical violations. As the Court already found, the defendant's noncompliance is prejudicial to the government, particularly because the defendant is making tactical decisions to withhold information that have the effect of preserving the element of surprise. (11/13/2023 Tr. at 108:10-109:6.) Because the defendant persists in violating this Court's orders and Rule 16 even after being warned by this Court about the consequences, the Court should exclude Dr. Williams' testimony.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court exclude the proposed expert testimony of Dr. Williams in its entirety.

Respectfully submitted,

GLENN S. LEON
CHIEF, FRAUD SECTION
Criminal Division, U.S. Department of Justice

_____//s//_____
CHRISTOPHER FENTON
KATE T. MCCARTHY
MATTHEW REILLY
Trial Attorneys

5

Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 320-0539
Fax: (202) 514-0152
Christopher.Fenton@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 5, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

                                        */s/ Christopher Fenton*
                                        Christopher Fenton
                                        Trial Attorney