## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | **CRIMINAL NO. 20-CR-278-TNM** |
| v. | ) | |
| | ) | |
| KEITH BERMAN, | ) | **UNDER SEAL** |
| | ) | |
| Defendant. | ) | |

## OPPOSITION TO THE GOVERNMENT'S RESTITUTION MEMORANDUM

Defendant Keith Berman respectfully submits this Opposition to the Government's Restitution Memorandum.  On the basis of the government's own calculations, restitution should be reduced to $302,104.19, because the government is still unable to prove that actual losses amounted to $1,043,618.20, even after spending three years to gather evidence.

## LEGAL STANDARD

The purpose of the Mandatory Victim Restitution Act ("MVRA") is "essentially compensatory," not punitive:  it serves "to restore a victim, to the extent money can do so, to the position [the victim] occupied before sustaining injury." *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012).  The MVRA's "authorization is accordingly limited to the  actual, provable loss suffered by the victim and caused by the offense conduct." *Id*.  Awarding restitution in excess of the victim's actual loss would be punitive in nature and thus fall outside the scope of the MVRA. *Id*.  Therefore, "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence" with the government bearing the burden to establish the amount of loss suffered by the victim.  18 U.S.C. § 3664(e).  Moreover, the district court is required, when determining "the full amount of each victim's losses," *id*. § 3664(f)(1)(A),

to articulate the specific factual findings underlying its restitution order in order to enable appellate review, *Fair*, 699 F.3d at 513.

The statute states that restitution is due to any person "directly and proximately harmed as a result of the commission of [the] offense." 18 U.S.C. § 3663A(a)(2). Because the MVRA only authorizes courts to order restitution for actual, provable losses suffered by the victim, courts may not order restitution for losses that are unsubstantiated or speculative. *United States v. McCormick*, 2023 WL 8697851, at *6 (D.D.C. Dec. 15, 2023). In other words, a court may award restitution under the MVRA only for loss that flows directly from the specific conduct that is the basis of the offense of conviction. *United States v. Zhou*, 838 F.3d 1007, 1013 (9th Cir. 2016). A court is therefore authorized to order restitution for the offense of conviction, but generally not for other related offenses of which the defendant was not convicted. *Id.*; *United States v. Murry*, 395 F.3d 712, 721 (7th Cir. 2005) ("[R]estitution is limited to the losses caused by charged conduct, *i.e.* the offense of conviction. . . . Restitution may not be ordered for relevant conduct."); *United States v. Dickerson*, 370 F.3d 1330, 1341 (11th Cir.2004) ("[A] criminal defendant cannot be compelled to pay restitution for conduct committed outside of the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction.")

Once the amount is determined and ordered, the court must determine the manner and schedule for payment of the restitution considering the financial situation of the defendant. 18 U.S.C. § 3572(d)(2); *United States v. Grant*, 715 F.3d 552 (4th Cir. 2013). The district court shall specify the manner and schedule according to which the restitution is to be paid, considering the following: "(A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." 18 U.S.C.

§ 3664(f)(2). While this is a "minimalist" requirement, *United States v. Sanchez-Maldonado*, 737

F.3d 826 (1st Cir. 2013), failure to consider these statutory factors requires that a restitution order

be vacated and remanded. *United States v. Grant*, 715 F.3d 552 (4th Cir. 2013); *United States v.*

*Ahidley*, 486 F.3d 1184 (10th Cir. 2007); *United States v. Tran*, 234 F.3d 798 (2d Cir. 2000).

## ARGUMENT

### I.  The Government has Failed to Meet Its Burden of Proving That Victims' Losses Totaled $1,043,618.20

There are two 'critical flaws with the government's estimated loss amount for purposes of

restitution. *First*, ███████████████████████ is not a victim under section

3663A of the MVRA.[1] *Second*, the government has included unsubstantiated losses that are not

directly tied to purchases of Decision Diagnostics Corp. ("DECN") stock during the period of the

fraud.[2]

### A.  ███████████ is Not a Victim Under Section 3663A of the MVRA

Under the MVRA, a victim is defined as "a person directly and proximately harmed as a

result of the" defendant's crime. 18 U.S.C. § 3663A(a)(2). This means that a court may award

restitution under the MVRA only for loss that flows directly from the specific conduct that is the

basis of the offense of conviction. *United States v. Zhou*, 838 F.3d 1007, 1013 (9th Cir. 2016).

Here, from 2007 through December 31, 2015, ███████████ waived DECN's debt of $2,800,000

in exchange for various types of stock in DECN that amounted to $425,357.12. *See* Gov.'s Ex.

---

[1] ████████████████████████████████████████████

[2] Although Mr. Berman uses this Court's period of the fraud determination (March 3, 2020 – December 17, 2020) for the purposes of determining restitution, Mr. Berman's arguments should not be construed to mean that he has waived, forfeited, or conceded the loss calculations arguments that he made at sentencing, specifically, that the period of the fraud lasted from March 3, 2020 to July 10, 2020.

26, Attachment at 2–3. ███████ agreed to and accepted the exchange without reliance on any of Mr. Berman's press release statements issued between March 2020 to July 2020. *See id.*

Simply put, ███████ "loss" stems from its disagreement with Mr. Berman over the conversion of preferred shares into common stock. That "loss" cannot possibly flow directly from Mr. Berman's offense conduct—the conversion began on ***May 22, 2019***, almost a full year before the press releases at the center of this case were issued.[3] Neither the government nor ███ ███████ provides any evidence showing that Mr. Berman's refusal to convert preferred shares to common stock had any connection to press releases about the progress and status of DECN's development of its COVID-19 blood test. Because the government has not shown that ███████ losses of $425,357.12 are a result of the offenses in this case, its losses should not be counted as victim losses for restitution purposes. *See United States v. Farano*, 749 F.3d 658, 666 (7th Cir. 2014) (finding that refinancing lenders could not be counted as "victims" for restitution purposes in absence of evidence of reliance on fraudulent representations made by defendants); *see also United States v. Zhou*, 838 F.3d 1007, 1013 (9th Cir. 2016) (holding that the MVRA does not authorize restitution for other related offenses of which the defendant was not convicted).

**B.** **Based Upon the Government's Own Loss Calculations, At Least $316,156.89 in Alleged Losses are Unsubstantiated**

The MVRA only authorizes courts to order restitution for actual, provable losses suffered by the victim; courts may not order restitution for losses that are unsubstantiated or speculative.

---

[3] ███████████████████████████████████████████

Case 1:20-cr-00278-TNM   Document 209   Filed 07/08/24   Page 5 of 10

*See McCormick*, 2023 WL 8697851, at *2.  Although the government has provided victim impact statements ("VIS"), it has not substantiated all of the losses alleged in the VISs by a preponderance of the evidence.  Here, several of the VISs and accompanying transactions records do not provide dates to show that DECN stock purchases occurred within the relevant time period.  Nor does the government provide any explanation for this discrepancy.  *See* Gov's Memo. at 2–3. Consequently, Mr. Berman contests the government's loss calculations for the following alleged victims:

| Name | Gov't Proposed | Proposed Reduction | Notes | Gov't Exhibit |
|---|---|---|---|---|
| ██████████ | $7,976.74 | -$5,000.00 | Transaction records show only two purchase transactions of DECN during the relevant time period. | 7 |
| ████████ | $5,610.61 | -$4,621.66 | Transaction records show only one purchase transaction of DECN during the relevant time period. | 9 |
| ████████ | $89,415.24 | -$89,415.24 | Neither the VIS nor transaction records state when buys were made. | 14 |
| ████████ | $138,800.05 | $-99,452.03 | Neither the VIS nor transaction records state when all of the buys were made. | 16 |
| ███████ | $49,428.50 | -$49,428.50 | Neither the VIS nor transaction records state when buys were made. | 17 |
| ████████ | $66,102.71 | -$66,102.71 | Neither the VIS nor transaction records state when buys were made. | 21 |
| ██████ | $2,136.75 | -$2,136.75 | Neither the VIS nor transaction records state when buys were made. | 22 |
| **Total** | $359,470.60 | -$316,156.89 | | |

Awarding restitution in excess of the victim's actual loss would be punitive in nature and thus fall outside the scope of the MVRA.  *Fair*, 699 F.3d at 512.  Therefore, based upon the government's

own loss calculations, at least $316,156.89 should be subtracted from the government's proposed losses of $1,043,618.20.[4]

## II.     The Factors for Determining the Manner and Schedule of Payment

Under 18 U.S.C. § 3664(f)(2), the court must set a payment schedule "in consideration of—(A) the financial resources and other assets of the defendant, including whether any of the[] assets are jointly controlled; (B) projected earnings and other income of the defendant; and (C) any financial obligations of the defendant; including obligations to dependents." *See also United States v. Villongco*, 2016 WL 3747508, at *4 (D.D.C. July 11, 2016) ("The court must direct the defendant to satisfy the restitution obligation in a particular manner, a direction predicated upon an evaluation of the defendant's particular financial circumstances.").

These factors show that Mr. Berman's financial circumstances are dire and he lacks any ability to pay restitution.

### A.     Mr. Berman's Financial Circumstances are Critically Deficient

18 U.S.C. § 3664(e) provides that the "burden of demonstrating the financial resources of the defendant . . . shall be on the defendant." The Presentence Investigation Report ("PSR") demonstrates clearly that Mr. Berman lacks financial resources, income, assets, and potential for future earnings.

The PSR describes Mr. Berman's financial condition as "appear[ing] to have negative net worth. . . with no monthly cash flow . . . [and no] ability to pay a fine in this case, in addition to restitution." PSR at 21 (ECF No. 191). Mr. Berman's assets are dwarfed by his substantial amount of debt. Mr. Berman's assets total $2,460, comprised of $1,500 from an inoperable 1973 Opel

---

[4] This should not be construed as Mr. Berman waiving, forfeiting, or conceding that the government met its burden of proving reliance—specifically, that shareholders relied on Mr. Berman's press release statements issued between March 2020 to July 2020. Instead, the reduced loss amount is based upon the government's own loss amount calculations, which were miscalculated.

GT, $160 dollars in his checking and savings accounts, $100 in DECN stock, and $700 in various electronic equipment. *Id*. at 19. Mr. Berman's liabilities are extensive, totaling $345,000 owed to financial institutions and other merchants. *Id*. This results in a substantial negative net worth totaling $342,540. *Id*.

Mr. Berman's projected earnings and other income are similarly grim. Mr. Berman's age and numerous, serious health issues stimy his ability to begin paying restitution. Mr. Berman is 70 years of age and ███████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████             █████████

████████████████████████████████████████████████

  █ ████████████████████████████████

  █ ██████████████████████████████████████

  █ ███████████████

  █ ██████████████████████████████████████████████

  █ ██████████████████████████████████████████

  █ ██████████████████

  █ ██████████████████████████████████████████████
  ████

These health ailments, coupled with his age, will seriously inhibit his future ability to earn wages and pay restitution.

### B.   Any Restitution Should be Paid Through Nominal Periodic Payments

The MVRA provides courts with discretion over the restitution payment schedule. 18 U.S.C. § 3664(f)(3)(B) states that a restitution order "may direct the defendant to make nominal

periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments."

There is ample support for this Court to find that Mr. Berman's economic circumstances are devoid of any ability to pay any amount of restitution.  In accordance with the MVRA, Mr. Berman urges this Court to require only nominal periodic payments in satisfaction of any restitution order.[5]  In *United States v. Lewis*, 791 F. Supp. 2d 81, 95 (D.D.C. 2011), this Court found that a defendant did not have the financial ability to pay any amount of restitution other than nominal periodic payments where the defendant had adjusted gross income for the past three years of $7,343, $12,002, and $9,835; total debt of $1,870 for unpaid medical and Verizon bills; assets of some antique coins, miscellaneous knives, and $462 in cash.  Mr. Berman's financial circumstances are much worse than those in *Lewis*.  The record clearly indicates that Mr. Berman's financial situation does not permit the payment of any significant amount of restitution now or in the foreseeable future.

Given these harsh realities, Mr. Berman also asks this Court that any schedule for nominal periodic payments should commence after his release from imprisonment, and that Mr. Berman be given sufficient time after his release to secure basic living needs.  Mr. Berman finally asks this Court to set the nominal periodic payment plan based on an assessment of his ability to pay at that time he is released from imprisonment.

## CONCLUSION

For the reasons provided above, the Court should reduce the Government's request for

---

[5]

restitution to the amount of $302,104.19, and due to a very limited financial capacity, make restitution payable through nominal periodic payments.

DATED: July 8, 2024                                  Respectfully submitted,

                                                  */s/ Kevin B. Collins*
                                                  Kevin B. Collins (D.C. Bar No. 445305)
                                                  Nicholas J. Xenakis (D.C. Bar No. 90001123)
                                                  Jose J. Ramos (*pro hac vice*)
                                                  Lori Taubman (D.C. Bar No. 1673026)
                                                  Jonah T. Panikar (D.C. Bar No. 90006218)
                                                  José F. Girón (D.C. Bar No. 90020611)
                                                  Brandon Howell (D.C. Bar No. 1671396)
                                                  COVINGTON & BURLING LLP
                                                  One CityCenter
                                                  850 Tenth Street, NW
                                                  Washington, D.C. 20001
                                                  (202) 662-5598

                                                  Michelle Peterson (D.C. Bar No. 438930)
                                                  Assistant Federal Public Defender
                                                  For the District of Columbia
                                                  625 Indiana Avenue, N.W.
                                                  Washington, DC 20004


                                                  *Counsel for Keith Berman*

## CERTIFICATE OF SERVICE

I hereby certify that I caused copies of the foregoing to be transmitted to counsel registered to receive electronic service.

_/s/ Kevin B. Collins_
Kevin B. Collins (D.C. Bar No. 445305)

*Counsel for Keith Berman*